1   LATHAM & WATKINS LLP
        David J. Schindler (Bar No. 130490)
2         *david.schindler@lw.com*
    355 South Grand Avenue, Suite 100
3   Los Angeles, California 90071-1560
    Telephone: +1.213.485.1234
4   Facsimile: +1.213.891.8763

5   LATHAM & WATKINS LLP
        Daniel Meron (appearing *pro hac vice*)
6         *daniel.meron@lw.com*
        Kathryn H. Ruemmler (appearing *pro hac*
7       *vice*)
          *kathryn.ruemmler@lw.com*
8       Abid R. Qureshi (appearing *pro hac vice*)
          *abid.qureshi@lw.com*
9   555 Eleventh Street, NW, Suite 1000
    Washington, DC 20004-1304
10  Telephone: +1.202.637.2200
    Facsimile: +1.202.637.2201

11
    Attorneys for United Defendants
12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16  UNITED STATES OF AMERICA *ex rel.*      CASE NO. 2:16-cv-08697-MWF(SSx)
    BENJAMIN POEHLING,
17                                          **UNITED'S OPPOSITION TO**
                                            **PLAINTIFFS' MOTION TO**
18                Plaintiff,                **STRIKE AFFIRMATIVE**
                                            **DEFENSES**
19          v.

20  UNITEDHEALTH GROUP, INC. *et al.*,      Date: September 17, 2018
                                            Time: 10:00 a.m.
21                Defendants.               Courtroom: 5A
                                            Judge: Hon. Michael W. Fitzgerald
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................... 1

II. LEGAL STANDARD .................................................................................... 2

III. BACKGROUND .......................................................................................... 3

IV. ARGUMENT ................................................................................................ 5

A.  The Appropriations Clause Of The Constitution Does Not Bar Assertion Of United's Affirmative Defenses........................ 5

    1.  The Government's Appropriation Clause Argument Against Non-Statutory Affirmative Defenses Is Inapplicable To The Government's Non-Statutory Claims ................................................................ 7

    2.  The Government's Argument Also Fails Because The Government's Payments To United Were Not "Contrary To A Statutory Appropriation"................................. 8

B.  The Government's Challenges To The Individual Affirmative Defenses Fail As Well ..................................... 11

    1.  The Government Effectively Concedes That United's Affirmative Defenses Of Failure To Mitigate, Ratification, And Assumption Of Risk Are Valid As To Its Common Law Claims .......................... 11

    2.  The Government Fails to Show That United's Estoppel Defenses Could Not Possibly Succeed.................... 12

    3.  The Government Identifies No Prejudice That It Will Suffer If United's Government Knowledge Affirmative Defenses Remain In The Case............................ 14

    4.  United's Unjust Enrichment Defense Should Not Be Stricken At this Juncture ...................................... 18

V.  CONCLUSION .......................................................................................... 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*United States ex rel. Baker v. Cmty. Health Sys., Inc.*,
No. CIV 05-279 WJ/WDS, 2011 WL 13115254 (D.N.M. Dec. 7,
2011) ......................................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 3

*Burnside-Ott Aviation Training Ctr., Inc. v. United States*,
985 F.2d 1574 (Fed. Cir. 1993) ................................................................... 9

*California Dep't of Educ. v. Bennett*,
829 F.2d 795 (9th Cir. 1987) ..................................................................... 16

*Cheek v. United States*,
498 U.S. 192 (1991) ................................................................................... 19

*United States ex rel. Davis v. District of Columbia*,
679 F.3d 832 (D.C. Cir. 2012) ................................................................... 20

*United States ex rel. Dye v. ATK Launch Systems, Inc.*,
No. 1:06-CV-39 TS, 2008 WL 4642164 (D. Utah Oct. 16, 2008)............. 7, 8

*Echavez v. Abercrombie & Fitch Co. Inc.*,
No. CV 11-9754 GAF, 2013 WL 7162011 (C.D. Cal. Aug. 13,
2013) ..................................................................................................... 3, 16

*United States ex rel. Fisher v. Ocwen Loan Serv., LLC*,
Nos. 4:12-CV-543, 4:12-CV-461, 2016 WL 3031713, & 12 (E.D.
Tex. May 25, 2016) ................................................................................... 15

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
467 U.S. 51 (1984) ..................................................................................... 14

*United States ex rel. Jordan v. Northrup Grumman Corp.*,
No. CV 95-2985 ABC (EX), 2002 WL 35454612 (C.D. Cal. Aug.
5, 2002) ...........................................................................................*passim*

*Kizer v. PTP, Inc.*,
129 F. Supp. 3d 1000 (D. Nev. 2015) ......................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  308 F.R.D. 1 (D.D.C. 2015) ................................................................. 12

*Los Angeles Cty. Emp. Ret. Ass'n v. Towers, Perrin, Forster &
  Crosby, Inc.*,
  No. CV 01-1351DDP(CTX), 2002 WL 32919576 (C.D. Cal. June
  20, 2002) .............................................................................................. 19

*United States ex rel. McGrath v. Microsemi Corp.*,
  690 F. App'x. 551 (9th Cir. 2017) ........................................................ 18

*U.S. ex rel. Monahan v. Robert Wood Johnson Univ. Hosp. at
  Hamilton*,
  No. 02-5702 (JAG), 2009 WL 4576097 (D.N.J. Dec. 1, 2009) ............. 12

*Office of Personnel Management v. Richmond*,
  496 U.S. 414 (1990) ...................................................................... 5, 6, 9

*Perez v. Auto Tech. Co.*,
  No. CV 13-06728MMM, 2014 WL 12591254 (C.D. Cal. Feb. 4,
  2014) ...................................................................................................... 3

*Quintana v. Baca*,
  233 F.R.D. 562 (C.D. Cal. 2005) ...................................................... 1, 3

*S.E.C. v. Sands*,
  902 F. Supp. 1149 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First
  Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) ................................. 3, 14

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ............................................................................... 18

*Simmons v. Navajo Cty.*,
  609 F.3d 1011 (9th Cir. 2010) ............................................................... 3

*Socop-Gonzalez v. INS*,
  272 F.3d 1176 (9th Cir. 2001) (en banc) ............................................. 13

*California ex rel. State Lands Comm'n. v. United States*,
  512 F. Supp. 36 (N.D. Cal. 1981) .......................................................... 3

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
  971 F.2d 401 (9th Cir. 1992) ............................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

*United States ex rel. Swoben v. Scan Health Plan*,
   CV 09-5013-JFW, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .........................4

*United States v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008) ....................................................................17

*United States v. Fowler*,
   913 F.2d 1382 (9th Cir. 1990) ................................................................6, 9

*United States v. Hatcher*,
   922 F.2d 1402 (9th Cir. 1991) ......................................................................6

*United States v. Hemmen*,
   51 F.3d 883 (9th Cir. 1995) ........................................................................13

*United States v. McAfee*,
   44 F. App'x 223 (9th Cir. 2002) ..................................................................6

*United States v. Mead*,
   426 F.2d 118 (9th Cir. 1970) ......................................................................16

*United States v. Pac. Gas & Elec. Co.*,
   178 F. Supp. 3d 927 (N.D. Cal. 2016) .........................................................18

*United States v. Powell*,
   955 F.2d 1206 (9th Cir. 1991) ....................................................................19

*Universal Health Services Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ...............................................................................17

*Wallace v. Countrywide Home Loans, Inc.*,
   No. SACV 08-1463 AG (MLGx), 2009 WL 4349534 (C.D. Cal.
   Nov. 23, 2009) ............................................................................................8

*Watkins v. United States Army*,
   875 F.2d 699 (9th Cir. 1989) ......................................................................13

**STATUTES**

31 U.S.C. § 3729(a)(1)(G) ...............................................................4, 7, 10, 18

31 U.S.C. § 3729(b)(3) .........................................................................................4

42 U.S.C. § 1395w-23(a)(1)(C) .......................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

42 U.S.C. § 1395w-23(a) ........................................................................ 11

42 U.S.C. § 1395d ................................................................................ 20

### RULES

Fed. R. Civ. P. 8(c) ............................................................................... 2

Fed. R. Civ. P. 12(f) .............................................................................. 9

### REGULATIONS

42 C.F.R. § 422.322(b) .......................................................................... 20

### CONSTITUTIONAL PROVISIONS

U.S. CONST., art I, § 9, cl. 7 .................................................................. 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

# I.    INTRODUCTION

This Court observed at the scheduling conference that motions to strike affirmative defenses ordinarily are a "monumental waste of everybody's time." Scheduling Conference Tr. at 7:23, Apr. 9, 2018, ECF No. 229.  That description fits the government's[1] motion like a glove.

Precisely because such motions are so often a waste of time, "courts often require 'a showing of prejudice by the moving party' before granting the requested relief."  *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005).  And while the motion is misguided for a host of reasons—indeed, with respect to many of the affirmative defenses, the government does not even attempt to argue that they are invalid as to the two common law causes of action remaining in the complaint—its most basic and overarching failing is that it establishes no prejudice to the government whatsoever.

The government asserts that granting its motion would prevent a "dramatic expansion of the scope of discovery" about the knowledge of "Government employees and agency officials."  Pl.'s Mem. in Supp. of Mot. to Strike Affirmative Defenses ("Mem.") at 1, ECF No. 235-1.  And it is not hard to guess why the government is so eager to avoid that discovery.  Already, the only current Centers for Medicare and Medicaid Services ("CMS") official deposed to date who has extensive knowledge of the details of the risk adjustment system—and whose deposition the government vigorously opposed—confirmed the validity of United's defenses at multiple levels, including on the key question of whether CMS believes that it is improper for Medicare Advantage plans to conduct so-called "one way" chart reviews.  *See* Defs.' Opp'n to Mot. for Partial Summ. J. 40–41.  And as explained at length in the Rule 56(d) declaration submitted along with

---

[1] Plaintiffs' Motion to Strike Affirmative Defenses ("Mot."), ECF No. 235, was filed on behalf of both the government and Relator Benjamin Poehling. United uses the term "government" to refer collectively to the parties filing the motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1   United's Opposition to Plaintiffs' Motion for Partial Summary Judgment, there is

2   every reason to think that additional discovery from CMS will undermine the

3   government's litigation position even more.

4       But contrary to the government's implicit assertion, striking United's

5   affirmative defenses would do nothing to shelter the government from that long-

6   delayed discovery.  All of the same facts about the government's knowledge and

7   views that are relevant to United's affirmative defenses are relevant to many other

8   issues in the case, too.  The government wholly ignores, for example, its pending

9   claim for Payment By Mistake, but that claim requires the government to prove

10  what it knew and what it would have done differently if it had the knowledge it

11  claims it lacked.  The government cannot deprive United of discovery about the

12  very elements of that claim.  In addition, the government's Unjust Enrichment and

13  remaining False Claims Act count both similarly place the government's views and

14  knowledge directly at issue on elements ranging from whether diagnosis codes are

15  material to whether being paid based on some unsupported codes is unjust.

16      As this Court noted when the government first suggested its intent to file this

17  motion, there will be "many other opportunities . . . in this case to decide what the

18  affirmative defenses are, including settling jury instructions if it comes to that."

19  Scheduling Conference Tr. at 8:13–16.  The government's request to eliminate

20  defenses now, before United has been given the opportunity to develop them and at

21  a stage when striking them would have no impact on the case, is just a waste of

22  time.  The motion should be denied.

23  **II.    LEGAL STANDARD**

24      The government faces a heavy burden in moving to strike United's

25  affirmative defenses.  By design, the Federal Rules of Civil Procedure encourage

26  defendants to assert all affirmative defenses that might possibly be relevant in the

27  case.  *See* Fed. R. Civ. P. 8(c).  Unlike the affirmative allegations in a complaint,

28  which must contain factual matter sufficient to demonstrate that the plaintiff's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1    claims are plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

2    "[t]he key to determining the sufficiency of pleading an affirmative defense" is

3    simply "whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo*

4    *Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010).  Only later, after the defendant has had

5    an opportunity to take discovery that will support its affirmative defenses from the

6    plaintiff who initiated the litigation, is it ordinarily appropriate to rule on the

7    sufficiency of the affirmative defenses in a given case.

8        Accordingly, in assessing a motion to strike affirmative defenses, "[t]he

9    Court must treat as admitted all material factual allegations underlying the

10   challenged defenses and all reasonable presumptions that can be drawn therefrom."

11   *Perez v. Auto Tech. Co.*, No. CV 13-06728MMM (VBKx), 2014 WL 12591254, at

12   *2 (C.D. Cal. Feb. 4, 2014) (quoting *California ex rel. State Lands Comm'n v.*

13   *United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981)).  "To strike an affirmative

14   defense, the moving party must convince the court that there are no questions of

15   fact, that any questions of law are clear and not in dispute, and that under no set of

16   circumstances could the defense succeed." *S.E.C. v. Sands*, 902 F. Supp. 1149,

17   1165 (C.D. Cal. 1995) (citation and internal quotation marks omitted), *aff'd sub*

18   *nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998).

19       Finally, the government must show that allowing the challenged defenses to

20   remain in the case beyond the pleading stage "may prejudice one or more of the

21   parties to the suit." *Echavez v. Abercrombie & Fitch Co. Inc.*, No. CV 11-9754

22   GAF (PJWx), 2013 WL 7162011, at *9 (C.D. Cal. Aug. 13, 2013) (citation and

23   internal quotation marks omitted)); *see also, e.g.*, *Quintana*, 233 F.R.D. at 564.

24   **III.   BACKGROUND**

25       This Court is well aware of the background of this case.  United describes it

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1    here only briefly, as necessary to address the specific arguments presented.[2]

2         On November 17, 2017, the government filed its First Amended Complaint-

3    In-Intervention. Am. Compl., ECF No. 171. The government's decision to amend

4    its complaint followed the dismissal of similar claims in *United States ex rel.*

5    *Swoben v. Scan Health Plan*, CV 09-5013-JFW (JEMx), 2017 WL 4564722 (C.D.

6    Cal. Oct. 5, 2017). The amended complaint here contained six counts—four

7    asserting claims under the False Claims Act, and two asserting common law claims

8    for Unjust Enrichment and Payment By Mistake. Am. Compl. ¶¶ 234-52. On

9    February 12, 2018, this Court granted United's motion to dismiss three of the four

10   False Claims Act counts because they failed to plead materiality adequately. Mot.

11   to Dismiss Order, ECF No. 212.

12        The government did not attempt to re-plead those three dismissed counts,

13   effectively conceding that the allegedly false attestations then at the core of its

14   complaint were not material. Instead, the government chose to proceed on its

15   common law claims for Unjust Enrichment and Payment By Mistake, along with a

16   "reverse" False Claims Act theory that was not asserted in *Swoben* and that

17   requires the government to prove United "knowingly conceal[ed] or knowingly

18   and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or

19   property to the Government." 31 U.S.C. § 3729(a)(1)(G). An "obligation" is "an

20   established duty, whether or not fixed, arising from an express or implied

21   contractual . . . relationship, from a fee-based or similar relationship, from statute

22   or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

23   Plaintiffs' complaint is replete with references to CMS's alleged overpayments to

24   United. *See, e.g.,* Am. Compl. ¶¶ 267–70. Central to all of the government's

25   remaining claims, therefore, is the theory that United obtained overpayments to

26   _____

27   [2] United addresses the background of the Medicare Advantage risk adjustment
     system in more detail in its contemporaneously filed opposition to the
28   government's motion for partial summary judgment.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1  which it was not entitled, which the government did not intend to make, and which

2  would be improper or unjust for United to retain.

3      United filed its Answer and Counterclaim ("Ans. & Countercl."), ECF No.

4  223, in March 2018, which included 22 affirmative defenses.  United later agreed

5  to withdraw several of those affirmative defenses based on conversations with the

6  government.  *See* Mem. at 4 n.3.  On May 22, 2018, the government filed a motion

7  to strike eight of United's remaining affirmative defenses, including estoppel,

8  failure to mitigate, ratification, unjust enrichment, assumption of risk, government

9  knowledge, and course of performance.  Mot., ECF No. 235.

10  **IV.    ARGUMENT**

11      **A.    The Appropriations Clause Of The Constitution Does Not Bar
           Assertion Of United's Affirmative Defenses**

12

13      The government's first argument for dismissal of United's affirmative

14  defenses is a categorical one.  It asserts (at 1) that, by virtue of the Appropriations

15  Clause of the U.S. Constitution,[3] "non-statutory" defenses are never available

16  against the government when it seeks "recovery in cases involving public funds."

17      No such rule exists.  In *Office of Personnel Management v. Richmond*, 496

18  U.S. 414 (1990), the Supreme Court examined the implications of that Clause for a

19  non-statutory *cause of action* asserted by a private plaintiff against the government

20  as a defendant.  It held that where a plaintiff sues the United States in order to

21  recover "a payment of money from the Public Treasury" based on an equitable

22  estoppel theory, the Appropriations Clause bars that affirmative relief if it would

23  be "contrary to a statutory appropriation." *Id.* at 424.

24      *Richmond* did not involve non-statutory affirmative defenses asserted by

25  private litigants, let alone adopt—as the government's motion suggests—a

26

27  [3] The Appropriations Clause provides that "No Money shall be drawn from the
Treasury, but in Consequence of Appropriations made by Law." U.S. CONST., art

28  I, § 9, cl. 7.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

5

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

categorical rule barring those defenses.  After all, the defendant in *Richmond* was the *government*.  As the Ninth Circuit has explained, *Richmond* held only that litigants "may not use the doctrine of estoppel *offensively*, to support 'a claim for payment of money from the Public Treasury contrary to a statutory appropriation.'"  *United States v. Hatcher*, 922 F.2d 1402, 1410 (9th Cir. 1991) (quoting *Richmond*, 496 U.S. at 424  (emphasis in *Hatcher*)).  Thus, following *Richmond*, the ordinary rule remains that "a party is not barred from using equitable estoppel against the Government *defensively*."  *United States v. McAfee*, 44 F. App'x 223, 226 (9th Cir. 2002) (emphasis added).

Courts have recognized one narrow exception to that ordinary rule, in cases in which the government seeks to recover payments made in direct contravention of a statutory appropriation.  *Id.*  In *United States v. Fowler*, for example, the Ninth Circuit ruled that where the defendants had received flood insurance payments for which they were indisputably ineligible under the governing statutory appropriation, they could not rely on estoppel to retain the impermissible payments.  913 F.2d 1382, 1386 (9th Cir. 1990) ("[I]f we were to permit the Fowlers to estop the United States, we would be permitting them to retain public funds that Congress had not appropriated.").

The government's claims here (and thus United's affirmative defenses here) do not come within that narrow exception, for two reasons.  *First*, non-statutory affirmative defenses remain fully available as against non-statutory *claims* brought by the government, including Unjust Enrichment and Payment By Mistake claims like the ones the government maintains here.  *Second*, even where the government seeks relief under the False Claims Act, non-statutory defenses remain available where, as here, the underlying basis for the government's claim is an alleged contractual breach rather than violation of a statutory appropriation.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

6

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

### 1.    The Government's Appropriation Clause Argument Against Non-Statutory Affirmative Defenses Is Inapplicable To The Government's Non-Statutory Claims

The first dispositive flaw in the government's Appropriations Clause argument is that it does not apply to two of the three claims remaining in the case.

Like most of the rest of its motion, the government's argument concerning the Appropriations Clause focuses exclusively on the availability of affirmative defenses to its False Claims Act claim. The government bases this argument on its theory that United violated the reverse false claims provision in Section 3729(a)(1)(G) of the False Claims Act, *see* Mem. at 7, and all of the cases it cites for applying *Richmond* to non-statutory affirmative defenses involved defenses to statutory False Claims Act counts, *see id.* at 8-9 & n.5.

By contrast, the government offers no argument at all for the proposition that where the government brings *non*-statutory claims, like the two common law claims here, a defendant may not respond with *non*-statutory defenses. And the government's silence on that point is unsurprising because such a rule would make no sense. Judicially created limits on common law claims do not in any way infringe on Congress's right to control federal appropriations. Instead, they simply set boundaries on the circumstances in which the courts authorize their own extra-statutory remedies for the government. Where the government invokes a common law cause of action like Unjust Enrichment or Payment By Mistake, it cannot complain that the judicially created claim on which it is suing comes with associated judicial limitations. Instead, like any litigant, the government must accept the bitter with the sweet.

Remarkably, the very cases the government cites hold that a private litigant may indeed invoke non-statutory defenses to non-statutory claims. For example, the government points to *United States ex rel. Dye v. ATK Launch Systems, Inc.*, in which the U.S. District Court for the District of Utah struck certain non-statutory

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

affirmative defenses asserted against the government's False Claims Act counts. No. 1:06-CV-39 TS, 2008 WL 4642164 (D. Utah Oct. 16, 2008).  But the court there specifically *permitted* the defendant to assert non-statutory defenses to the government's common law claims.  *See, e.g., id.* at \*4 (allowing defendant to maintain affirmative defense of failure to mitigate against common law claims for, among other things, Unjust Enrichment and Payment By Mistake).[4]  Similarly, in *United States ex rel. Jordan v. Northrup Grumman Corp.*, another case cited by the government (at 11), the court held that affirmative defenses of waiver, ratification, and failure to mitigate were potentially valid as to the government's common law claims for Unjust Enrichment and Payment By Mistake.  No. CV 95-2985 ABC (EX), 2002 WL 35454612, at \*9, \*17 (C.D. Cal. Aug. 5, 2002).

### 2.   The Government's Argument Also Fails Because The Government's Payments To United Were Not "Contrary To A Statutory Appropriation"

The government's wholesale failure to explain how its Appropriations Clause argument applies to United's defenses to two of the government's three remaining claims is enough, by itself, to resolve this issue.[5]  Once the government acknowledges that an affirmative defense is applicable to *some* of the claims in the case, it has no basis for arguing that it will be prejudiced by allowing that affirmative defense to remain in the case as to other claims as well.  Moreover, Rule 8 does not require a defendant to designate with specificity which affirmative defenses apply to each separate claim brought by a plaintiff (and United's Answer

---

[4]   The court in *Dye* did reject some of the defendant's affirmative defenses as applied to common law claims, but the court's decision allowing some such defenses to go forward demonstrates that there is no overarching bar on the application of non-statutory defenses to non-statutory claims by the government, even where public funds are at issue.

[5]   It is too late for the government to explain in its reply how the argument applies to its common law claims.  *See, e.g., Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463 AG (MLGx), 2009 WL 4349534, at \*7 (C.D. Cal. Nov. 23, 2009) ("[W]e will not consider issues or evidence raised for the first time in plaintiff's reply.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

here does not do so), so a showing that an affirmative defense is potentially viable as to *one* claim is a sufficient basis by itself for denying a motion to strike in its entirety.  In that circumstance, there is no "insufficient defense" to "strike from a pleading," Fed. R. Civ. P. 12(f), and considering whether the affirmative defense might be viable as to all the claims or only some of them is a meaningless exercise.

In any event, even if the government had only brought a False Claims Act case, its Appropriations Clause argument would still lack merit.  That is because, as *Richmond* expressly acknowledged, a payment violates the Appropriations Clause only where it is "contrary to a *statutory appropriation*."  496 U.S. at 424 (emphasis added).  Where the government contends just that a particular payment is contrary to a contractual or regulatory requirement that is not dictated by a statutory appropriation, the Appropriations Clause does not come into play.  *See Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1581 (Fed. Cir. 1993) ("[B]ecause the Supreme Court's analysis in *Richmond* is based entirely on the Appropriations Clause . . ., which provides that 'No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law,' its holding must be limited to claims of entitlement contrary to statutory appropriations.").  In those contractual or regulatory cases, Congress has not set the relevant conditions for expenditure, and so those conditions do not implicate the congressional prerogatives that the Appropriations Clause protects.

*Jordan*, a case from this District, recognized the significance of that distinction to the assertion of affirmative defenses in False Claims Act cases.  *See* 2002 WL 35454612, at *10-*11.  The court there held that if the government bases its False Claims Act allegations on violations of a contract, rather than violations of "statutory eligibility criteria," then the defendant remains free to assert non-statutory affirmative defenses.  *Id.* at *11.  In doing so, the court expressly distinguished *Fowler*, 913 F.2d at 1385, because there the defendants had received funds for which they were ineligible in violation of the appropriations *statute*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

*Jordan,* 2002 WL 35454612, at *11 n.7.  Where the government's False Claims Act case is based instead on alleged *non*-statutory violations, it held, *Fowler* and *Richmond* are inapplicable.  *Id.*

Here, the government points to no violation of a statutory appropriation. Instead, as the section of its complaint describing United's alleged "Obligation to Delete Invalid Diagnoses" makes clear, its allegations are based on its reading of United's contracts with CMS.  *See* Am. Compl. ¶¶ 103–114 (discussing United's contracts with the government, as well as sub-regulatory guidance materials with which the government claims United was contractually obligated to comply).[6]

Seeking to avoid that problem, the government cites (at 7) two statutes with which it claims "Defendants' non-statutory defenses would conflict."  *First*, the government cites Section 3729(a)(1)(G) of the False Claims Act itself.  But the False Claims Act is not a statutory appropriation; it simply creates liability for violations of underlying contractual, regulatory, or statutory requirements—and here, the underlying requirements the government purports to rely upon are contractual, not statutory.  Just as in *Jordan*, therefore, the False Claims Act does not bring the case into the narrow circumstances in which non-statutory affirmative defenses are barred by the Appropriations Clause.  *See Jordan*, 2002 WL 35454612, at *10–*11.

*Second*, the government points to 42 U.S.C. § 1395w-23(a)(1)(C), which provides that in calculating payment amounts to Medicare Advantage plans, CMS

---

[6]  The First Amended Complaint also invokes generalized regulatory obligations to "implement effective compliance programs and to 'detect and correct non-compliance with CMS' program requirements as well as . . . [to] prevent, detect, and correct fraud, waste, and abuse.'"  Am. Compl. ¶ 104.  Those regulatory obligations appear to be irrelevant to the government's remaining False Claims Act count, because a violation of the compliance program requirements, without a violation of any underlying substantive requirement of United's contract, would not create the "obligation to pay or transmit money or property to the Government" that 31 U.S.C. § 3729(a)(1)(G) requires.  In any event, government claims based on asserted regulatory violations do not trigger *Richmond* any more than claims based on asserted contractual requirements.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

10

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

should make "adjustment[s] for health status."  But the government never has suggested that the allegations in this case make out a violation of Section 1395w-23(a), or that that provision provides any basis for its claims.  Its First Amended Complaint, for example, alleges no violation of that section (or any other section of the Medicare Act), and Plaintiffs' Motion for Partial Summary Judgment claims that United violated a "regulatory and contractual obligation," but not—apart from the False Claims Act—a statutory one.  Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Partial Summ. J. at 10, ECF No. 234-1; *see also id.* at 8 ("These requirements and obligations are contractual as well as regulatory . . . .").  Indeed, it is *United* that has consistently invoked Section 1395w-23(a)(1)(C), because that is the provision that requires CMS to "ensure actuarial equivalence"—a mandate that the government's theory in this case would violate.[7]

Accordingly, because the government has identified no "statutory appropriation" that would be frustrated if United prevails on its non-statutory affirmative defenses, the government is wrong that those defenses are inapplicable to its remaining False Claims Act count.

## B. The Government's Challenges To The Individual Affirmative Defenses Fail As Well

The government also challenges each of United's affirmative defenses individually.  These arguments lack merit, too.

### 1. *The Government Effectively Concedes That United's Affirmative Defenses Of Failure To Mitigate, Ratification, And Assumption Of Risk Are Valid As To Its Common Law Claims*

As noted above, the government focuses its motion almost exclusively on its single remaining False Claims Act count.  Indeed, it explicitly limits its arguments about three of the affirmative defenses to their validity as to that False Claims Act

---

[7]  Even if the government *had* alleged a violation of Section 1395w-23(a), United would at the very least be allowed to maintain its affirmative defenses against the government's contractual and regulatory theories.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

count, effectively conceding that those defenses *are* valid as to its common law claims.  For example, in contrast to its argument that "Government Knowledge . . . Is Not a Defense to *Any Claim* in this Case," the government argues only that "Failure to Mitigate . . . is Not a Defense to Claims *under the FCA*."  Mem. at 16; *id.* at 11 (emphases added).  Its argument about ratification is limited in the same way, contending that "Defendants Have Not Pled and Cannot Plead a Ratification Defense . . . *to FCA Claims*."  *Id.* 12 (emphasis added).  And its argument as to assumption of risk likewise consists only of its assertion that "assumption of risk is not a defense *to the FCA claims at issue in this case*."  *Id.* at 14 (emphasis added).  Because the government has not even attempted to show that those three affirmative defenses are invalid as to two of the three claims in the case, its motion to strike them should be denied.  *See supra* at 8.[8]

## 2.    The Government Fails to Show That United's Estoppel Defenses Could Not Possibly Succeed

United has asserted two affirmative defenses sounding in estoppel (Affirmative Defenses Nos. 2 and 8).  Those defenses reflect the fact that government officials (1) were aware of United's practices, (2) advised United that it was not required to perform so-called "two-way looks" to identify and delete unsupported codes, and (3) accepted United's annual bids while knowing that those bids were based on the *express* premise (contained within United's bid proposals) that United was not validating provider-submitted codes through review

---

[8]  United has not yet determined whether it would assert those affirmative defenses with respect to the government's False Claims Act count, and a decision by this Court about whether it *could* do so would be purely advisory—and thus inappropriate—at this stage.  *See supra* at 8.  If United does decide to assert those defenses against the False Claims Act count, there is precedent supporting its right to do so.  *See, e.g., Jordan*, 2002 WL 35454612, at *8 (declining to strike affirmative defense of ratification asserted against government FCA claim); *U.S. ex rel. Monahan v. Robert Wood Johnson Univ. Hosp. at Hamilton*, No. 02-5702 (JAG), 2009 WL 4576097, at *7 (D.N.J. Dec. 1, 2009) (denying government motion to strike the affirmative defense of waiver); *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 5 (D.D.C. 2015) (denying motion to strike ratification affirmative defense to FCA claims).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

of medical records.  *See* Ans. & Countercl. ¶ 28. CMS accepted those bids, moreover, knowing that if United *had* undertaken such steps to delete unsupported codes, United would have submitted bids at higher prices to the government in order to make up for the revenue shortfalls that deleting codes would create.  *See id.* ¶ 34.  CMS reviewed United's bids, including the express assumptions those bids contained, and approved them before signing.  *Id.*  Having induced United to submit bids at a lower cost to the government through assurances about its interpretation of the regulatory and contractual obligations surrounding risk adjustment, the government now is estopped from advancing a different understanding of risk adjustment that would force United—having already performed its obligations under the contracts—to pay the government back the difference three times over.  *Cf. Watkins v. United States Army,* 875 F.2d 699 (9th Cir. 1989) (en banc) (holding that the Army was estopped from refusing to reenlist an Army veteran on the basis of his homosexuality where it had repeatedly permitted him to reenlist in the past with full knowledge of his homosexuality).

The government argues that the Court nevertheless should strike United's estoppel defenses because United has not shown that "(1) the public's interest will not suffer undue damage as a result of the application of the [estoppel] doctrine; and (2) the Government engaged in affirmative conduct going beyond mere negligence," such as "a deliberate lie or pattern of false promises."  Mem. at 9–10 (quoting *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995) (internal quotation marks omitted)); *id.* at 10 (quoting *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1185 (9th Cir. 2001) (en banc) (internal quotation marks omitted)).  In offering that argument, however, the government ignores the standard applicable on a motion to strike—namely, that "under no set of circumstances could the defense succeed."  *Sands*, 902 F. Supp. at 1165, *aff'd sub nom. First Pac. Bancorp*, 142 F.3d 1186.  At this stage of the case, one inference to draw from the facts alleged is that CMS officials deliberately provided assurances to United about the

13

nature of its risk adjustment obligations in order to ensure that United would not increase the price of its bid for a beneficiary with an average risk profile, knowing full well that Department of Justice False Claims Act attorneys were settling on a different interpretation of United's risk adjustment obligations in the course of their sealed investigation of the *Poehling* complaint.    That sort of intentional "whipsawing" would readily satisfy the requirements of estoppel against the government, going well beyond mere negligence and frustrating the "interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 60–61 (1984).

The fact that United's affirmative defense should proceed at this stage, of course, is not to pass judgment on whether United ultimately will prevail.    But United has a right to continue to investigate why the messages it received about its risk adjustment obligations in conversations with CMS officials were so starkly different from the positions that the Department of Justice now has taken in its False Claims Act suit.    If the different messages were calculated to induce continued participation and reliance, while at the same time pursuing a strategy through a six-year-long sealed False Claims Act investigation to recover the government's payments (trebled), then estoppel absolutely would be appropriate. At this point, it is too early to rule out estoppel.

### 3.    *The Government Identifies No Prejudice That It Will Suffer If United's Government Knowledge Affirmative Defenses Remain In The Case*

United also has pleaded two affirmative defenses based on the government's knowledge of the facts surrounding United's claims for payment (Affirmative Defenses Nos. 3 and 14).

The government does not dispute that its knowledge of those facts will be an important issue on summary judgment or at trial.    *See, e.g.*, Mem. at 17 (acknowledging "[t]he fact that the Government's knowledge may still be relevant

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

to an element of an FCA plaintiff's claim"). But it argues (at 16-17) that government knowledge was eliminated as a statutory affirmative defense in 1986, and that today the government's knowledge is relevant only because it can undermine the elements of the government's affirmative case for liability, not because it offers an affirmative defense after liability has already been established.

United has no quarrel with the proposition that government knowledge goes to elements on which the government—not United—bears the burden of proof. Indeed, United fully intends to argue that the government's knowledge of the facts around United's risk adjustment submissions means that the government cannot establish (among other things) the scienter or materiality elements of its False Claims Act claim. Nevertheless, False Claims Act defendants routinely assert government knowledge as an affirmative defense out of an abundance of caution, in order to avoid any later argument by the government that they have somehow waived the issue. And courts, for their part, routinely allow such defenses to go forward at the pleading and even summary judgment stages. *See, e.g.*, *Jordan*, 2002 WL 35454612, at *7-*8 (denying motion to strike defenses of Knowledge or Waiver); *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, No. CIV 05-279 WJ/WDS, 2011 WL 13115254, at *10 (D.N.M. Dec. 7, 2011) (declining to strike "Government knowledge" defense); *United States ex rel. Fisher v. Ocwen Loan Serv., LLC*, Nos. 4:12-CV-543, 4:12-CV-461, 2016 WL 3031713, at *11 n.9 & 12 (E.D. Tex. May 25, 2016) (denying the relator's motion for summary judgment as to government knowledge affirmative defense because "Defendants have the right to negate Relators' scienter evidence with evidence that the government had knowledge of the falsity of the statement or claim").

This Court should do the same. Even if the Court ultimately holds, or the parties ultimately agree, that government knowledge should be treated only as an aspect of the affirmative case for liability and not as an affirmative defense, the government has not identified any prejudice it will suffer from allowing the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

affirmative defense to remain in United's pleading at this stage. *See Echavez*, 2013 WL 7162011, at *9 (discussing prejudice requirement). Its argument on that score relies solely on its contentions (at 18) that "information that Defendants did not know was in the Government's possession will be irrelevant to Defendants' scienter," and that eliminating the government knowledge affirmative defenses will therefore narrow the scope of discovery. But that is incorrect.

In the first place, the government ignores that one of its remaining claims is for Payment By Mistake. In order to recover on that theory, the government must prove that it "made [the relevant] payments *under an erroneous belief* which was material to the decision to pay." *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970) (emphasis added); *see also, e.g.*, *California Dep't of Educ. v. Bennett*, 829 F.2d 795, 798 (9th Cir. 1987) ("[Payment by mistake] doctrine permits recapture of funds which the government or its agents have erroneously paid."). Accordingly, the government's complaint alleges that "[h]ad the United States known the truth, it would not have paid such claims. Payment was therefore by mistake." Am. Compl. ¶ 360. Having brought a claim that depends on showing that it had an erroneous belief about the facts and circumstances of the risk adjustment payments and that it would not have made those payments had it known the truth, the government cannot then refuse to provide discovery relevant to what its beliefs about those facts and circumstances were and what it would have done had its beliefs been different. Remarkably, the government ignores that claim entirely, but it provides a complete answer to the government's attempts to show that it will be prejudiced by this affirmative defense remaining in the case.

Even as to its False Claims Act count, the government ignores that the same discovery will be needed for other elements of that claim. This Court has held that even if *United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008), supplies the applicable materiality standard for reverse false claims suits following the Supreme Court's decision in *Universal Health Services Inc. v. United States ex rel.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

*Escobar*, 136 S. Ct. 1989, 1996 (2016), the government must show that a violation was "likely to affect whether and how much the Government would have paid to a defendant."  Mot. to Dismiss Order at 18-19.  In denying United's motion to dismiss the remaining False Claims Act count, the Court found that the government had made sufficient "factual allegations of the effect of the submission of invalid diagnosis codes on the Government's risk adjustment payments," *id.* at 20, such as the complaint's categorical assertion that when "CMS has *actual knowledge* about the specific diagnoses that were submitted for payment (such as because they were deleted in the RAPS system), Medicare recovers the associated overpayments," Am. Compl. ¶ 330.  But now the government has to prove that factual assertion—and United is entitled to discovery related to it, including discovery about the government's knowledge of specific unsupported diagnosis codes and continued payments notwithstanding that knowledge, what steps it took to acquire actual knowledge of specific unsupported codes when learning plans had engaged in one-way chart reviews, and so forth.  *See Escobar*, 136 S. Ct. at 2003 (discussing various types of "proof of materiality").  Likewise relevant will be evidence about the government's decision, in audits of Medicare Advantage plans, to deliberately forego recovery of certain payments tied to unsupported diagnosis codes.  *See* Defs.' Opp'n to Mot. for Partial Summ. J. 11-13.  Specifically, CMS has determined that it would be inappropriate to seek recoveries of payments on unsupported codes when the rate of a plan's unsupported codes is less than CMS's.  That fact, of course, is important—if not dispositive—as to whether the retention of an alleged overpayment on such codes would be "improper" under Section 3729(a)(1)(G).

Another reason why the government's knowledge would be relevant at trial is that it will help to show that United's interpretation of the regulatory rules and contractual terms was reasonable.  The Supreme Court has recognized that where there are multiple "objectively reasonable" interpretations of a given provision, "it

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

would defy history and current thinking to treat a defendant who merely adopts one such [objectively reasonable] interpretation as a knowing or reckless violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-71 & n.20 (2007).  That is true regardless of the defendant's own subjective knowledge or beliefs, because "Congress could not have intended [penalties] for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been."  *Id.* at n.20; *see also, e.g.*, *United States ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x. 551, 552 (9th Cir. 2017) (applying *Safeco* to scienter requirement of False Claims Act).  Evidence about whether government regulators "had the same interpretation of a regulation as" the defendant is thus relevant, regardless of whether the defendant actually knew of that evidence, because it "supports [the] defense that such interpretation was objectively reasonable and therefore not a willful violation of the law."  *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 963 (N.D. Cal. 2016) (ruling such evidence admissible at trial).  And even as to the defendant's subjective beliefs, evidence that the defendant's asserted belief was reasonable can help a factfinder determine whether, in fact, the defendant actually held the asserted belief.  "[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties," and conversely, the more *reasonable* the beliefs are, the more likely the jury is to believe that they were genuinely held.  *Cheek v. United States*, 498 U.S. 192, 203–04 (1991); *United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir. 1991).  Showing that government officials agreed with United's interpretation would be relevant on that score, too.

### 4.    *United's Unjust Enrichment Defense Should Not Be Stricken At this Juncture*

Finally, United has pleaded an affirmative defense of Unjust Enrichment.  Courts within the Ninth Circuit repeatedly have allowed parties to invoke Unjust

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1   Enrichment as an affirmative defense in varying contexts.  *See, e.g.*, *Kizer v. PTP,*
2   *Inc.*, 129 F. Supp. 3d 1000, 1005–06 (D. Nev. 2015); *Los Angeles Cty. Emp. Ret.*
3   *Ass'n v. Towers, Perrin, Forster & Crosby, Inc.*, No. CV 01-1351DDP(CTX),
4   2002 WL 32919576, at *24 (C.D. Cal. June 20, 2002).  The government points to
5   nothing about its False Claims Act or Payment By Mistake claims that would
6   suggest that they should be treated any differently.

7        Nevertheless, the government is correct that "where there is a specific
8   contract [that] governs the relationship of the parties, the doctrine of unjust
9   enrichment has no application."  Mem. at 15 (quoting *Sutter Home Winery, Inc. v.*
10  *Vintage Selections, Ltd.*, 971 F.2d 401, 408-09 (9th Cir. 1992) (alteration in
11  original)).  United pleaded its Unjust Enrichment defense out of an abundance of
12  caution, in case the government later took the position that its contracts with
13  United did not cover all aspects of the parties' relationship.  After all, the
14  government itself has asserted a claim for Unjust Enrichment, which would only be
15  valid—as the government now concedes—if there were *not* a specific contract
16  governing that relationship.  Now that the government has committed itself in its
17  motion to strike to the view that there are express contracts governing all of the
18  party relationships here, United intends at the appropriate time to move for
19  summary judgment on the government's Unjust Enrichment claim, precisely on the
20  basis of the argument advanced here by the government.

21       For now, however, United undoubtedly is entitled to defend itself by
22  developing facts showing that the government received the full benefit of the
23  bargain and that it would be the government that would be unjustly enriched were
24  it to recover here.[9]  Because the exact same facts that are relevant to United's

25  _____

26  [9]  The government contends (at 14-15) that it did not receive any benefit from the
27  insurance coverage that United provided to literally millions of Americans during
    the years in question, and that the defense therefore fails.  But CMS has a statutory
    obligation to provide healthcare to eligible individuals.  *See, e.g.*, 42 U.S.C.
28  §1395d (describing an eligible individual's "entitlement to have payment made on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1   Unjust Enrichment *defense* will be relevant to the government's Unjust Enrichment

2   *claim*, keeping the Unjust Enrichment defense in the case will cause no prejudice.

3   Accordingly, the motion to strike this defense should be denied as well.

4   **V.    CONCLUSION**

5          The government does not come close to meeting its heavy burden of

6   demonstrating that United's affirmative defenses should be stricken, especially at

7   this early stage of the litigation.  The government unabashedly admits (at 4-5) that

8   its motion is motivated by a desire to block United from discovery into the

9   knowledge and views of CMS employees.  The government appreciates that such

10  discovery would show that senior CMS officials agree with United's interpretation

11  of the pertinent CMS pronouncements, that they do not believe United's conduct

12  amounted to fraud, and that DOJ's enforcement theory continues to be out of step

13  with the views of its client agency.  That evidence would be highly relevant even if

14  the government were to prevail on this motion, and the motion should be denied.

15

16

17

18

19

20

21   his behalf").  United, by paying for the healthcare needs of its enrollees, satisfied
     the government's statutory obligation (and did so in a manner that transferred the
22   risk of unusually large expenditures from CMS to United).  *See* 42 C.F.R.
     § 422.322(b) (noting that payments to MA organizations are "instead of amounts
23   which (in the absence of the contract) would otherwise be payable under original
     Medicare for items and services furnished to the individual").  If United had not
24   provided that coverage, then CMS would have had to obtain it from some other
     Medicare Advantage plan, or to provide the coverage itself.  And just as paying
25   someone else's taxes provides a benefit to that person even though the money is
     actually transmitted to the Treasury, so too did United's actions satisfying CMS's
26   statutory obligations provide a "benefit" to CMS.  Indeed, the government got
     exactly what it paid for—and now, with that benefit already obtained, wants to
27   undo its payment. *Cf. United States ex rel. Davis v. District of Columbia*, 679 F.3d
     832, 839 (D.C. Cir. 2012) (holding in False Claims Act case about Medicaid that
28   where "the government got what it paid for[,] there are no damages").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)

1    Dated:  July 23, 2018                              LATHAM & WATKINS LLP
2                                                       DAVID J. SCHINDLER
                                                        DANIEL MERON
3                                                       KATHRYN H. RUEMMLER
                                                        ABID R. QURESHI
4

5
                                                        By /s/ David J. Schindler
6                                                         David J. Schindler
7                                                         Attorneys for United Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

UNITED'S OPPOSITION TO MOT.
TO STRIKE AFF. DEFENSES
Case No. 2:16-cv-08697-MWF(SSx)