JOSEPH H. HUNT
Assistant Attorney General, Civil Division
NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
DAVID K. BARRETT
ABRAHAM C. MELTZER
JOHN E. LEE (CBN 128696)
Assistant United States Attorneys
    300 N. Los Angeles Street, Room 7516
    Los Angeles, California 90012
    Tel: (213) 894-3995; Fax: (213) 894-7819
    Email: john.lee2@usdoj.gov
MICHAEL D. GRANSTON
DANIEL R. ANDERSON
EDWARD C. CROOKE
CAROL L. WALLACK
JUSTIN DRAYCOTT
PAUL G. FREEBORNE
JESSICA KRIEG
ZOILA E. HINSON
AMY L. LIKOFF
ADAM R. TAROSKY
Attorneys, Civil Division, U.S. Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 307-0486; Fax: (202) 307-3852
    Email:  carol.wallack@usdoj.gov
JAMES P. KENNEDY, JR.
United States Attorney
KATHLEEN ANN LYNCH
Assistant United States Attorney (Admitted PHV)
    138 Delaware Avenue
    Buffalo, New York 14201
    Tel: (716) 843-5830; Fax: (716) 551-3052
    Email: kathleen.lynch@usdoj.gov
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al*.,<br><br>Defendants. | No. CV 16-08697 MWF (SSx)<br><br>UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR A TEMPORARY STAY OF MOTION TO COMPEL DISCOVERY PENDING ISSUANCE OF RULINGS |

## I. INTRODUCTION

Late Friday afternoon on September 28, 2018, at 4:56 p.m. Pacific Time, 7:56 p.m. Eastern Time, counsel for the United Defendants served by electronic mail their portion of a Joint Stipulation Regarding United's Notice of Motion and Motion to Compel the United States to Produce Documents ("Joint Stipulation") pursuant to Local Rule 37-2.2. *See* Lee Decl. Ex. 1. In serving their Joint Stipulation, United required that the United States provide its portion of the Joint Stipulation, "along with any supporting declarations and exhibits, on or before October 12." *Id.*, Ex. 2 (Sept. 28, 2018 E-mail from David W. Rowe). United's e-mail service of the Joint Stipulation was made in response to the United States' earlier request, made on September 25, 2018, that if United insisted on moving forward with their Motion to Compel the production of voluminous documents subject to the deliberative process privilege, United "allow [the United States] to bring a duly noticed motion seeking a stay before Judge Fitzgerald." *Id.* (Sept. 25, 2018 E-mail from Paul Freeborne).

The United States' request was eminently reasonable. Not only are United's discovery requests implicating the deliberative process privilege extraordinarily burdensome and oppressive, they seek documents of no relevance given the nature of this False Claims Act ("FCA") case, which focuses on United's conduct and knowledge. Internal agency deliberations can shed no meaningful light on United's conduct or knowledge. The United States has thus objected to requests on relevance and burden grounds, and sought threshold rulings from the Court that define the appropriate scope of Rule 26(b) discovery in this matter. Three of the motions were heard on September 17, 2018 and the Rule 16(b) motion requesting a Scheduling Order defining the limits of discovery has now been fully briefed and submitted. The United States seeks a stay of any consideration of United's motion while the Court rules on the pending motions—or seeks further guidance from the parties regarding the scope of discovery. Doing so will conserve limited resources of the affected agency, the Centers for Medicare and Medicaid Services ("CMS"), in perfecting privilege over the thousands of documents

implicated by United's overly broad discovery requests for internal agency deliberations. It will also undoubtedly promote judicial economy.

Judge Segal has recognized that a ruling by this Court on the motions heard on September 17, 2018 could be helpful and stated that she believed that it was up to this Court to determine the relevance of particular issues. *See* July 12, 2018 Hr'g. Tr., Ex. 3, at 63 ("I know you have a hearing before him on September 17th. But I do think you could, you know, do a short motion and ask for it to be heard perhaps at a certain time on the issue of, you know, a stay of discovery or a stay of the discovery motion under the theories you've put forward. Because again, I don't think it's up for me unless Judge Fitzgerald then referred that motion to me . . . ."). And at the September 17th hearing, this Court also recognized the importance of a relevance determination to set the proper bounds of discovery in this case. Sept. 17, 2018 Hr'g Tr., Ex 4, at 55-56 ("At some point Judge Segal and I are just going to have to talk among ourselves about where it makes sense for us to draw the line. . . . Here I will have to talk to her and figure out how are we going to resolve this where it's fair to the two of us and fair to the parties.").

Rather than allow this Court to issue its rulings on the pending motions, or even allow the United States to bring a duly noticed motion seeking a stay pending such rulings, United has chosen to serve its portion of the Joint Stipulation on September 28, 2018, insisting that the United States provide its portion of the Joint Stipulation, declaration, and exhibits by October 12, 2018. United cites to no urgency for doing so. Nor can it. This Court has not yet set any discovery cut-off or other dates in this case.

By this application, the United States respectfully requests a temporary stay of the briefing relating to and consideration of United's Motion to Compel pending rulings by this Court on the matters raised by the government's motions. (*See* Dkt. Nos. 234, 235, 236, and 261.) Doing so will permit discovery disputes to be focused on information that is properly "discoverable," as defined by Fed. R. Civ. P. 26(b)(5).[1]

---

[1] This application only seeks to stay United's Motion to Compel, which appears to seek only deliberative process privileged documents. Other discovery remains ongoing.

3

Advised of this application, counsel for United stated that they opposed this application and would file an opposition. *See* Lee Decl., ¶¶ 6-7. Counsel for United are:

| | |
|---|---|
| David J. Schindler, Esq. | Daniel Meron, Esq. |
| Latham & Watkins LLP | Latham & Watkins LLP |
| 355 South Grand Avenue, Suite 100 | 555 Eleventh Street, NW, Suite 1000 |
| Los Angeles, California 90071-1560 | Washington, D.C. 20004-1304 |
| Telephone: 213-485-1234 | Telephone: (202) 637-2200 |
| david.schindler@lw.com | daniel.meron@lw.com |

## II. ARGUMENT

### A. *Ex Parte* Relief Is Warranted Because United Has Given the United States an Arbitrary October 12, 2018 Deadline to Complete Its Portion of a Joint Discovery Stipulation

*Ex parte* applications are appropriate where "there is some genuine urgency such that 'immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition.'" *In re Intermagnetics America, Inc.*, 101 B.R. 191, 192 (C.D. Cal. 1989) (citing Fed. R. Civ. P. 65(b)); *see also Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) (*ex parte* applications are appropriate where the moving party's cause will be "irreparably prejudiced" and the moving party was not at fault).

Here, the United States, including CMS, will be irreparably injured if it is required, as United insists, to perfect privilege over documents subject to the deliberative process privilege. As described below, while the requested documents are extremely burdensome to review and produce, they are of no meaningful relevance in this action. Given so, the United States has brought several motions seeking rulings by this Court that will necessarily have an impact on the scope of the issues properly in this action, which motions were heard on September 17, 2018 and are currently awaiting rulings by this Court. The United States' has also filed a motion requesting the Court to issue a Scheduling Order defining the relevant issues in this case. Under these circumstances,

4

compelling the United States, including CMS, to undertake this process at this time would likely cause it irreparable injury by having to perfect privilege over documents that may ultimately be determined to be irrelevant by the Court.

Moreover, given United's demand that the United States provide its portion of the Joint Stipulation by October 12, 2018 so that United can seek a hearing before Judge Segal on November 6, 2018, *see* Lee Decl., ¶ 7, the United States, including CMS, would be irreparably injured absent *ex parte* proceedings. *See Scott v. City Council for the City of Santa Monica*, 2017 WL 4675720, at *4 (C.D. Cal. 2017) (*ex parte* relief granted where application "cannot be heard on regular motion because preliminary injunction will be decided before any motion can be heard").

Further, the United States is not at fault. The United States promptly sought to bring legal issues to the attention of this Court and has filed four motions, including a Motion Pursuant to rule 16(b)(3) for Issuance of a Scheduling Order Modifying Extent of Discovery (Dkt. No. 261). These motions have been briefed, three of them were heard on September 17, 2018, and the parties are awaiting rulings by the Court.[2] Additionally, the United States acted promptly to bring this *ex parte* application shortly after being served with United's Joint Stipulation on September 28, 2018.

In contrast, United has chosen to press its discovery issues with a false sense of urgency and without regard to the Court's ability to decide what evidence is truly necessary for the parties to either prove or defend the allegations that United knowingly obtained and retained Medicare funds to which it was not entitled by avoiding its obligation to delete invalid diagnosis data. Even though the Court's rulings on the four motions are pending, and there is currently no discovery cut-off date, United has sought to upend the efficient administration of this case by prematurely forcing the Magistrate

---

[2] While United began serving its discovery requests in August 2017, the voluminous document search and collection process has required some time to undertake. Moreover, the United States filed three of the four legal motions on May 22, 2018 and the September 17, 2018 hearing date was set as a result of the briefing schedule that was agreed upon by the parties.

5

Judge to determine critical issues implicating the deliberative process privilege. It has also sought to cause the United States, including CMS, to waste taxpayer resources (including monies) perfecting privilege over internal agency deliberations by arbitrarily fixing October 12, 2018 as the date by which the United States must provide its portion of the Joint Stipulation, along with any declarations and exhibits.

Recently, on September 25, 2018, the United States informed United that it "would prefer to avoid an *ex parte* process and would request that United consider a hearing date on its discovery motion that would allow [the United States] to bring a duly noticed motion seeking a stay before Judge Fitzgerald." Lee Decl., Ex. 2 (Sept. 25, 2018 E-Mail from Paul Freeborne). United rejected even this request, forcing the United States to file this *ex parte* application.

**B. The Disputed Documents Are Subject to the Deliberative Process Privilege and Are Extremely Burdensome to Review and Process**

United has requested numerous documents protected by the deliberative process privilege. United has requested documents relating to CMS' and the Secretary of HHS' internal deliberations about numerous agency decisions and actions, including, for example: (i) HHS' issuance of Part C and D regulations relating to risk adjustment payments (that is, HHS' rulemaking files); (ii) CMS's calibration and recalibrations of the HCC payment model and its determination of the coefficients for the HCCs; (iii) CMS' administrative audit (its Risk Adjustment Data Validation (RADV) audit) extrapolation methodology, including whether its methodology should include any payment error rate adjuster because the payment model (the CMS HCC model) is calibrated based on unaudited diagnosis data; (iv) CMS' analyses about whether the use of unaudited diagnosis data to calibrate the CMS HCC model and determine the coefficients for the HCCs results in any systemic underpayment; (v) HHS' determination of the national Medicare Part C Risk Adjustment ("RA") error rate reported publically each year; and (vi) HHS' determination of the statutory Coding Intensity Adjustor, which is published each year. Given the overbreadth of these requests, the United

States' privilege log now includes approximately 21,400 documents (including some duplicates) protected in whole or in part by the deliberative process privilege. Absent a ruling from the Court that limits scope, this number will increase as discovery proceeds.

United contends that, in order to satisfy its burden of perfecting deliberative process privilege, the United States must meet all of the following requirements as to *each* disputed document:

> (1) a formal claim of privilege by the *head of the department* possessing control over the requested information, (2) an assertion of the privilege based on *actual personal consideration by that official*, and (3) a *detailed specification* of the information for which the privilege is claimed, along with an explanation of why it properly falls within the scope of the privilege.

Ex. 1 at 15 (emphasis added) (citing *Coleman v. Schwarzenegger*, 2008 WL 2237046, at *4 (E.D. Cal. & N.D. Cal. May 29, 2008)). Thus, United expects that the Administrator of CMS not only formally invoke the privilege, but also do so "based on [her] actual personal consideration" of many thousands of documents [so far approximately 21,400 documents] and provide a "detailed specification" and "explanation" regarding the information for which the privilege is claimed. Even though rulings are pending that are anticipated to have significant impact on the proper scope of discovery and whether these documents have any relevance, United now demands that the United States and CMS do all this by October 12, 2018.[3]

United's urgency is false. Given the lack of any scheduled discovery cut-off or other dates in this case, there can be no real urgency here. Given further that the parties

---

[3] While the government initially sought to undertake to complete its review and processing of the documents subject to the deliberative process privilege (most of which are irrelevant), the burden of perfecting the privilege at this stage has proved unworkable. To address this and to aid in the resolution of this dispute, the government offered to provide United with a draft declaration regarding the privileged documents, but United flatly and unequivocally rejected this proposal. *See* Ex. 2 at 7 (Aug. 28, 2018 E-Mail from David Schindler, stating "[u]fortunately, your proposal does not address our concerns . . . .").

have now briefed and argued the four motions and the Court has taken them under submission after the September 17, 2018 hearing, United can provide no real justification for its impatience in refusing to await rulings from this Court.

### C. The Disputed Documents Have No Meaningful Relevance in this False Claims Act Case

United's requests for voluminous documents implicating the deliberative process privilege are even less justified given their lack of relevance to the issues that are germane in this case. United has often sought to justify seeking these burdensome productions of documents largely on the grounds of their purported relevance to the issues of knowledge or materiality, among other arguments it has made in this case. As set forth more fully in the United States' and relator's moving and reply papers submitted in support of their Joint Motion Pursuant to Rule 16(b)(3) for Issuance of Scheduling Order Modifying Extent of Discovery, United's relevancy arguments lack merit and should not be a basis for conducting improper discovery in this case.[4]

This FCA action requires the government to prove United's knowledge of its unlawful conduct, here, its "knowing" avoidance or decrease of an obligation to repay money to the government. Such knowledge naturally focuses on *United's* (not the government's) state of mind and what it knew at the time of the misconduct. *See* Pls.' Mem. of P.&A. in Supp. of Joint Mot. Pursuant to Rule 16(b)(3) (Dkt. No. 261-1) at 11-14; Pls.' Reply Mem. (Dkt. No. 278), at 7-14. Try as it might, United cannot justify its unfettered efforts at rummaging through privileged internal deliberations of countless government employees and officials it never knew, never spoke with, never met, and whose documents it never saw. These internal deliberations do not evidence United's knowledge. United's meritless effort to manufacture some tenuous relevance cannot justify its attempt to obtain wholesale access to CMS' internal documents.

---

[4] *See* Pls.' Mem. of P.&A. in Supp. of Joint Mot. Pursuant to Rule 16(b)(3) (Dkt. No. 261-1), at 8-14; Pls.' Reply Mem. In Supp. of Mot. Pursuant to Rule 16(b)(3) (Dkt. No. 278), at 6-17.

Nor does a materiality argument afford any basis to seek privileged documents. The Risk Adjustment Processing System ("RAPS"), by design, relies on diagnosis codes to automatically determine payment amounts. *See* Pls.' Mem. of P.&A. in Supp. of Joint Mot. Pursuant to Rule 16(b)(3) (Dkt. No. 261-1) at 8-11. Indeed, this Court has already recognized this feature of the system and stated that "generalized knowledge does not amount to actual knowledge of specific invalid diagnoses." Order re Mot. to Dismiss (filed Feb. 12, 2018), (Dkt. No. 212) at 21. United cannot justify embarking on an expansive fishing expedition to further push its rejected generalized knowledge argument. No CMS employee or official could have had actual knowledge of specific invalid diagnoses unless the Medicare Advantage organization made the required deletes in RAPS or otherwise provided CMS with the necessary detailed information about the specific invalid codes so that CMS could have deleted them and recovered the overpayment. Such details would have included the payment year, the plan number, the beneficiary's HIC number, and the code for the specific invalid diagnosis.

United has successfully deleted hundreds of thousands of specific invalid diagnoses over the last decade. (*See, e.g.*, First Amended Complaint, ¶ 235.) It has made these deletes in RAPS. And, in the past, when United has requested some guidance from CMS about successfully deleting invalid diagnoses, CMS has worked with United to recover the improper payments. (*Id.*, ¶ 332.) Discovery about knowledge and materiality in this case should be limited to CMS' processing of United's deletes and its recovery of improper payments from United. There is no basis for any additional discovery, particularly overbroad discovery into internal agency deliberations, based on their purported relevance to materiality or knowledge.[5]

---

[5] United makes a feeble effort to argue that not all diagnosis codes are automatically paid and that "certain deletes" involve affirmative decisions by CMS officials to process the deletes. Joint Stipulation, Ex. 1, at 28. United's citation of its own filing (Dkt. No. 274 at 15-16) is supported only by a "*see generally*" cite to unspecified pages in their own declarations. *See* Dkt. Nos. 274-1, 274-3. These declarations vaguely describe what appear to be technical issues encountered by United in submitting deletes and are insufficient to justify unfettered discovery of CMS's processing of deletes for all Medicare Advantage organizations over the last decade.

Accordingly, the burden that United seeks to impose upon the United States, including CMS, far outweighs any potential benefit that could result from allowing United's premature Motion to Compel to proceed. Particularly given that motions heard and submitted on September 17, 2018 are still pending this Court's rulings, a stay pending the Court's rulings would conserve the resources of the Court and the government and would be prudent at this juncture. Thus, the United States respectfully requests a stay of the briefing and consideration of the Motion to Compel pending issuance of the Court's rulings on the pending motions.

### III. CONCUSION

For the foregoing reasons, the United States respectfully requests that the Court grant this application.

Dated: October 3, 2018                Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
DAVID K. BARRETT
ABRAHAM C. MELTZER
Assistant United States Attorneys

MICHAEL D. GRANSTON
DANIEL R. ANDERSON
EDWARD C. CROOKE
CAROL L. WALLACK
JUSTIN DRAYCOTT
PAUL G. FREEBORNE
JESSICA KRIEG
ZOILA E. HINSON
AMY L. LIKOFF
ADAM R. TAROSKY
Civil Division, Department of Justice

JAMES P. KENNEDY, JR.
United States Attorney
KATHLEEN ANN LYNCH
Assistant United States Attorney

/S/ John E. Lee
_____
JOHN E. LEE, Assistant U.S. Attorney
Attorneys for the United States of America