UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-8697-MWF (SSx)          **Date:  March 28, 2019**
**Title:**      United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

**Present:**   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**        ORDER RE: PLAINTIFFS' MOTION FOR
                                        PARTIAL SUMMARY JUDGMENT [234];
                                        MOTION TO STRIKE AFFIRMATIVE
                                        DEFENSES [235]; AND MOTION TO
                                        DISMISS COUNTERCLAIMS [236]

Before the Court are three motions.

The first is the United States and *Qui Tam* Plaintiff Benjamin Poehling's (collectively, the "Government") Motion for Partial Summary Judgment, filed on May 22, 2018.  (Docket No. 234).  Defendants UnitedHealth Group, Inc., et al. (collectively, "United") filed an Opposition on July 23, 2018.  (Docket No. 250).  The Government filed a Reply on August 27, 2018.  (Docket No. 272).

The second is the Government's Motion to Strike Affirmative Defenses, filed on May 22, 2018.  (Docket No. 235).  United filed an Opposition on July 23, 2018. (Docket No. 248).  The Government filed a Reply on August 27, 2018.  (Docket No. 271).

The third is the Government's Motion to Dismiss Defendants' Counterclaims, filed on May 22, 2018.  (Docket No. 236).  United filed an Opposition on July 23, 2018.  (Docket No. 249).  The Government filed a Reply on August 27, 2018.  (Docket No. 270).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

The Court has read and considered the papers submitted on the Motions, and held a hearing on September 17, 2018.

For the reasons discussed below, the Court rules as follows:

- The Motion for Partial Summary Judgment is **DENIED**.  There is a genuine dispute of material fact as to whether United was required to delete unsupported diagnosis codes in light of the actuarial equivalence and same methodology mandates of Section 1853 of the Medicare Act.

- The Motion to Strike Affirmative Defenses is **GRANTED**.  United's equitable defenses are barred where the Government seeks recovery of money paid in the absence of a statutory appropriation.

- The Motion to Dismiss Counterclaims is **GRANTED** *for lack of jurisdiction* and the counterclaims are **DISMISSED** *without prejudice*.  United's request for severance and transfer is **DENIED**.  United fails to establish that the Court of Federal Claims would have jurisdiction over the counterclaims.

## I.    BACKGROUND

### A.    Procedural Background

Relator Benjamin Poehling filed this *qui tam* lawsuit in the Western District of New York on March 34, 2011.  (Complaint (Docket No. 1)).  The action remained under seal and pending in the Western District of New York for five years while the Department of Justice conducted its investigation.  On November 8, 2016, the Government moved to transfer the sealed action to the Central District of California to enable the action to be consolidated with or related to another *qui tam* action captioned *United States ex rel. Swoben v. United Healthcare Ins. Co. et al.*, CV 09-5013 (C.D. Cal.) ("*Swoben* Action"), which the Government claimed contained related or overlapping allegations.  (Motion to Transfer Venue (Docket No. 48)).  After the action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

was transferred, the Government formally intervened and filed a Complaint-in-Intervention on May 16, 2017.  (*See* Docket No. 114).  The Complaint alleged five claims for relief: three claims under the False Claims Act, and two asserting common law claims for unjust enrichment and payment by mistake.  (*See id.*).

On September 28, 2017, the Court denied United's Motion to Transfer the action to the District of Columbia, and ordered United to respond to the Complaint within 20 days.  (*See* Docket No. 154).  Before United could respond, the Government's claims against United in the *Swoben* Action were dismissed.  *See United States ex rel. Swoben v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *6 (C.D. Cal. Oct. 5, 2017).  The parties in this action therefore agreed that the Government would file an amended complaint.  Accordingly, on November 17, 2017, the Government filed the operative First Amended Complaint-in-Intervention ("FAC").  (Docket No. 171).  The FAC added an additional claim under the False Claims Act that was not directly at issue in the recent *Swoben* Action dismissal.  (*See id.*).

On February 12, 2018, the Court dismissed two of the FAC's claims under the False Claims Act for failure to plead the materiality of the allegedly false attestations on which the claims were based.  (*See* "February 12 Order" (Docket No. 212)).  The Government's only remaining claim under the False Claims Act is based on a "reverse false claims" theory.

### B.   Factual Background

The following facts are based on the evidence, as viewed in the light most favorable to United, the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor.").

### 1.  Medicare Advantage Program

The Centers for Medicare and Medicaid Services ("CMS") administers the Medicare Program, which provides Medicare benefits to elderly and disabled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

individuals.  (United's Statement of Genuine Disputes of Material Fact ("SGD") ¶ 1
(Docket No. 250-1)).  Under Parts A and B of the Medicare Program, known as
"traditional" Medicare, CMS directly reimburses healthcare providers using a "fee-for-
service" ("FFS") payment system.  (*Id.* ¶ 7).  Under Part C, Medicare beneficiaries can
enroll in Medicare Advantage Plans ("MA Plans"), which are managed by private
healthcare insurance organizations ("MA Organizations").  (*Id.* ¶ 4).  Under Part D,
MA Plans also offer prescription drug coverage.  (*Id.* ¶ 6).

Under Part C, CMS pays the MA Organizations a predetermined base monthly
payment for each Medicare beneficiary enrolled in their MA Plans.  (SGD ¶ 8).  CMS
adjusts those payments for various risk factors, such as age, gender, and health status.
(*Id.* ¶ 9).  These adjustments are designed to pay MA Organizations more for
beneficiaries that have more serious medical conditions, and therefore higher risk
scores, than they are paid for beneficiaries who do not have those conditions.  (*Id.*
¶ 11).

Pursuant to Part C, the Secretary has employed the Hierarchical Conditions
Category ("HCC") model to adjust for beneficiaries' health status.  (SGD ¶ 15).  The
Secretary uses a similar model for Part D.  (*Id.* ¶ 16).  HCC is a complex regression
model that collects FFS claims data in order to assign estimated costs to certain
characteristics of Medicare beneficiaries.  (*Id.* ¶ 17).  Specifically, the model includes a
set of multipliers used to determine the marginal additional cost of each medical
condition or demographic factor, which are added up to form a "risk score."  (*Id.* ¶¶ 18,
20).  These risk scores are then used to adjust payments to the MA Organization.  (*Id.*
¶ 20).  The parties dispute whether, for risk adjustment purposes, the medical
conditions associated with each diagnosis code submitted to CMS must be supported
by the beneficiary's medical record.  (*Id.* ¶ 32).

Since 2004, MA Organizations have submitted diagnosis codes to CMS through
CMS's Risk Adjustment Processing System ("RAPS").  (SGD ¶ 22).  Over the last
several years, MA Organizations submitted the codes through RAPS and CMS's
Encounter Data System, which enables CMS to apply the multipliers for each
beneficiary's health status.  (*Id.* ¶¶ 21, 23).  Each submission is a claim for payment.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

(*Id.* ¶ 25).  RAPS allows MA Organizations to delete previously submitted codes and thereby retract the claim for payment for those invalid diagnoses.  (*Id.*).  Since at least 2009 to 2017, United performed "chart reviews," in which it looked for diagnoses documented in beneficiaries' charts that the healthcare provider did not provide.  (FAC ¶¶ 9-10; SGD ¶¶ 73, 91).

        Each MA Organization, through its chief executive officer, chief financial officer, or an individual delegated with authority to sign on behalf of one of these officers, must annually attest that the data submitted for risk adjustment payments are accurate and truthful based on best knowledge, information, and belief, per 42 C.F.R. § 422.504(l)(2).  Each MA Organization must also adopt and implement an effective compliance program that includes measures that prevent, detect, and correct fraud and non-compliance with CMS' program requirements, per 42 C.F.R. § 422.503(b)(4)(vi).  Additionally, MA Organizations "must conduct appropriate corrective actions (for example repayment of overpayments . . .) in response to" "evidence of misconduct related to payment or delivery of items or services under the contract . . . ."  42 C.F.R. § 422.503(b)(4)(vi)(G)(1), (2).

        "To ensure risk adjusted payment integrity and accuracy" the Secretary annually conducts Risk Adjustment Data Validation ("RADV") audits.  42 C.F.R. § 422.311(a).  "RADV audits determine whether the diagnosis codes submitted by MA organizations can be validated by supporting medical record documentation."  (Declaration of David J. Schindler ("Schindler Decl."), Ex. 26 at AR5311 (Docket No. 254-2)).  To conduct a RADV audit, CMS samples enrollees from an MA Plan and reviews its medical records to assess whether that enrollee's diagnosis codes are supported.  (*Id.* at AR5312).  In 2012, CMS adopted a "Fee-For-Service Adjuster" ("FFS Adjuster") that would require MA Organizations to return "overpayments" only to the extent that the insurer's error rate exceeded that under the traditional Medicare system.  (*Id.* at AR5314).  The purpose of the FFS Adjuster is to "account[] for the fact that the documentation standard used in RADV audits to determine a contract's payment error (medical records) is different from the documentation standard used to develop the Part C risk-adjustment model (FFS claims)."  (*Id.* at AR5314-15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

### 2.  Medicare Advantage Contracts

From 2009 to 2017, United entered contracts with CMS governing its participation in the Medicare Program ("MA Contracts").  (Declaration of Cheri Rice ("Rice Decl."), Ex. 1 (Docket No. 234-3)).

Under the MA Contracts, MA Organizations agreed to operate their coordinated care plans "in compliance with the requirements of this contract and applicable Federal statutes, regulations, and policies (e.g., policies as described in the Call Letter, Medicare Managed Care Manual, etc.)."  (Rice Decl., Ex. 1 at 6).  Among other things, MA Organizations also agreed to implement a compliance program in accordance with Part C and D federal compliance regulations and to comply with the attestation requirement under 42 C.F.R. § 422.504(l).  (SGD ¶¶ 36, 40).  The MA Contracts further provided that if any of the MA Organization's activities or responsibilities under the Contract were delegated to other parties, "[a]ll contracts or written agreements must specify that the related entity . . . must comply with all applicable Medicare laws, regulations, and CMS instructions."  (Rice Decl., Ex. 1 at 11-12).

Under Article IV of the MA Contracts, CMS agreed to pay the MA Organization "in accordance with the provisions of Section 1853 of the [Medicare] Act and 42 CFR Part 422 Subpart G [422.504(a)(9)]."  (Rice Decl., Ex. 1 at 10).  The MA Contracts furthermore provided that, "[i]n the event that any provision of this contract conflicts with the provisions of any statute or regulation applicable to an MA Organization, the provisions of the statute or regulation shall have full force and effect."  (*Id.* at 19).

## II.   REQUEST FOR JUDICIAL NOTICE

In conjunction with the Motion for Partial Summary Judgment, the Government requests that the Court take judicial notice of seven exhibits.  (*See* Request for Judicial Notice ("RJN") (Docket No. 234-11)).

As the Court does not rely on this information in making its determinations below, the RJN is **DENIED *as moot***.  The Court would reach the same rulings regardless of whether it considered these materials.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:      United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

## III.   MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.   Legal Standard

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. at 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

### B.   Discussion

By its Motion, the Government asks the Court to resolve whether United was
required by regulation or contract to delete invalid diagnosis codes submitted to CMS
for risk adjusted payments that it knew were unsupported by its beneficiaries' medical
records.  (Mot. at 1).

As a preliminary matter, United contends that the Government's Motion is
procedurally improper because resolution of the issue would not itself produce a
judgment on any claim or element in the case.  (Opp. at 16).  The plain language of
Federal Rule of Civil Procedure 56(a) is clear, however, that a party may move for
summary adjudication "identifying each claim or defense – or the part of each claim or
defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a).  Because the
Government's claim under the False Claims Act requires it to prove that United had an
"obligation" to delete diagnosis codes and a "knowing and improper" avoidance of that
obligation, the Motion falls squarely within Rule 56(a) as part of a claim.  And as the
Government highlights, courts in the Ninth Circuit have frequently resolved legal
issues pertaining to parts of claims or defenses on summary judgment.  (Reply at 7-8
(citing, for example, *Murphy v. Cal. Physician Serv.*, 213 F. Supp. 3d 1238, 1241 (N.D.
Cal. 2016))).  Therefore, the issue is appropriate for summary adjudication.

### 1.   Federal Data Integrity Requirements

The Government argues that several federal regulations require United to delete
previously submitted diagnosis codes that are unsubstantiated by its beneficiaries'
medical records.  (Mot. at 1; Reply at 3).

Chief among these regulations, the Government argues, is 42 C.F.R.
§ 422.310(e), which requires MA Organizations to "submit a sample of medical
records for the validation of risk adjustment data." *Id.*  The Government contends that
this regulation establishes an express requirement of accurate diagnosis coding, or, in
other words, that diagnosis codes be substantiated by beneficiaries' medical records.
(Mot. at 8, 15).  The Government also points to other regulations that it contends
confirm that MA Organizations must ensure the accuracy of their risk adjustment data.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

(Reply at 14).  For instance, the Government cites 42 C.F.R. § 422.503(b)(4)(vi) to
argue that United was required to implement a compliance program with measures to
"prevent, detect, and correct non-compliance with CMS' program requirements as well
as measures that prevent, detect, and correct fraud, waste, and abuse."  *Id.*  Moreover,
the Government contends that MA Organizations "must conduct appropriate corrective
actions (for example repayment of overpayments . . .) in response to" "evidence of
misconduct related to payment or delivery of items or services under the contract . . . ."
42 C.F.R. 422.503(b)(4)(vi)(G)(1), (2).

In opposition, United argues that requiring it to delete unsupported codes would
contravene the "actuarial equivalence" and "same methodology" provisions of Section
1853 of the Medicare Act.

### 2.        Section 1853 of the Medicare Act

*Same methodology*.  United first argues that, because CMS uses unaudited
claims data when calculating risk scores for traditional Medicare beneficiaries,
requiring MA Organizations to delete unsupported codes for purposes of calculating
the risk scores of beneficiaries covered under MA Plans would violate the Act's "same
methodology" provision.  (Opp. at 21-22, 44-45).

In relevant part, 42 U.S.C. § 1395w-23(b)(4) of the Medicare Act provides that
"[t]he Secretary . . . shall provide for the computation and publication . . . of  . . . [t]he
average risk factor for the covered population based on diagnoses reported for
medicare inpatient services, using the same methodology as is expected to be applied in
making payments" to MA Plans.  *Id.*

The Government argues that this section merely refers to CMS's annual
*reporting* requirement, not risk adjustment payments to MA Organizations.  (Reply at
35).  But the Court is unpersuaded that the statute is so limited, given that the face of
the statute also requires "*computation* [of] . . . [t]he average risk factor for the covered
population . . . using the same methodology *as is expected to be applied in making
payments*" to MA Plans.  42 U.S.C. § 1395w-23(b)(4) (emphasis added).  The statute
therefore appears to additionally contemplate equivalence in methods of computation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 16-8697-MWF (SSx)                   Date:  March 28, 2019**
**Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.**

*Actuarial equivalence*.  Next, United contends that the Government's proposed rule would violate the Act's actuarial equivalence provision, because it would result in identical groups of people being assigned different risk scores simply based on whether they are covered by traditional Medicare or an MA Plan.  (Opp. at 22).  In response, the Government argues that the language of the statute merely arms the Secretary with broad ***discretionary*** power to adjust payment levels based on the health status of Medicare beneficiaries.  (Reply at 28).

In relevant part, section 1395w-23(a)(1)(C)(i) provides that "[t]he Secretary shall adjust the payment amount . . . for such risk factors as age, disability status, gender, institutional status, and such other factors as the Secretary determines to be appropriate . . . so as to ensure actuarial equivalence."  *Id.*

The Court is unpersuaded by the Government's argument in light of the plain language of the statute, which provides that the Secretary ***shall*** adjust the payment amount for factors the Secretary deems appropriate ***so as to ensure*** actuarial equivalence.  Such language is far from discretionary.

In both its briefing and at the hearing, the Government argued, further, that the Ninth Circuit rejected United's actuarial equivalence argument in *United States ex rel. Swoben v. United Healthcare Insurance Company*.  848 F.3d 1161 (9th Cir. 2016). There, the Ninth Circuit considered defendants' argument that the requirement under 42 C.F.R. § 422.310(d) that MA Organizations "must submit data that conform to CMS' requirements for ***data equivalent*** to Medicare fee-for-service data" is inconsistent with the requirement that diagnosis codes be supported by the medical record where it does not equally apply to CMS.  *Id.* at 1179 (citing 42 C.F.R. § 422.310(d) (emphasis added)).  The Ninth Circuit rejected defendants' argument, explaining that "because nothing in § 422.310(d) speaks to a Medicare Advantage organization's obligations to ensure the accuracy of risk adjustment data, it does not modify a Medicare Advantage organization's obligations under §§ 422.503(b)(4)(vi) and 422.504(l)," *i.e.*, the certification and compliance regulations.  *Id.*

The Ninth Circuit's decision in *Swoben*, however, did not in any way address the actuarial equivalence requirement of the Medicare Act.  And furthermore, as United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

highlights, *Swoben* involved an affirmative False Claims act theory, not a "reverse false claims" theory.  (Opp. at 47).  The Ninth Circuit specifically limited its holding to the narrow issue of false ***certifications***.  The Ninth Circuit explained, "[u]nder Swoben's theory . . . the false claims are the allegedly false § 422.504(l) certifications, ***not the erroneously reported diagnosis codes***."  *Swoben*, 848 F.3d at 1183 (emphasis added).  Here, because the Government's false certification claims were already dismissed by the Court on materiality grounds, *Swoben* is inapposite.  (*See* February 12 Order).  The Government's only remaining False Claims Act claim arises under a "reverse false claims" theory, the very type of theory the Ninth Circuit said it was ***not*** addressing in *Swoben*.

At the hearing, the Government encouraged the Court to reexamine footnote 8 of *Swoben*, which states in relevant part:

> [I]f a Medicare Advantage organization relied on medical record X to justify submitting a particular diagnosis code to CMS initially, and the retrospective reviewer concludes X does not support that diagnosis, then the code should be withdrawn.  If it turns out the code can be substantiated by a different medical record, then the code can be left in place or resubmitted.

*Swoben*, 848 F.3d at 1177 n.8.  The Government argues that this footnote lays out a clear obligation to delete unsupported diagnosis codes.  However, the Government's reliance on footnote 8 is misplaced.  Indeed, in the very next sentence after the footnote, the Ninth Circuit states as follows:

> As the government points out, "[e]ven if it turns out that the diagnosis is supported by other medical records, the failure of [the] plan to investigate to make that determination – after it has been put on notice that the diagnosis may not be supported – makes its broad ***certification*** regarding the accuracy, completeness, and truthfulness of submitted data false."

*Id.* at 1177 (emphasis added) (citation omitted).  The Ninth Circuit appeared to limit footnote 8 by stating that false diagnosis codes should be deleted because of the

CIVIL MINUTES—GENERAL                                                        11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

effect it would have on ***attestations***.  This is unsurprising in light of the fact that the Ninth Circuit explicitly limited its holding to "allegedly false § 422.504(l) certifications, ***not the erroneously reported diagnosis codes***."  *Id.* at 1183 (emphasis added).

The Court views as persuasive authority *UnitedHealthcare Insurance Company v. Azar*.  330 F. Supp. 3d 173 (D.D.C. 2018).  There, United challenged a rule promulgated by CMS in 2014 (the "Overpayment Rule"), which adopted an understanding that any diagnostic code that is unsupported by the patient's medical record results in an "overpayment."  *See id.* at 182.  The district court vacated the Overpayment Rule, finding that the Rule violated the statutory mandates of same methodology and actuarial equivalence because "payments for care under traditional Medicare and Medicare Advantage are both set annually based on costs from unaudited traditional Medicare records, but the 2014 Overpayment Rule systemically devalues payments to Medicare Advantage insurers by measuring 'overpayments' based on audited patient records."  *Id.* at 184.  The result of the Overpayment Rule, the district court found, was that it subjects insurers to "a more searching form of scrutiny than CMS applies to its own enrollee data," leading to "a false appearance of better health among Medicare Advantage beneficiaries compared to traditional Medicare participants and systemic underpayments for healthcare costs to Medicare Advantage insurers."  *Id.* at 182.

The district court observed that the Overpayment Rule was a surprising departure from past CMS pronouncements.  Specifically, the district court noted that "the same actuarial problem was recognized and mitigated by CMS in 2012 with the FFS Adjuster for RADV audits but, surprisingly, omitted in 2014."  *Azar*, 330 F. Supp. 3d at 184.  In pertinent part, "RADV audits determine whether the diagnosis codes submitted by MA organizations can be validated by supporting medical record documentation."  (Schindler Decl., Ex. 26 at AR5311).  "In the context of an RADV audit, a contract-wide 'error rate' is extrapolated from a sample and extended to an entire contract; a Medicare Advantage insurer may be required to return monies to CMS based on the extrapolated error rate."  *Azar*, 330 F. Supp. 3d at 186.  However, in 2012 CMS adopted a FFS Adjuster that would require MA Plans to return

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-8697-MWF (SSx)**                    **Date:  March 28, 2019**
**Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.**

"overpayments" only to the extent that the insurer's error rate exceeded that under the traditional Medicare system.  The purpose of the FFS Adjuster is to "account[] for the fact that the documentation standard used in RADV audits to determine a contract's payment error (medical records) is different from the documentation standard used to develop the Part C risk-adjustment model (FFS claims)."  (Schindler Decl., Ex. 26 at AR5314-15).

Given the "inevitable" result that the Overpayment Rule would establish – that CMS "will pay less for Medicare Advantage coverage because essentially no errors would be reimbursed" while at the same time "CMS pays for all diagnostic codes, erroneous or not" under traditional Medicare – the district court found that actuarial equivalence could not be achieved.  *Azar*, 330 F. Supp. 3d at 187.  The district court likewise found that the Overpayment Rule violated the statutory requirement that the same methodology be used in computing expenditures for traditional Medicare as was expected to be applied in making payments to Medicare Plans.  *Id.*

The Court notes that the ruling in *Azar* has both been appealed and that there is pending a motion for reconsideration in part, currently stayed.  But the ruling is being cited here for its persuasive authority.

Here, United makes similar arguments regarding the mandates of actuarial equivalence and same methodology.  In light of the absence of any binding Ninth Circuit authority on point and the district court's ruling in *Azar*, the Court cannot conclude that the federal regulations ***unambiguously*** support the Government's proposed rule.

### 3.    MA Contracts

Neither is it unambiguously clear that United was contractually obligated to delete unsupported diagnosis codes.

The Government contends that United was bound by, among other things, the MA Contracts and Managed Care Manual (the "Manual"), to comply with express requirements to withdraw erroneous risk adjustment data.  (Mot. at 9, 12, 18; Reply at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:       United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

15-20).  For instance, the parties do not dispute that the Manual, which the Government argues was incorporated into the MA Contracts, provided that "[e]ncounter data should be substantiated by the hospital's medical record."  (Rice Decl., Ex. 3 at 48 (Docket No. 234-5); SGD ¶ 45).

As a preliminary matter, the Court notes that because "agency manuals lack the force of law," the Manual establishes a legal obligation only to the extent that compliance with the terms of the Manual was incorporated into the MA Contract.  *Moore v. Apfel*, 216 F.3d 864, 869 n.2 (9th Cir. 2000).

In any event, the MA Contracts do not conclusively establish the rule the Government proposes.  Even if the MA Contracts expressly required that diagnosis coding be supported by the medical record, terms outlined elsewhere in the MA Contracts directly undermine such a requirement.

Article IV of the MA Contracts requires CMS to pay the MA Organization "in accordance with the provisions of Section 1853 of the [Medicare] Act . . . ."  (Rice Decl., Ex. 1 at 10).  As discussed above, a requirement that MA Organizations delete unsupported diagnosis codes is in tension with the actuarial equivalence and same methodology requirements of the Medicare Act.  Moreover, as United highlights, the MA Contracts also provide that if "any provision of this contract conflicts with the provisions of any statute or regulation applicable to an MA Organization, ***the provisions of the statute or regulation shall have full force and effect***."  (*Id.* at 19 (emphasis added)).  The Court cannot therefore determine, in light of the actuarial equivalence and same methodology provisions in the Medicare Act, that the MA Contracts unambiguously require United to delete unsupported diagnosis codes as a matter of law.

Even more, United argues that the discovery it has obtained so far tends to show that CMS, at the very least, had competing interpretations of the extent of United's obligations.  (Opp. at 43-45).  At a later point, the Court will consider whether this putative extrinsic evidence bears on the parties' interpretation of the MA Contracts, including the parties' course of dealing, trade usage, or course of performance.  *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

*Mohave Valley Irrigation & Drainage Dist. v. Norton*, 244 F.3d 1164, 1166 (9th Cir. 2001) (admissibility of extrinsic evidence based on the Uniform Commercial Code).

### C.    Conclusion

In light of competing regulatory, statutory, and contractual requirements, the Court cannot determine that it is clear as a matter of law that United was required to delete unsubstantiated diagnosis codes.

Accordingly, the Motion for Partial Summary Judgment is **DENIED**.

## IV.    MOTION TO STRIKE AFFIRMATIVE DEFENSES

The Government asks the Court to strike eight of United's affirmative defenses: (2) estoppel; (3) government knowledge as to claims for payment; (6) failure to mitigate; (7) ratification; (8) course of performance; (10) assumption of risk; (11) unjust enrichment; and (14) government knowledge as to United's conduct.  (Mot. at 5; Answer to FAC at 81-82 (Docket No. 223)).

Rule 12(f) provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The motion is disfavored because it "proposes a drastic remedy," is of "limited importance . . . in federal practice," and is "often used as a delaying tactic."  *See* 2 *Moore's Federal Practice* § 12.37[1] (3d ed. 2004); *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  Precisely for these reasons, "courts often require 'a showing of prejudice by the moving party' before granting the requested relief." *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005).  Insufficient defenses may be stricken when they are insufficient as a matter of law or fail to give the plaintiff "fair notice" of the defense being asserted.  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *Qarbon.com Inc. v. Ehelp Corp.*, 315 F.Supp.2d 1046, 1049 (N.D. Cal. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019**
**Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.**

The Government contends that United's affirmative defenses fail because "judicially-created doctrines cannot bar the Government from recovering money paid in the absence of a statutory appropriation."  (Mot. at 5).  The Government relies on *Office of Personnel Management v. Richmond*, in which the Supreme Court held that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized."  496 U.S. 414, 415 (1990).  The Government argues that United's affirmative defenses must fail because they would sanction the payment of money in a way that Congress did not authorize (*i.e.*, by paying money for conditions that the beneficiaries of MA Plans did not have).  (Mot. at 8).

In response, United first argues that *Richmond* does not apply to the non-statutory (*i.e.*, common law) claims remaining in the case.  (Opp. at 7).  In support, United relies on *United States ex rel. Dye v. ATK Launch Systems, Inc.*, in which the district court permitted defendant's affirmative defense of failure to mitigate to proceed as to the government's common-law claims.  No. 1:06-CV-39 TS, 2008 WL 4642164 (D. Utah Oct. 16, 2008).  United argues that, despite the fact that the court struck defendant's estoppel affirmative defense as to the common-law claims, "the court's decision allowing some such [affirmative] defenses to go forward demonstrates that there is no overarching bar on the application of non-statutory defenses to non-statutory claims by the government, even where public funds are at issue."  (Opp. at 8 n.4).

But Ninth Circuit authority has indeed applied *Richmond* to bar defenses to non-statutory claims asserted by the government.  For instance, in *United States v. Fowler*, the Ninth Circuit concluded that *Richmond* barred defendant's estoppel defense in an action by the government for reimbursement of payment made under a government insurance contract.  913 F.2d 1382, 1385-86 (9th Cir. 1990).

United next argues that *Richmond* does not bar a claim of equitable estoppel used ***defensively***.  (Opp. at 6).  United relies in part on *United States v. Hatcher* to argue that *Richmond* held only that "litigants may not use the doctrine of estoppel *offensively*, to support 'a claim for payment of money from the Public Treasury contrary to a statutory appropriation.'"  922 F.2d 1402, 1410 (9th Cir 1991) (emphasis in original).  But United's reliance is misplaced because *Hatcher* did not hold that

---

**CIVIL MINUTES—GENERAL                                                16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

*Richmond* is inapplicable to defensive uses of estoppel.  Instead, the Ninth Circuit in *Hatcher* distinguished *Richmond* and *Fowler* by explaining that those cases involved the "unauthorized disbursement of federal funds . . . a situation not presented here."  *Id.* at 1410 n.9.

Furthermore, contrary to United's argument, in *Industrial Customers of Northwest Utilities v. Bonneville Power Administration* ("ICNU"), the Ninth Circuit found that *Richmond* would likely bar an estoppel defense "if, in fact, a court determined that [defendants] had received unlawful overpayments."  767 F.3d 912, 927 (9th Cir 2014).  The Ninth Circuit observed that "we know of *no* Ninth Circuit case estopping the government from recovering an erroneous monetary payment, nor have the parties identified one."  *Id.* at 928 (emphasis in original).  United fails to address ICNU at all in its Opposition.  Furthermore, *Fowler* explicitly held that a party could not use equitable estoppel to prevent the Government from reclaiming wrongly dispersed public funds.  913 F.2d at 1385-86.

United attempts to distinguish *Fowler* by arguing that *Fowler* bars non-statutory defenses only where a payment is made in "direct contravention of a ***statutory appropriation***."  (Opp. at 6 (emphasis added)).  In contrast, United argues, "here, the underlying basis for the government's claim is an alleged contractual breach rather than violation of a statutory appropriation."  (*Id.*).  In support, United relies on *U.S. ex rel. Jordan v. Northrop Grumman Corporation.*  No. CV 95-2985 ABC EX, 2002 WL 35454612, at *11 (C.D. Cal. Aug. 5, 2002).  There, the district court found *Fowler* nondispositive on the issue of whether defendant's estoppel claim against the government was barred in a suit to recover public funds where the case did not involve a statutory appropriation.  *Id.* at *11 n.7.  But, as the Government highlights, this argument is unavailing, since United does not appear to contest that Medicare payments are made pursuant to a statutory appropriation.  (Reply at 9 n.5).

Accordingly, the Motion to Strike United's affirmative defenses is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:      United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

## V.    MOTION TO DISMISS COUNTERCLAIMS

The Government asks the Court to dismiss United's counterclaims on the basis that the Court lacks subject matter jurisdiction because Untied has failed to plead any applicable waiver of sovereign immunity.  (Mot. at 9-10).  United does not oppose the Government's argument on subject matter jurisdiction grounds.  (Opp. at 1).  United explains that it filed its counterclaims in this Court out of an abundance of caution, "concerned that if it did not assert [the claims] here and instead asserted them as part of a stand-alone suit [in the Court of Federal Claims], the government would seek to dismiss that suit on the ground that the claims qualified as 'compulsory counterclaims' that could only be brought [in this Court]."  (*Id.*).  United asks the Court to dismiss its counterclaims, and then sever and transfer them to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.  (*Id.*).

Under 28 U.S.C. § 1631, a court lacking jurisdiction over a matter shall, if it is in the interest of justice, transfer the matter to a court in which the case could have been brought originally.  *Kolek v. Engren*, 869 F.2d 1281, 1284 (9th Cir. 1989).  The party invoking jurisdiction has the burden of showing that jurisdiction is appropriate.  *See Haroutunian v. I.N.S.*, 87 F.3d 374, 376 (9th Cir. 1996); *Killingsworth v. ROI Props. LLC*, No. CV06-1470-PHX-NVW, 2006 U.S. Dist. LEXIS 102536, at *5 (D. Ariz. Oct. 2, 2006) ("The party seeking transfer [pursuant to 28 U.S.C. § 1631] has the burden of showing that it is appropriate.").

Under 28 U.S.C. § 1500, the Court of Federal Claims lacks jurisdiction over "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States."  28 U.S.C. § 1500.  "To determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action."  *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013).

United has failed to carry its burden to show that the Court of Federal Claims would have jurisdiction over the counterclaims.  United acknowledges that it has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-8697-MWF (SSx)                    Date:  March 28, 2019
Title:        United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

advanced its "underpayment" theory "vocally and consistently over the last decade," including in an earlier-filed APA action currently pending in the District Court for the District of Columbia.  (Opp. at 2).  Because, as the Government highlights, United intends to raise similar claims before the Court of Federal Claims that it is already pursuing in parallel proceedings, it does not appear that the Court of Federal Claims has jurisdiction.  (Reply at 5).

United argues that the Government conceded in its Motion that jurisdiction exists over some of the counterclaims under the Tucker Act.  However, review of the Government's Motion does not reveal that it conceded jurisdiction on this basis.  But even if jurisdiction did exist under the Tucker Act, "[w]hile the Tucker Act . . . grants the Court of Federal Claims jurisdiction [in certain cases] . . . [28 U.S.C. § 1500] divests the court of jurisdiction when a related action is pending in another court." *Brandt*, 710 F.3d at 1373.  United fails to address how it would overcome this jurisdictional limitation.

Furthermore, the Court is unpersuaded by United's argument that the interests of justice would be served by transfer where, as United admits, its claims "lack [detail] as currently drafted."  (Opp. at 6).  In its Opposition, United fails to respond to the Government's argument that the counterclaims as currently pled fail to make out cognizable claims.  At the hearing, United argued that so long as the claims are not frivolous, the counterclaims should be transferred.  But even assuming that the claims are not frivolous, the Court declines United's request to transfer where United has failed to address whether 28 U.S.C. § 1500 imposes a jurisdictional bar over the counterclaims.

Accordingly, the Motion to Dismiss Counterclaims is **GRANTED *for lack of jurisdiction***.  The counterclaims are **DISMISSED *without prejudice***.  United's request for severance and transfer is **DENIED**.

## VI.   CONCLUSION

For the foregoing reasons, the Court rules upon the Motions as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 16-8697-MWF (SSx)** **Date:** **March 28, 2019**
Title:      United States ex rel. Benjamin Poehling v. UnitedHealth Group, Inc. et al.

- The Motion for Partial Summary Judgment is **DENIED**.

- The Motion to Strike Affirmative Defenses is **GRANTED** in its entirety.

- The Motion to Dismiss Defendants' Counterclaims is **GRANTED** *for lack of jurisdiction* and the counterclaims are **DISMISSED** *without prejudice*.  United's request for severance and transfer is **DENIED**.

IT IS SO ORDERED.