**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BENJAMIN POEHLING, | Case No. CV 16-8697 FMO (SSx) |
| Plaintiffs, | |
| v. | **ORDER RE: APPOINTMENT OF SPECIAL MASTER** |
| UNITED HEALTH GROUP, INC., et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to United defendants' ("defendants" or "United") Motion to Appoint Retired Magistrate Judge Suzanne H. Segal as Special Master, (Dkt. 390, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

This is a False Claims Act case where the government alleges that United "knowingly and improperly avoided its obligations to repay significant sums of money to the Medicare Advantage Program." (Dkt. 394, United States' Opposition to United's Motion to Appoint Retired Magistrate Judge Suzanne H. Segal as Special Master ("Opp.") at 3). The government claims that "[o]ver the past decade, United scoured millions of medical records to identify additional diagnosis codes to increase the payments it received" from the government, but ignored invalid diagnoses and

1  "improperly retained the payments it obtained based on [those] invalid diagnoses."  (Id.).

2  Rule 53(a)[1] of the Federal Rules of Civil Procedure authorizes the appointment of a special

3  master to:

4          (A) perform duties consented to by the parties;

5          (B) hold trial proceedings and make or recommend findings of fact on issues

6          to be decided without a jury if appointment is warranted by: (i) some

7          exceptional condition; or (ii) the need to perform an accounting or resolve a

8          difficult computation of damages; or

9          (C) address pretrial and posttrial matters that cannot be effectively and timely

10          addressed by an available district judge or magistrate judge of the district.

11  Fed. R. Civ. P. 52(a)(1)(A)-(C).  Defendants seek the appointment of a special master pursuant

12  to Rule 53(a)(1)(C).  (See Dkt. 390, Motion at 9).  Specifically, they request the appointment of

13  retired Magistrate Judge Suzanne Segal ("Judge Segal") to serve as the special master in this

14  case.  (See Dkt. 390, Motion).

15        The government responds that "[b]ecause there are no exceptional circumstances in this

16  case warranting the appointment of a special master, or even a single discovery dispute pending

17  in this action, the Court should deny United's . . . request."  (Dkt. 394, Opp. at 2); (see also id. at

18  5) ("Courts have recognized that Rule 53 applies only in exceptional circumstances.").  However,

19  the government misunderstands the standard for appointment of a special master under Rule

20  53(a)(1)(C).  "The only prerequisite to the appointment of a pretrial or posttrial master is that no

21  district judge or magistrate judge of the district be available who can address the matter to be

22  referred in a timely and effective manner.  The prerequisite that some exceptional condition

23  warrant the appointment of a master, which was applicable to all appointments under the former

24  rule, applies only to some appointments of a master to hold trial proceedings and make or

25  recommend findings of facts on issues to be decided without a jury; it does not apply to the

26

27  _____

28      [1]  Unless otherwise indicated, all "Rule" references refer to the Federal Rules of Civil Procedure.

2

1  appointment of pretrial and posttrial masters."  9 Moore's Federal Practice § 53.10[3][b].

2      Here,  the court is persuaded that a special master is necessary to "address pretrial and

3  posttrial matters that cannot be effectively and timely addressed by an available district judge or

4  magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1)(C).  This is an unusually large and

5  complex case.  The government's operative complaint is 166 pages long with 364 paragraphs and

6  names  more  than  50 defendants.   (Dkt. 171, United States' Amended Complaint-in-Partial-

7  Intervention and Demand for Jury Trial ("Amended Complaint")).  The complaint seeks potentially

8  over $1 billion dollars in damages for alleged False Claim Act violations that occurred over the

9  past decade.  (See Dkt. 171, Amended Complaint at ¶ 13) ("The Government has conservatively

10  estimated that, if the UHG Managing Defendants had 'looked both ways,' they would not have

11  submitted  on  behalf  of  the  Defendant  MA  Organizations  or,  if  submitted,  they  would  have

12  withdrawn  hundreds  of  thousands  of  invalid  diagnoses  on  behalf  of  the  Defendant  MA

13  Organizations, and the Government would not have erroneously paid or would have recovered

14  substantial sums of money (e.g., potentially over a billion dollars in risk adjustment payments for

15  four payment years) to which the Defendant MA Organizations were not entitled").  Discovery thus

16  far has been extensive: "the parties have propounded 278 document requests, resulting in the

17  production of approximately 2.4 million documents from more than 300 custodians.  In addition,

18  the government has propounded 554 requests for admission, 13 interrogatories, and 11 third party

19  subpoenas, and United has propounded 220 requests for admission, 1 interrogatory, and 7 third

20  party subpoenas."  (Dkt. 390, Motion at 3).

21      The government does not dispute the complexity of the case nor that the discovery

22  exchanged to date – approximately 2.4 million documents from more than 300 custodians – has

23  been extremely voluminous.  (See, generally, Dkt. 394, Opp. at 5-6).  Instead, it contends, as

24  noted earlier, that the court cannot appoint a special master because there are no discovery

25  disputes pending at this time.  (See id. at 2).  However, nearly eight months remain in fact

26  discovery, with several months of expert discovery to follow,[2] (see Dkt. 390, Motion at 4), and it

27  _____

28     [2]  The court anticipates the deadlines will have to be continued in light of the COVID-19

1  is inevitable that discovery and other pretrial disputes will arise given the size and complexity of

2  this case.

3       The government also notes the parties' conduct during the discovery phase of this case has

4  been cooperative, (see Dkt. 394, Opp. at 3-4), as there has been only one motion to compel filed

5  in this case. (Id. at 4). But as defendants point out, Judge Segal resolved most of the parties'

6  discovery disputes through informal measures,[3] (see Dkt. 390, Motion at 6-7), no doubt saving the

7  parties the significant costs and expenses they would have incurred in litigating discovery motions

8  under Local Rule 37.

9       Further, the government's reliance on this court's decision in City of Almaty v. Khrapnov,

10  2018 WL 9920031 (C.D. Cal. 2018), as support for its contention that the court must "assess the

11  volume and complexity of the pending discovery motions" under Rule 53(a)(1)(C) is unpersuasive.

12  As an initial matter, there is no basis to conclude, as the government asserts, that "[t]he standard

13  under Rule 53(a)(1)(C) requires the Court to assess the volume and complexity of the pending

14  discovery motions and their timing relative to the pretrial schedule." (Dkt. 394, Opp. at 6). Again,

15  the standard is simply whether a trial court should exercise its discretion to appoint a special

16  master to "address pretrial and posttrial matters that cannot be effectively and timely addressed

17  by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). While

18  the court may consider the volume and complexity of any pending discovery motions in assessing

19  whether a special master should be appointed Rule 53(a)(1)(C), it is not required to do so,

20  because in many cases there will be no pending discovery motions when the court is making its

21  determination. Of course, the better practice is to appoint a special master in a complex civil case

22  as early as possible in the process – before discovery disputes arise – to avoid the type of

23  discovery motion discussed in City of Almaty. In hindsight, the court should have appointed a

24  special master much earlier in the process in City of Almaty. Finally, it is worth noting that this

25

26  pandemic.

27

28     [3] For example, Judge Segal held at least seven informal discovery conferences where she resolved numerous discovery disputes. (See Dkt. 390, Motion at 6-7).

1   case is much larger and more complex than the <u>City of Almaty</u> case.

2        The government also contends that "congestion itself is not a reason to appoint a special

3   master." (Dkt. 394, Opp. at 5).  However, the government's contention relies on cases that dealt

4   with the former rule, the "exceptional circumstances" prong, and/or are neither binding nor

5   persuasive to the court.  (<u>See</u> <u>id.</u>).  Contrary to the government's contention, court congestion is

6   directly related and may be considered in determining whether a district or magistrate judge can

7   "effectively and timely address[]" "pretrial and posttrial matters."  And here there is no doubt that

8   the current "court congestion" in the Central District is extreme, providing further support for the

9   court's determination that a special master is warranted in this case.

10        Indeed, the current judicial shortage and emergency in this District – where the Central

11   District is down ten judges out of an authorized 28 positions – only underscores the need for a

12   special master in a case of this size and complexity.  <u>See</u> "Chiefs of federal courts plead with

13   Congress to fill vacancies," <u>Los Angeles Daily Journal</u> at 4 (October 31, 2019).  The current

14   COVID-19 pandemic has only complicated and exacerbated the judicial emergency in this District.

15   <u>See</u> Meghann Cuniff, "Pandemic Adds More Uncertainty to Central District Judge Shortage," <u>Los</u>

16   <u>Angeles Daily Journal</u> (April 13, 2020).  Magistrate judges, in addition to presiding over their own

17   caseload, have been on the front lines in dealing with the pandemic and have been assisting the

18   district judges in managing their caseload.  The Speedy Trial Act, 18 U.S.C. § 3161, has been

19   suspended since mid-March and thus most criminal matters are delayed for the foreseeable

20   future.  <u>See</u> <u>In re Approval of Judicial Emergency Declared in Central District of California</u>, 2020

21   WL 1873566 (9th Cir. 2020) ("After gathering additional data, the Judicial Council found no

22   reasonable remedy, thus agreed to declare a judicial emergency and suspend the [Speedy Trial

23   Act] time limits required by 18 U.S.C. 3161(c) in the [Central District of California] for one year.");

24   <u>In re: Coronavirus Public Emergency</u>, General Order No. 20-05 (C.D. Cal. April 13, 2020) ("The

25   Court will not call in jurors for service in civil or criminal jury trials until after June 1, 2020 or

26   otherwise ordered by the Court.").  Once the pandemic subsides and normal operations resume,

27   the backlog of cases, especially criminal cases which take precedence over civil cases, will be

28   significant.  <u>See</u> Madison Alder, "Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis,"

Bloomberg Law (April 9, 2020) ("But when the pandemic is over and those postponed proceedings start getting scheduled again, courts . . . with a high percentage of judicial vacancies [] will be among the least equipped to deal with the backlog."). Civil cases, especially complex civil cases, will be delayed for significant periods of time until the court is able to catch up on the criminal cases.

In short, the court finds that appointment of a special master is warranted in this case to handle matters that cannot be effectively and timely addressed by the court. See Fed. R. Civ. P. 53(a)(1)(C); see, e.g., Secretary of Labor Tom Perez v. Sw. Fuel Mgmt., Inc., 2017 WL 10574066, *1 (C.D. Cal. 2017) (appointing a special master where discovery had been "extensive, complicated and contentious"); City of Almaty v. Khrapunov, 2018 WL 9920031, *1 ("Under the circumstances, neither the undersigned nor the assigned Magistrate Judge have the ability to address the parties' discovery disputes in a timely and effective manner."); see also In re United States Dept. of Defense, 848 F.2d 232, 239 (D.C. Cir. 1988) (applying former rule, court held that trial court's discretionary determination that 14,000 documents as to which national security privilege was asserted in response to Freedom of Information Act request was proper; appointment of master to review all documents and provide court with representative sample for its review in determining propriety of privilege claims rather than spending court's time reviewing documents, was appropriate under Rule 53).

Finally, the court is persuaded that Judge Segal should be appointed to serve as the special master in this case. She was the magistrate judge from the time the case began, more than three years ago. Judge Fitzgerald – the district judge who presided over this case prior to its reassignment to the undersigned – stated that judicial oversight of this case requires not only a deep understanding of the "complicated factual situation" evident from the sheer breadth of the pleadings, but also a detailed understanding of the "complicated regulatory regime" underlying the Medicare Advantage System. (Dkt. 390, Motion at 2). Over the course of her time presiding over this case, Judge Segal learned the factual and legal background necessary to understand the issues underlying the various disputes in this case. (See id. at 3). Indeed, her ability to resolve informally most of the discovery disputes the parties have had thus far, (see id. at 6-7), has, as

noted earlier, resulted in significantly reduced costs and expenses for the parties.  Given Judge Segal's knowledge and understanding of the complexities and nuances of this case, the court has no doubt that her appointment will not only assist the court in a time of crisis but result in careful, thoughtful and efficient decisionmaking.

Based on the foregoing, IT IS ORDERED THAT:

1.  The Hon. Suzanne H. Segal (Ret.) is tentatively appointed as Special Master ("Special Master") in this action pursuant to Rule 53(a) pending Judge Segal's submission of an affidavit pursuant to Rule 53(b)(3)(A).  Defendants' counsel shall forthwith provide Judge Segal with a copy of this Order.

2.  The Special Master's authority shall be defined as stated in Rule 53(c) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 53(c)(1) (providing, inter alia, that Special Master has authority to "regulate all proceedings;" "take all appropriate measures to perform the assigned duties fairly and efficiently;" and "if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence").  The Special Master's authority includes, but is not limited to: (a) ruling on the parties' discovery disputes; (b) ruling on motions for attorneys' fees; (c) any other pretrial issue the court may determine is appropriate; and (d) conducting settlement proceedings at the request of the parties or the court.

3.  The Special Master may "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty."  Fed. R. Civ. P. 53(c)(2).  The Special Master shall have the discretion to decide whether an in-person hearing is necessary to resolve a dispute or whether the dispute may be resolved through a telephonic hearing.  The Special Master may communicate ex parte with the court regarding the instant case.   No party shall communicate with the Special Master ex parte unless otherwise permitted by the Special Master.

4.  Any decision or ruling issued by the Special Master shall be filed and served pursuant to Rule 53(d).  See Fed. R. Civ. P. 53(d)-(e) (noting that "[a] master who issues an order must file it and promptly serve a copy on each party. The clerk must enter the order on the docket[;]" and "[a] master must report to the court as required by the appointing order.  The master must file the

report and promptly serve a copy on each party, unless the court orders otherwise.").

5.  Any party who wishes to challenge any decision of the Special Master shall, no later than fourteen (14) days from the filing date of the Special Master's decision, file a Motion for Review of Special Master's Decision, and notice the motion for hearing in accordance with the court's procedures.  The parties shall not include – and the court will not consider – any evidence or argument that was not presented to the Special Master.  The standard of review the court will apply to any motion for review shall be governed by Federal Rule of Civil Procedure 53(f).

6.  All papers submitted by the parties to the Special Master shall be filed with the court, with courtesy copies delivered to the court's chambers.  The Special Master will specify the procedure for filing and lodging of such papers with her.

7.  The costs of the Special Master shall be borne equally by the parties to the motion or issue(s) being considered by the Special Master.  The Special Master may, in her discretion, consider whether cost shifting is appropriate as part of any decision or recommendation she provides and/or after all proceedings before the Special Master have been completed.

8.  The Special Master shall bill each party directly for her services. Upon receipt of an invoice from the Special Master's office, counsel for the relevant party or parties shall pay the Special Master no later than seven (7) calendar days from the date of the invoice.

9.  In all other respects, the parties shall comply with all the requirements and deadlines set forth in the Court's Case Management Order.  (See Dkt. 364, Court's Order of June 5, 2019). Dated this 5th day of May, 2020.


                                            /s/
                                      Fernando M. Olguin
                                   United States District Judge