MICHAEL D. GRANSTON
Deputy Assistant Attorney General, Civil Division
TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
ROSS M. CUFF
JOHN E. LEE (CBN 128696)
JACK D. ROSS (CBN 265883)
Assistant United States Attorneys
        300 N. Los Angeles Street, Room 7516
        Los Angeles, California 90012
        Tel: (213) 894-3995; Fax: (213) 894-7819
        Email: john.lee2@usdoj.gov
JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA McMAHON
JESSICA E. KRIEG
AMY L. LIKOFF
GREGORY A. MASON
MARTHA N. GLOVER
WENDY ZUPAC
Attorneys, Civil Division, U.S. Department of Justice
        P.O. Box 261, Ben Franklin Station
        Washington, D.C. 20044
        Tel: (202) 307-0486; Fax: (202) 307-3852
        Email: robert.mcauliffe@usdoj.gov
TRINI E. ROSS
United States Attorney
DAVID CORIELL
Assistant United States Attorney
        138 Delaware Avenue
        Buffalo, New York 14201
        Tel: (716) 843-5830; Fax: (716) 551-3052
        Email: david.coriell@usdoj.gov
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al*.,<br><br>Defendants. | No. CV 16-08697 FMO<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REVIEW OF SPECIAL MASTER'S ORDER DENYING MOTION TO COMPEL (DKT. NO. 499-1);<br><br>Date: July 28, 2022<br>Time:  10:00 a.m.<br>Courtroom: Hon. Fernando M. Olguin |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL SUMMARY .................................................................... 3

      A.    Background ............................................................................ 3

      B.    United's Intent to Offer Affirmative Testimony About its Subjective Understanding of the Law ................................... 4

      C.    United's Attempt to Assert a Defense of Reliance on the Advice of the Government ..................................................... 6

III.  ARGUMENT ..................................................................................... 7

      A.    Standard of Review ............................................................... 7

      B.    The Special Master Misconstrued Bilzerian, Which Holds that Testimony Concerning a Party's Subjective Understanding of the Law Waives Privilege ............................. 7

      C.    The Special Master Erred in Holding that Implied Waiver Requires Injecting "the Actual Privileged Communications Into the Case" ............. 11

      D.    The Special Master Erred in Holding that United Did Not Commit An "Affirmative Act" Resulting in Waiver ....................................... 17

      E.    The Special Master Erred in Holding that an Assertion of Good-Faith Reliance Upon Government Statements Does Not Waive Privilege .......... 20

IV.   CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Abromavage v. Deutsche Bank Sec., Inc.*,
  2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019)........................................................10

*Aviation Ins. Servs. v. DeWald*,
  2012 WL 907217 (D. Nev. Mar. 16, 2012)..........................................................12

*Bodega Invests., LLC v. United States*,
  2009 WL 2634765 (S.D.N.Y. Aug. 21, 2009) .............................................21, 22

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) ...............................................................1, 7, 8, 11

*Cox v. Admin. U.S. Steel & Carnegie*,
  17 F.3d 1386 (11th Cir. 1994)........................................................................10, 18

*Frontier Refining Inc. v. Gorman-Rupp Co.*,
  136 F.3d 695 (10th Cir. 1998).............................................................................12

*Hamilton v. Yavapai Comm. College Dist.*,
  2016 WL 8199695 (D. Ariz. Jun. 29, 2016).................................................13, 16

*Hearn v. Rhay*,
  68 F.R.D. 574 (E.D. Wash. 1975) ................................................................12, 13

*Hernandez v. Creative Concepts*,
  2013 WL 1182169 (D. Nev. Mar. 19, 2013)........................................................9

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 1403516 (C.D. Cal. Feb. 10, 2005).............................................9, 18, 19

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
  552 F.3d 1033 (9th Cir. 2009) .............................................................................15

*KCC v. Aetna, Inc.*,
  2019 WL 8060670 (C.D. Cal. 2019) .............................................................15, 16

*Lidoderm Antitrust Litig.*,
  2016 WL 4191612 (N.D. Cal. .Aug. 9, 2016)...............................................13, 16

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
  2012 WL 2568972 (S.D.N.Y. Jul. 3, 2012).........................................................10

*McLaughlin v. Lunde Truck Sales, Inc.*,
  714 F. Supp. 916 (N.D. Ill. 1989)............................................................21, 22, 23

*Natural-Immunogenics Corp. v. Newport Trial Gp.*,
  2018 WL 6138160 (C.D. Cal. Jan. 24, 2018)....................................................8, 10

*Palantir Techs. Inc. v. Abramowitz*,
  2020 WL 8571848 (N.D. Cal. Dec. 1, 2020) ..............................................18, 19, 23

*Phelps v. MC Communications, Inc.*,
   2013 WL 3944268 (D. Nev. Jul. 22, 2013) ........................................................ 9, 10

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ............................................................................ 20

*Rambus Inc. v. Samsung Elecs. Co.*,
   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) ................................................... 14

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,
   2007 WL 2069946 (C.D. Cal. Jul. 13, 2007) ....................................................... 9

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
   32 F.3d 851 (3d Cir. 1994) ................................................................................. 11

*Rich v. Bank of America*,
   666 F. App'x 635 (2016) ................................................................................ 14, 15

*Roberts v. Legacy Meridian Park Hosp., Inc.*,
   2015 WL 13685913 (D. Or. Jul. 2, 2015) .......................................................... 19

*SEC v. Honig*,
   2021 WL 5630804 (S.D.N.Y. Nov. 30, 2021) .................................................... 10

*Spin Master, Ltd. v. Zobmondo Enter. Inc.*,
   2012 WL 8134011 (C.D. Cal. Mar. 9, 2012) ..................................................... 14

*U.S. ex rel. Barker v. Columbus Reg'l Healthcare Sys., Inc.*,
   2014 WL 4287744 (M.D.Ga. Aug 29, 2014) ................................................ 11, 18

*United States ex rel. Baker v. Community Health Sys., Inc.*,
   2014 WL 10212441 (D.N.M. Jan. 3, 2014) ........................................................ 20

*United States ex rel. Calilung v. Ormat Indus., Ltd.*,
   2016 WL 4107682 (D. Nev. Aug. 1, 2016) .......................................................... 8

*United States v. Amlani*,
   169 F.3d 1189 (9th Cir. 1999) .................................................................. 12, 18, 20

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1992) ..................................................................... passim

*United States v. Bishop*,
   291 F.3d 1100 (9th Cir. 2002) ............................................................................ 20

*United States v. Exxon Corp.*,
   94 F.R.D. 246 (D.D.C. 1981) ............................................................................. 21

*United States v. Horner*,
   853 F.3d 1201 (11th Cir. 2017) .......................................................................... 20

*United States v. Miller*,
   658 F.2d 235 (4th Cir. 1981) .............................................................................. 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW

**<u>RULES</u>**

Fed. R. Civ. Proc. 53(f)(3) ............................................................................................ 7

Fed. R. Civ. Proc. 53(f)(4) ............................................................................................ 7

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

The Special Master's Order Denying Motion to Compel Finding of Waiver of Attorney Client Privilege ("Order") (Dkt. 499-1) is irreconcilably at odds with controlling Ninth Circuit law. That law clearly provides that, when a party indicates its intent to offer testimony about its subjective understanding of the law or its reliance upon statements of government officials, that party has affirmatively injected its good faith belief into the case and fairness requires that discovery be granted to test the validity of the good faith belief or reliance.[1] *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992), following *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1992). Here, the United defendants (collectively, "United") have unequivocally indicated their intent to offer such testimony, a point that neither the defendants nor the Special Master disputes. The Order cannot be squared with controlling Ninth Circuit authority and should be reversed.

The United States alleges in this case that the defendants violated the False Claims Act by knowingly avoiding their obligation to repay the Medicare Program for payments received for diagnosis codes unsupported by the beneficiaries' medical records. This obligation to repay requires Medicare Advantage Organizations (MAOs) like United to delete unsupported diagnosis codes because the diagnosis codes submitted for risk adjustment dictate how much money United is paid by the federal government.

---

[1] United's unequivocal statement of its intent to introduce evidence at trial concerning its subjective understanding of the law and its supposed good-faith reliance on the statements of HHS agents renders ripe the issue of its waiver and makes it critical that that issue be resolved now, rather than at trial. Fairness requires that if United's conduct waives privilege, Plaintiffs must be permitted to explore the bases for United's contentions in discovery. If the issue is postponed until trial, then Plaintiffs will be deprived of a fair opportunity to examine and rebut United's factual arguments with the evidence to which the Ninth Circuit holds they are entitled, and potentially may prevent Plaintiffs from using that information in response to a summary judgment motion or in Plaintiffs' affirmative case.

United has raised two related "state of mind" defenses, both of which result in a waiver of privilege. First, United has stated that it intends to offer trial testimony that United acted consistent with its "good faith understanding" of its legal obligations. In particular, United contends that two senior executives held the subjective belief that Centers for Medicare and Medicaid Services (CMS) rules permitted United to retain risk adjustment payments for diagnosis codes it knew were unsupported by beneficiaries' medical records. The record shows that those executives discussed the legal issue at length with counsel and that their purported understanding was based at least in part on conversations with United counsel. Second, United asserts that it intends to introduce testimony at trial stating that United relied in good faith upon the statements and actions of agents of the United States Department of Health and Human Services (HHS), and that that reliance "negates" any contrary showing of scienter by Plaintiffs.

Under governing Ninth Circuit law and numerous District Court cases within this circuit, by unequivocally stating its intent to offer testimony at trial about its subjective understanding of the law and its reliance upon statements of government officials, United has affirmatively injected its good faith belief into the case, and thereby has waived any privilege that otherwise applied to those matters. United's affirmative injection of those issues into the case raises questions that cannot, in fairness, be evaluated without disclosure of related documents and information United continues to withhold as privileged – namely, what it actually understood the law to be, whether it held that view in good faith, whether it actually relied upon statements by HHS, and, if so, whether it did so in good faith.

Plaintiffs accordingly brought a motion before the Special Master seeking a finding of waiver relating to those matters. The Special Master issued an order denying the motion. Dkt No. 499-1. The Special Master erroneously views the United States' position as presenting United with only two choices: cede scienter or waive privilege. App. Tab 9, p. 507-08 (Order at 9:25-10:4). This has never been the United States' position, as United can deny scienter and present evidence in support of its position

without waiving privilege, as courts have recognized. However, by going beyond denial and asserting that it will present evidence of its subjective understanding of the law or good-faith reliance on government statements, United has waived privilege.

The Special Master's order is in error in four respects: (1) it misconstrued *Bilzerian*, a case endorsed by the Ninth Circuit, in which the Second Circuit held that a defendant's introduction of evidence of its subjective understanding of the law to rebut a showing of scienter waives privilege as to communications relating to that understanding; (2) it erroneously held, based upon foreign authority that conflicts with Ninth Circuit law, that implied waiver requires reliance upon or disclosure of privileged communications; (3) it erred in holding that waiver requires that a party assert either a new legal claim or an affirmative defense; and (4) it erroneously held that the attempted assertion of a defense of good-faith reliance on the government's statements "has no bearing whatsoever" on implied waiver. Each of these legal errors merits reversal.

## II.   FACTUAL SUMMARY

### A.   Background

United pays teams of expert chart reviewers to systematically examine patient medical records to search for all diagnosis codes supported by the medical records. United calls this program Chart Review. When Chart Review identifies a code reflected in the chart that was not previously submitted to CMS for payment, United submits that code to CMS as an "add" and claims additional payment. Chart Review also gave United all of the information it needed to identify "deletes" – diagnosis codes previously submitted to CMS for payment but not supported by the medical chart – and submit those deletes to CMS in order to return risk adjustment payments to which United was not entitled.

United decided, however, not to delete codes previously submitted to CMS that United's Chart Review determined were not supported. United signed and submitted false "attestations" to CMS that the codes it had submitted were "accurate" and "truthful," enabling it to keep risk adjustment payments to which it was not entitled. By

deliberately ignoring these unsupported codes, United violated CMS rules mandating that MAOs are not entitled to payment for codes unsupported by the beneficiary's medical record and must act in good faith in ensuring and certifying the data it submitted to CMS was accurate and truthful. United's decision to deliberately ignore (and not delete) diagnosis codes that Chart Review determined were unsupported is at the heart of this privilege dispute, because United contends it made that decision consistent with its "good faith understanding" of its legal obligations and in "good faith reliance" on statements of government officials.

### B.    United's Intent to Offer Affirmative Testimony About its Subjective Understanding of the Law

In support of its defenses, United asserts that it:

> does intend to present at trial other testimony and evidence of its good faith understanding of its legal obligations in order to rebut the government's burden of proving scienter ….

App. Tab 4, p. 49 (United response to Fifth Set of Interrogatories, Interrogatory No. 16).[2] The "testimony" to which United refers apparently is that of Brian Thompson and Scott Theisen, the only two United employees who United claims believed that it was permitted to retain risk adjustment payments based on codes that it knew were not supported by the beneficiaries' medical records. App. Tab 4, p. 90, 92 (United's Fourth Supplemental Responses and Objections to Third Set of Interrogatories, No. 12). ██████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ Sealed App. Tab 1, p. 3-5 (Theisen Dep. at 91:5-10, 101:5-102:4); Sealed App. Tab 2, p. 22-23

---

[2] Notwithstanding its intent to offer testimony concerning its subjective understanding of the law, United stated that it "does not intend to waive its attorney-client privilege or work product protections." App. Tab 4, p. 49 (United response to Fifth Set of Interrogatories, Interrogatory No. 16). United reserved the right to withdraw its answer to Interrogatory 16 and the contention set forth therein if "the government were to contend and a court were to rule that this answer or any other contention would cause such a waiver …." *Id.*



1  (Thompson Dep. at 75:4-76:5).

8  . Sealed App.

9  Tab 10 p. 210 (Opp. at 20)

14  Sealed

15  App. Tab 1, p. 6-16 (Theisen Dep. at 146-56.)

16  *Id.*, p.

17  18 (Theisen Dep. at 161:19-23).

19  *Id.* (Theisen Dep. at 161:5-12).

21  *See* Sealed App. Tab 2 p. 29-32 (Thompson Dep. 361:01-364:10).

3

26  Sealed App. Tab 1, p. 17-18 (Theisen Dep. 160:14-161:4).

28  *See* Sealed App. Tab
2 p. 26-32 (Thompson Dep. 356:11-364:10); *Id.*, p. 24 (Thompson Dep. at 155:5-10).

*See, e.g., id.*, p. 25-26 (Thompson Dep. at 157:23-158:8). ██████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████ *Id.*, p. 33-34 (Thompson Dep. at 367:8-25, 369:16-25).

## C.   United's Attempt to Assert a Defense of Reliance on the Advice of the Government

United also intends to offer evidence at trial that it relied upon government statements:

> UnitedHealth does intend to contend at trial that HHS made Statements and provided Advice to UnitedHealth employees and agents that negate a showing of scienter by the government. UnitedHealth further intends to contend at trial that it reasonably relied on Statements and Advice that HHS made to UnitedHealth.

App. Tab 4, p. 48 (United response to Fifth Set of Interrogatories, Interrogatory No. 15).[4] This interrogatory answer relates to an April 29, 2014 meeting at which United contends that HHS officials told it that MA plans had no affirmative obligation or proactive responsibility to confirm whether diagnosis codes submitted by physicians are supported in medical records, and that MA plans were not required to design their chart review plans for "overall accuracy" until a proposed rule was finalized. App. Tab 4, p. 69 (United's Fourth Supplemental Responses and Objections to Third Set of Interrogatories,

---

[4] United again asserted that it "does not intend to waive its attorney-client privilege or work product protections" and reserved the right to withdraw its answers to Interrogatory 15 and the contentions set forth therein if "the government were to contend and a court were to rule that this answer or any other contention would cause such a waiver …." App. Tab 4, p. 48 (United response to Fifth Set of Interrogatories, Interrogatory No. 15).

No. 7). In support of this contention, United has relied upon the notes of a United attorney who attended the meeting, but has otherwise refused to disclose any other communications that that attorney or any other had relating to the meeting. *Id.* (citing attorney notes); Sealed App. Tab 5, p.66-67 (T. Johnson notes).

## III.   ARGUMENT

### A.   Standard of Review

The Court must decide all objections to the Special Master's conclusions of law *de novo*. Fed. R. Civ. Proc. 53(f)(4). Because the parties did not stipulate otherwise, the Court also must decide *de novo* all objections to the Special Master's findings of fact. Fed. R. Civ. Proc. 53(f)(3).

### B.   The Special Master Misconstrued Bilzerian, Which Holds that Testimony Concerning a Party's Subjective Understanding of the Law Waives Privilege

In *Chevron*, 974 F.2d at 1162-63, the Ninth Circuit held that a party waives privilege when it affirmatively asserts a matter that "in fairness requires disclosure" of privileged communications. The court premised its holding entirely upon the Second Circuit's decision in *Bilzerian*, 926 F.2d 1285, signaling its wholesale endorsement of the waiver analysis in that case. *Id.* In particular, the Ninth Circuit explicitly recognized that where a "defendant's intent was in issue because he thought his actions were legal, and had discussed the allegedly fraudulent transactions with his attorney … this 'would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.'" *Chevron*, 974 F.2d at 1162 (citing *Bilzerian*).

In *Bilzerian*, a defendant moved *in limine* for an order permitting him to testify "regarding his belief in the lawfulness" of his conduct "without being subjected to cross-examination on communications he had with his attorney on this subject." 926 F.2d at 1291. The defendant stated that his proposed testimony "would not have disclosed the

content or even the existence of any privileged communications" and that he would not assert a defense of reliance on counsel. *Id.* Despite those disclaimers, the trial court denied the motion, holding that the defendant's proposed testimony "would open the door to cross-examination with respect to the basis for [defendant's] belief, and that such cross-examination would allow inquiry into communications with his attorney." *Id.* On appeal, the Second Circuit affirmed the trial court, holding that a mere denial of scienter allegations would not result in waiver, but that if a defendant goes beyond mere denial to offer affirmative testimony regarding his good-faith belief in his compliance with the law, then he must disclose all information on which that belief is based. *Id.* at 1292-94. It did not matter that the defendant's testimony would not have disclosed or relied upon the content of any privileged communications. *Id.* at 1292. Instead:

> [Because the defendant's] testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue[,] [h]is conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.

*Id.* Thus, if the defendant chose to testify concerning his subjective understanding of the law, he could not use privilege to prevent the government from cross-examining him fully about that issue. *Id.*

The rule in *Bilzerian*, endorsed by the Ninth Circuit in *Chevron*, controls this case.[5] Like the defendant in *Bilzerian*, United has gone beyond a mere denial of scienter

---

[5] As set forth in Plaintiffs' briefs, District Courts in the Ninth Circuit routinely apply *Bilzerian* to find that a party's affirmative testimony concerning its good faith, including its good-faith understanding of the law, waives privilege. *See, e.g., Natural-Immunogenics Corp. v. Newport Trial Gp.*, 2018 WL 6138160, at *5-6 (C.D. Cal. Jan. 24, 2018) (holding defendants' affirmative assertion of "good faith" rendered it "critical that [plaintiffs] be able to investigate the subjective good faith beliefs and mental states of those defendants," and thus waived privilege as to materials relating to defendants' belief); *United States ex rel. Calilung v. Ormat Indus., Ltd.*, 2016 WL 4107682, at *4 (D. Nev. Aug. 1, 2016) (holding that assertion of good faith with respect to defendant's *(footnote cont'd on next page)*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW

allegations and instead seeks to offer affirmative testimony regarding its purported good-faith belief in its compliance with the law. *Cf. id.* at 1292-94. Like the proffered testimony in *Bilzerian*, United's testimony that it "thought its actions were legal would have put [its] knowledge of the law and the basis for [its] understanding of what the law required in issue," thus directly placing at issue and waiving privilege as to its "conversations with counsel regarding the legality of [its] schemes." *Cf. id.*

The Special Master acknowledged, or at least did not disagree, that the Ninth Circuit's reliance on *Bilzerian* in *Chevron* constituted endorsement of its reasoning. The Special Master ruled, however, that *Bilzerian* stood only for the proposition that "if the defendant (in a criminal matter) offered specific testimony about legal advice on direct examination, that testimony <u>might</u> provide grounds for cross-examination into privileged material," depending upon "the substance of the direct testimony and the purpose for which that testimony was offered." App. Tab 9, p. 511-12 (Order at 13:8-10, 13:11-14:2) (emphasis in original).

The Special Master erred in construing *Bilzerian* so narrowly. Contrary to the analysis in the Special Master's order, *Bilzerian* does not predicate waiver upon "offer[ing] specific testimony about legal advice on direct examination." According to

"understanding and compliance with the law" would result in waiver of privilege); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, 2007 WL 2069946, *2-4 (C.D. Cal. Jul. 13, 2007) (holding that the plaintiff's "claim of good faith puts squarely in issue the actions of [its attorney] and the reasoning behind his [actions]," resulting in waiver of privilege); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403516, *1-2 (C.D. Cal. Feb. 10, 2005) (holding that assertion that defendants "relied in good faith upon the assumption that others … including … lawyers … were doing the jobs that these people were hired to do" put attorney communications at issue and waived privilege); *Hernandez v. Creative Concepts*, 2013 WL 1182169, *6 (D. Nev. Mar. 19, 2013) (holding that "a defendant waives the attorney-client privilege where its good faith defense places knowledge of the law and its communications with counsel directly at issue); *Phelps v. MC Communications, Inc.*, 2013 WL 3944268, at *19 (D. Nev. Jul. 22, 2013) (holding that defendants' defenses of good faith and non-willfulness "put their state of mind and their knowledge regarding [the law], its requirements and their obligations 'at issue,'" resulting in waiver of privilege). Each of these cases, like *Chevron*, relied upon and adopted the reasoning in *Bilzerian*.

MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION FOR REVIEW

*Bilzerian* itself, the defendant's assertion that he believed his conduct was legal would result in waiver, even if the defendant did not testify about privileged communications. *Bilzerian*, 926 F.2d at 1291 (defendant contended his testimony "would not have disclosed the content or even the existence of any privileged communication or asserted a reliance on counsel defense"), 1294 ("The trial court's ruling left defendant free to testify without getting into his state of mind, but correctly held that if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal"). The Special Master's contrary interpretation is at odds with the Ninth Circuit's endorsement of *Bilzerian* in *Chevron* and the numerous District Court opinions in this circuit construing *Bilzerian* to result in implied waiver <u>even when the waiving party does not disclose or expressly rely upon privileged communications</u>.[6] It is also contrary to the unanimous and continued interpretation of District Courts within the circuit that decided *Bilzerian*,[7] as well as courts in other circuits.[8]

---

[6] *See*, *e.g.*, *Natural-Immunogenics*, 2018 WL 6138160, at *3, (finding waiver even though defendants "[did] not affirmatively … disclose any communications with … counsel," and only asserted good-faith defenses "to the extent they are applicable to non-privileged information"); *Calilung*, 2016 WL 4107682, at *4 ("at-issue waivers are not limited to situations in which the advice of counsel is expressly relied upon"; "[t]he asserting party need not make actual use of the privileged communications"); *Phelps*, 2013 WL 3944268, at *15, 19 (finding waiver even though good-faith defense was "not based at all upon communications with counsel").

[7] *See*, *e.g.*, *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *7 (S.D.N.Y. Jul. 3, 2012) (rejecting defendant's contention that under *Bilzerian* and subsequent authority "there can only be an implied waiver if a party affirmatively relies on privileged communications in support of a claim or defense," and noting that "[i]n *Bilzerian*, the Second Circuit found the privilege was waived even though the defendant did not rely on any privileged communications"); *SEC v. Honig*, 2021 WL 5630804, at *14 (S.D.N.Y. Nov. 30, 2021) (finding waiver although the good-faith defense at issue "is based solely on publicly available filings and non-privileged communications"); *Abromavage v. Deutsche Bank Sec., Inc.*, 2019 WL 6790513, at *4 (S.D.N.Y. Dec. 11, 2019) ("Although [defendant] claims that it is not specifically relying on the advice of its in-house counsel in order to advance its [good-faith] defense, express reliance is not necessary to trigger the waiver rule").

[8] *See* e.g., *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1418-19 (11th Cir. 1994) ("having gone beyond mere denial [of scienter], affirmatively to assert good faith, *(footnote cont'd on next page)*

1    In sum, *Bilzerian* stands for the exact principle for which Plaintiffs cited it. When

2    a party goes beyond merely denying scienter and instead offers affirmative testimony

3    concerning its own subjective understanding of the law, as United states that it intends to

4    do in this case, it waives privilege as to all information relating to the basis of that belief.

5    The Ninth Circuit endorsed *Bilzerian* in its *Chevron* decision, and *Bilzerian* compels a

6    finding of waiver in this case.

7    **C.      The Special Master Erred in Holding that Implied Waiver Requires**

8    **Injecting "the Actual Privileged Communications Into the Case"**

9    In response to Plaintiffs' argument concerning *Bilzerian*, United argued that the

10   Special Master should instead follow a line of cases originating with *Rhone-Poulenc*

11   *Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994), which held that implied

12   waiver requires that a party "disclos[e] or describ[e] an attorney client communication."

13   App. Tab 5, p. 137-140 (Opp. at 10:7-11:16, 12:14-13:12). The Special Master agreed,

14   holding that implied waiver only occurs "when the client affirmatively relies on

15   attorney-client communications to support a claim or defense," citing *Rhone-Poulenc*

16   and cases adopting it. App. Tab 9, p. 511 (Order at 13 n.3); *see also id.* at 515 (Order at

17   17:19-21) (holding that "a party impliedly waives privilege only when it affirmatively

18   injects the actual privileged communications into the case to support its claims or

19   defenses").

20   As described in Plaintiffs' reply brief, that holding is in error. Courts recognize a

21   circuit split between the *Rhone-Poulenc* test, adopted in the Third and Fifth Circuits, and

22   the general rule for implied waiver in the Ninth Circuit adopted in *United States v.*

23

24

25   ────────────────

26   [defendant] injected the issue of its knowledge of the law into the case and thereby
     waived the attorney-client privilege"); *United States ex rel. Barker v. Columbus Reg'l*

27   *Healthcare Sys., Inc*., 2014 WL 4287744, at *4 (M.D.Ga. Aug 29, 2014) (defendant in
     False Claims Act case waives privilege when it intends "explain why it believed its

28   conduct was lawful …," even though defendant did not intend to raise an advice of
     counsel defense or rely on privileged communications).

*Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).[9] The principal difference between the two tests is that *Rhone-Poulenc* holds that implied waiver requires that the waiving party explicitly disclose or describe an attorney-client communication, while the Ninth Circuit's three-factor test does not. Under the governing Ninth Circuit test:

> First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." … Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." … Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense."

*Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (adopting implied waiver test set forth in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

Nothing in the *Amlani/Hearn* test or any other Ninth Circuit opinion imposes an additional requirement that a party rely upon, introduce, or describe the substance of a privileged communication. To the contrary, the defendant in *Amlani* did not rely on or disclose any privileged communications. Instead, he contended that he discharged his attorney because of a prosecutor's disparaging remarks. *Amlani*, 169 F.3d at 1195. This contention waived privilege not because the defendant was relying on or disclosing privileged communications, but because those communications might show that his contention was false, just as United's privileged communications might show that its claims of its subjective understanding of the law and its reliance on government statements are false. *Id.* at 1195 (Amlani's contention put privileged communications at issue "as they related to Amlani's reasons for changing counsel … Amlani cannot assert that certain factors caused him to discharge his attorney and then invoke the attorney-

---

[9] *See Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998) (contrasting *Hearn* test adopted in *Amlani* with more "restrictive" *Rhone-Poulenc* test); *Aviation Ins. Servs. v. DeWald*, 2012 WL 907217, at *8 (D. Nev. Mar. 16, 2012) (contrasting the Ninth Circuit's adoption of the "majority rule" in *Amlani* with the "more restrictive" *Rhone-Poulenc* formulation).

client privileged to prevent the government from examining the situation further").

Similarly, in *Hearn*, the very case whose test the Ninth Circuit adopted, the court found

waiver even though the defendant explicitly stated that its good-faith defense was <u>not</u>

based upon any advice of counsel, thus necessarily rejecting any argument that implied

waiver requires the reliance on or disclosure of privileged communications. *Hearn*, 68

F.R.D. at 581 n.5. The Ninth Circuit's finding of waiver in *Amlani* and its adoption of

*Hearn* as the rule of decision in implied-waiver cases refute the existence of any

requirement that the waiving party rely upon or disclose privileged communications.[10]

Consequently, District Courts in this circuit applying either the Ninth Circuit's

*Amlani/Hearn* test or the *Bilzerian* reasoning the Ninth Circuit endorsed in *Chevron*

frequently emphasize that implied waiver in the Ninth Circuit does <u>not</u> require reliance

on or disclosure of any privileged communication.[11] For that very reason, District Courts

in this circuit frequently note that they lack the authority to adopt *Rhone-Poulenc*'s

requirement of specific reliance upon or disclosure of privileged information. *See In re

Lidoderm*, 2016 WL 4191612, at *4 ("Many of defendants' cases are inapposite because

---

[10] At Defendants' invitation, the Special Master criticized Plaintiffs for first
discussing *Amlani* in their reply brief. App. Tab 9, p. 512 (Order at 14:4-5). But
Plaintiffs did so in response to United's argument, in its opposition, that the *Rhone-
Poulenc* test should govern. Plaintiffs' opening brief focused on *Chevron*, *Bilzerian*, and
in-circuit authority applying *Bilzerian*, which supply the applicable principles for
implied waiver in the <u>specific</u> circumstance at issue here, where a party states that it
intends to affirmatively offer testimony about its subjective understanding of the law.
When United argued that out-of-circuit <u>general</u> rules concerning implied waiver should
govern, Plaintiffs necessarily had to explain how the specific *Bilzerian* analysis the Ninth
Circuit endorsed in *Chevron* fits within the Ninth Circuit's general waiver principles as
set forth in *Amlani*, and why the out-of-circuit cases upon which United relied upon in its
opposition conflict with the Ninth Circuit's general waiver test.

[11] *See* cases cited in footnote 6 above; *see also In re Lidoderm Antitrust Litig.*,
2016 WL 4191612, at *4 (N.D. Cal. .Aug. 9, 2016) ("even if a party does not attempt to
make use of a privileged communication, he may waive the privilege if he asserts a
factual claim the truth of which can only be assessed by examination of a privileged
communication"); *Hamilton v. Yavapai Comm. College Dist.*, 2016 WL 8199695, at *2
(D. Ariz. Jun. 29, 2016) (assertion of good-faith understanding of law waives privilege
"even if defendants do not seek to establish their good faith based on [privileged]
advice").

they cite to or rely on the Third Circuit's analysis in *Rhone-Poulenc Rorer* which, contrary to *Hearn*, requires affirmative use of the privileged information to find implied waiver") (emphasis added); *Spin Master, Ltd. v. Zobmondo Enter. Inc.*, 2012 WL 8134011, at *2 n.2 (C.D. Cal. Mar. 9, 2012) (rejecting argument that court should apply *Rhone-Poulenc* because "the Court is obviously bound to follow the law set out in *Amlani* and *Lane*, which adopted the three-part test from *Hearn* as the law in the Ninth Circuit on implied waiver"); *Rambus Inc. v. Samsung Elecs. Co.*, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007) ("the *Rhone-Poulenc* analysis requires the party impliedly waiving privilege to try 'to prove that claim or defense by disclosing or describing an attorney-client communication.' … This is not an element of the *Hearn* test") (emphasis added). As those District Court cases make clear, the Special Master's adoption of *Rhone-Poulenc*'s requirement that a party "affirmatively relies on attorney-client communications" departs from settled Ninth Circuit authority and places it on the wrong side of a circuit split.

United, however, argued that the Ninth Circuit adopted *Rhone-Poulenc*'s "reliance on or disclosure of a privileged communication" requirement in an unpublished, non-precedential decision, *Rich v. Bank of America*, 666 F. App'x 635 (2016), and the Special Master agreed. App. Tab 5, p. 141 (Opp. at 14:1-15:5); App. Tab 9, p. 509-10 (Order at 11:19-12:12). But *Rich* did nothing of the sort. In *Rich*, a plaintiff argued that the defendants waived privilege merely by including on their witness list two lawyers who possessed factual information. App. Tab 7, p. 407 ¶ 4, 421-22 (*Rich* appellants' brief). Although the plaintiff asserted, in a single sentence, that the defendant had placed those attorneys' "states of mind and intentions" at issue by putting them on the witness list, *id.*, p. 461 (*Rich* appellants' brief), nothing in the record suggests that the defendant intended to call the witnesses to testify concerning the defendants' good faith or subjective understanding of the law. *See generally id.*, p.315-478 (*Rich* appellants' brief). Accordingly, the Ninth Circuit held that the defendant's conduct did not satisfy the second prong of the *Amlani/Hearn* test: the defendant "did not commit an affirmative

act that put the protected information … at issue." *Rich*, 666 F. App'x at 641-42. In so holding, the Ninth Circuit did not add to the three factors in the *Amlani/Hearn* test, did not cite or adopt *Rhone-Poulenc* or any cases that follow it, did not purport to adopt any rule that waiver occurs only when a party relies on or discloses a privileged communication, did not suggest in any way that it intended to overrule the countless in-circuit cases holding that no such requirement exists, and did not even discuss *Bilzerian*. *Id.*

Nor does the other Ninth Circuit case the Special Master cited, *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1043 (9th Cir. 2009), suggest an adoption of the *Rhone-Poulenc* test. In it, the Ninth Circuit held only that a drug manufacturer did not assert an "advice of counsel defense" when it offered testimony that it "did not want to undertake the business risk" of marketing a drug without authoritative determination of the validity of a patent, regardless of whether or not its attorneys thought the patent would ultimately be determined valid. *Id.*

United and the Special Master cited only one in-circuit case that argues the Ninth Circuit would follow *Rhone-Poulenc* and require "affirmative reliance on the contents of privileged communications," *KCC v. Aetna, Inc.*, 2019 WL 8060670, at *2 (C.D. Cal. 2019). But the suggestion in that case that the Ninth Circuit would adopt such a requirement was *dicta*. That diversity case applied California law, which (unlike federal law) holds that there can be "no waiver of the attorney-client privilege where the substance of the protected communication is not itself tendered in issue," and accordingly noted that "Federal common law privilege … does not govern here." *KCC*, 2019 WL 8060670, at *2. Moreover, if *KCC*'s *dicta* were correct, it would require the overruling of *Amlani*, in which the defendant did not rely on the contents of any privileged communications, and the rejection of *Bilzerian* and *Hearn*, both of which the Ninth Circuit has endorsed or adopted, and both of which found waiver despite the defendants' insistence that they would not rely upon or disclose any privileged

communications.[12] Accordingly, as described above, the *dicta* in *KCC* is contrary to Ninth Circuit authority and simply disagrees with the overwhelming majority of District Court cases within the Ninth Circuit that state clearly that reliance on or disclosure of a privileged communication is <u>not</u> a requirement under Ninth Circuit law.

Even if reliance on privileged communications was required to trigger waiver (and, as described above, it is not), United's affirmative assertion that it acted consistent with its good-faith understanding of the law does constitute reliance upon privileged communications. As described above, the two witnesses whose testimony United intends to offer to support its contention had communications with counsel concerning their understanding and no other witnesses shared their purported understandings of the law. *See* Section II.B above. It does not matter that they have testified as to <u>some</u> of the basis for their understanding of the law—the non-privileged portion—because Plaintiffs are entitled to know the <u>entire</u> basis for their understanding, including whether anything counsel told them contradicted the materials on which they purportedly relied. *In re Lidoderm*, 2016 WL 4191612, at *5 ("where evidence establishes that the subjective belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants' contemporaneous attorney-client information to test the veracity of the defendants' justifications in this litigation even though that belief is based in part on business judgment and executive experience"); *Hamilton*, 2016 WL 8199695, at *2 ("Because Defendants' motion asserts their subjective good faith in their compliance with the law, it implicates advice they received with respect to the 85/15 rule from their counsel, even if they wish to establish their good faith legal compliance through other acts").

Accordingly, the Special Master erred in holding that United did not waive privilege because it did not rely upon or disclose the content of any privileged

---

[12] The court in *KCC* explicitly misinterprets *Hearn* to require reliance. *KCC*, 2019 WL 8060670, at *1 (rejecting "any interpretation of *Hearn* that does not require affirmative reliance on the contents of privileged communications for waiver.")

communications, a requirement that does not exist under Ninth Circuit law.

### D. The Special Master Erred in Holding that United Did Not Commit An "Affirmative Act" Resulting in Waiver

United also argued that it did not commit any "affirmative act" constituting waiver, and the Special Master agreed. According to the Special Master, United's only relevant conduct "involved responding to Plaintiffs' discovery and claims," and an assertion of good-faith understanding of regulations "is not the type of affirmative act courts have looked to for waiver." App. Tab 9, p. 513 (Order at 15:11-15). The Special Master held that a party can only impliedly waive privilege through the assertion of a claim or <u>affirmative defense</u> that relies upon privileged communications. App. Tab 9, p. 511 (Order at 13 n.3) (holding that waiver requires affirmative reliance on privileged communications "to support a claim or defense"); App. Tab 9, p. 515 (Order at 17:12-15) (distinguishing cases because they involved "bringing a suit or counterclaim or raising an affirmative defense").

The Special Master mistakenly understood an "affirmative act" to only occur when a defendant asserted an affirmative defense. *Bilzerian* rejected the exact argument that United advanced and the Special Master adopted:

> Denial of an essential element of the crime charged—here criminal intent—is a constitutional right to be carefully safeguarded. But ... the district court's ruling in the instant case did not prevent defendant from denying criminal intent; the district judge merely said that Bilzerian's own testimony as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with his attorney. Defendant was free to deny criminal intent either without asserting good faith or to argue his good faith defense by means of defense counsel's opening and closing statements and by his examination of witnesses.

*Bilzerian*, 926 F.2d at 1293.

Thus, under *Bilzerian*, United is free to deny that Plaintiffs have met their burden

17

of showing scienter, and it is free to argue and introduce rebuttal evidence and testimony. But when United affirmatively offers testimony concerning its subjective understanding of the law, fairness requires that Plaintiffs be allowed to examine all materials bearing on that understanding, including privileged materials. *Id.* at 1294 (defendant was "free to testify without getting into his state of mind, but … if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal"); *Cox*, 17 F.3d at 1418-19 ("having gone beyond mere denial [of scienter], affirmatively to assert good faith, [defendant] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege"); *Broadcom*, 2005 WL 1403516, at *1-2 (discussing *Cox*). United's "affirmative act" was the same act sufficient to result in waiver in *Bilzerian*: a stated intent to offer testimony affirmatively describing its supposed good-faith understanding of the law. *See also Barker*, 2014 WL 4287744 at *4 (defendant intending to "explain why it believed its conduct was lawful" waives privilege).

Nor is United correct that waiver cannot occur because it did not plead its "good faith" defense as an affirmative defense. App. Tab 5, p. 143 (Opp. at 16:2-18:16). As set forth in Plaintiffs' reply brief in response to this argument, Ninth Circuit law requires only an "affirmative act" placing privileged information at issue, not an affirmative defense. *Amlani*, 169 F.3d at 1195. "The defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Cox*, 17 F.3d at 1418-19; *Palantir Techs. Inc. v. Abramowitz*, 2020 WL 8571848, at *2 (N.D. Cal. Dec. 1, 2020) ("responsive pleadings are illustrative of how a litigant might 'inject' new issues into the litigation. … [T]hey are not the only methods for raising such issues").

A party's offer of evidence or testimony that can only be evaluated fairly through access to privileged material is one type of "affirmative act" sufficient to waive privilege. For example, in *Broadcom*, 2005 WL 1403516, at *1-2, the defendants' waiver occurred not through the pleading of an affirmative defense, but through an "offer of proof" that the individual defendants believed their employer's lawyers would have

informed them if its conduct violated the law, which the defendants proposed to offer in rebuttal to the plaintiff's scienter evidence. The court specifically held that "[a] defendant need not raise an affirmative defense to inject a new issue." *Id.* In *Roberts v. Legacy Meridian Park Hosp., Inc.*, 2015 WL 13685913, at *2 (D. Or. Jul. 2, 2015), the "affirmative act" resulting in waiver was the plaintiff's submission of an evidentiary declaration asserting that its attorney did not have authority to settle the case, not the assertion of any affirmative claim or defense. And in *Palantir Techs.*, 2020 WL 8571848, at *2, the party's waiver resulted from evidentiary submissions that introduced "a new line of evidence on an existing question," even though they "[did] not create a new factual issue in [the] proceeding." In each of these cases, the party waiving privilege committed an "affirmative act" by introducing evidence that could only be evaluated fairly through access to privileged materials, not by asserting an affirmative defense or cause of action.[13]

Here, as in *Bilzerian*, United committed an "affirmative act" by stating that it intends to offer evidence at trial of its subjective understanding of the law and its supposed good-faith reliance upon statements by government officials. App. Tab 4, p. 48-49 (United response to Fifth Set of Interrogatories, Interrogatory Nos. 15, 16).

---

[13] To the extent that United argues that these cases are distinguishable in that they involve reliance upon privileged communications, that goes to the question of whether Ninth Circuit law on implied waiver requires such reliance, which is discussed in Section III.C above. It has no relevance to the entirely distinct question of whether United committed an "affirmative act" under the second prong of the *Amlani* test. There is no law whatsoever suggesting that an "affirmative act" is defined differently when a party relies upon privileged communications than when it does not. Moreover, the defendants in *Broadcom* did not rely upon privileged communications. In that case, the individual defendants—*i.e.*, the corporation's individual employees, not the corporation itself— sought only to offer testimony that they relied upon the "assumption" that others, including the corporation's lawyers, were doing their jobs and upon the "expectation the lawyers would tell them if anything illegal was happening," which they did not do. *Broadcom*, 2005 WL 1403516, at *2. In other words, the individual defendants in *Broadcom* did not intend to rely upon or disclose any communications from lawyers— they claimed that no such communications existed. Nonetheless, their offer of proof was a sufficient "affirmative act" to result in waiver. *Id.*

Contrary to the Special Master's ruling, under the authority described above, that is sufficient to satisfy *Amlani*'s "affirmative act" prong.

### E.      The Special Master Erred in Holding that an Assertion of Good-Faith Reliance Upon Government Statements Does Not Waive Privilege

The Special Master also ruled that United's assertion of "reliance on statements by HHS representatives to UnitedHealth's representatives has no bearing whatsoever on the alleged waiver of privilege." That ruling was in error.

"[A] defense of good faith reliance on expert advice is designed to refute the government's proof that the defendant intended to commit the offense.'" *United States v. Horner*, 853 F.3d 1201, 1209 (11th Cir. 2017) (citations omitted). To establish a defense upon reliance upon an expert, a defendant must "establish that [it] (1) fully disclosed all relevant facts to the expert and (2) relied in good faith on the expert's advice." *Id.* at 1209 (internal quotes and citations omitted). The Ninth Circuit has applied the same rule to reliance-upon-experts defenses. *See United States v. Bishop*, 291 F.3d 1100, 1106-07 (9th Cir. 2002) (to assert reliance on an accountant, defendant must establish "good faith reliance on a qualified accountant after full disclosure of tax-related information); *Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (applying elements of "defense of reliance on expert opinion" to assertion of reliance on accountant).

One subset of the reliance-upon-experts defense is reliance upon the advice or statements of government agents. When a party asserts such reliance, the party must prove the same elements as in any other assertion of reliance upon an expert: full disclosure of all material facts to the expert, and good-faith reliance upon the expert's instructions. *See United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981) (applying elements of advice-of-expert defense to assertion of reliance upon statements of government agency official); *United States ex rel. Baker v. Community Health Sys., Inc.*, 2014 WL 10212441, at *4 (D.N.M. Jan. 3, 2014) (same).

Because a defendant's good faith is an element of any assertion of reliance on the statements of government agents, such an assertion necessarily puts at issue all

communications relating to that reliance, resulting in implied waiver. *See Bodega Invests., LLC v. United States*, 2009 WL 2634765, at *3 (S.D.N.Y. Aug. 21, 2009) (plaintiff's claim that he relied upon statements by an IRS agent put at issue what defendant knew and what its attorney told it about whether to rely, thus waiving privilege); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 919-20 (N.D. Ill. 1989) (defendants' claim of good-faith reliance upon Department of Labor waived privilege as to documents bearing on alleged reliance); *United States v. Exxon Corp.*, 94 F.R.D. 246, 247-49 (D.D.C. 1981) (defendant "waived its attorney-client privilege by raising the defense of good faith reliance on [Department of Energy] representations").

United "intends to contend at trial that it reasonably relied on Statements and Advice that HHS made to UnitedHealth," and that that reliance would "negate a showing of scienter by the government." App. Tab 4, p. 48 (United response to Fifth Set of Interrogatories, Interrogatory No. 15). Thus, United has affirmatively placed at issue whether it actually relied upon statements by HHS, whether it did so in good faith, and whether such reliance was reasonable in light of all of the other information available to it, including potentially contradictory or cautionary advice from United attorneys. This is not merely hypothetical. ██████████████████████████████████████████ ██████████████████████████████████████ *See* Sealed App. Tab 3, p. 39-51, 56-57 (Dumcum Dep., at 75:6-13, 90:5-18, 97:18-98:15, 106:8-107:6, 176:3-15, 177:25-178:24, 218:11-220:19, 279:24-280:14) ██████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████. United's contention of good-faith reliance on HHS statements cannot be evaluated fairly without access to all of the materials available to United. Accordingly, under the authority described above, United's affirmative assertion of good-faith reliance on HHS statements waived privilege as to communications relating to that reliance.

At United's urging, the Special Master distinguished that authority on two grounds: first, that the parties waiving privilege in *Bodega* and *McLaughlin* "relied on

21

the content of privileged communications"; and second, that the parties in all of the cases had "interjected the issue affirmatively by bringing a suit or counterclaim or raising an affirmative defense." App. Tab 9, p. 514-15 (Order at 16:21-17:6, 17:7-15). Both arguments are incorrect.

First, the courts in both *Bodega* and *McLaughlin* made clear that the basis for the waiver was the parties' assertion of good-faith reliance upon the government, not their reliance upon privileged communications. In *Bodega*, the court explained that the plaintiff's "contention that he relied on the representation of the IRS agent puts in play his state of mind, that is, the assertion of reliance requires an inquiry as to a subjective fact." *Bodega*, 2009 WL 2634765, at *2. The court made clear that it was the assertion of good-faith reliance on the government (*i.e.*, the assertion of the plaintiff's state of mind), and not the reliance upon the lawyer's testimony about what the IRS agent said, that compelled a finding of waiver relating to the lawyer's advice to the plaintiff: "there is no question … that we are required to determine a state of mind and also that that state of mind was potentially influenced by advice rendered by the attorney. Hence at-issue waiver for any such advice is appropriately triggered …." *Id.* Similarly, in *McLaughlin*, the defendant asserted that its good-faith reliance upon statements of the Department of Labor "is not dependent on their actions or those of their counsel but only on the objective representations and opinions of the DOL"—that is, they expressly disclaimed any reliance upon privileged communications. *McLaughlin*, 714 F. Supp. at 918. Despite that, the court held that the assertion of good-faith reliance "depend[s] on whether the defendants relied upon a particular DOL representation or action. Consequently, the primary way to assess the validity of this reliance is to investigate attorney/client communications where the defendants' interpretations of DOL actions were established." *Id.* at 919. The court found that the defendants' use of an attorney declaration corroborated and illustrated the need to allow examination of privileged

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW

communications, but it did not hold that that declaration was the basis for the waiver.[14] *Id.* at 919-20.

Second, as described in Section III.D above, the assertion of an affirmative defense is not a requirement for implied waiver. The injection of a "new issue" or "new line of evidence on an existing issue"—such as United's injection of the issue of its supposed reliance on HHS statements—is a sufficient "affirmative act" to constitute waiver. *Palantir*, 2020 WL 8571848, at *2. And even if the assertion of an affirmative defense were a requirement, United is attempting to assert its reliance on HHS statements as an affirmative defense. United contends that a showing of good-faith reliance on HHS statements would "negate" any contrary showing of scienter by Plaintiffs, which would satisfy the definition of "affirmative defense" set forth in United's own brief. App. Tab 5, p. 143 (Opp. at 16:21-25) United's view of its reliance contention is indistinguishable from the affirmative defense of "reliance on the government" that the defendants asserted in *McLaughlin* and *Exxon*.[15] United cannot avoid the consequences of asserting what it believes is an affirmative defense merely by failing to plead it as one.

In sum, a party's assertion of reliance upon the government is an affirmative act that places at issue all communications relating to that reliance, resulting in implied waiver.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reverse the ruling of the Special Master and hold that United has waived privilege as to

---

[14] The *McLaughlin* defendant's attorney declaration did not disclose or rely upon any privileged information. *McLaughlin*, 714 F. Supp. at 917-18. In that respect, it is no different from United's use, in support of its reliance defense, of its attorney's notes of HHS's purported statements, which United contends are not privileged. Sealed App., Tab 5 at 66-67 (T. Johnson notes); App. Tab 5, p. 149-51 (Opp. at 22:25-24:9). If, as United argues, the *McLaughlin* defendant's attorney declaration was the basis upon which the court found waiver, then United's attorney's notes would be sufficient to do so as well.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REVIEW

communications relevant to: (1) its purported belief that CMS rules permitted United to retain risk adjustment payments for diagnosis codes it knew were unsupported by beneficiaries' medical records; (2) its purported belief that its risk adjustment attestations would be "accurate" even if it had "100 percent certainty" that the data contained a specific known unsupported code; and (3) its purported reliance on statements from HHS.

Dated: June 3, 2022

MICHAEL D. GRANSTON
Deputy Assistant Attorney General, Civil Division
TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
ROSS M. CUFF
JOHN E. LEE
JACK D. ROSS
Assistant United States Attorneys

JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA McMAHON
JESSICA E. KRIEG
AMY L. LIKOFF
GREGORY A. MASON
MARTHA N. GLOVER
WENDY ZUPAC
Civil Division, Department of Justice

TRINI E. ROSS
United States Attorney
DAVID CORIELL
Assistant United States Attorney

/S/ Gregory A. Mason
_____
GREGORY A. MASON
Trial Attorney, Department of Justice

Attorneys for the United States of America

Dated: June 3, 2022                    ERIC R. HAVIAN
                                       HARRY LITMAN
                                       Constantine Cannon LLP

                                       STEPHEN HASEGAWA
                                       Phillips & Cohen LLP

                                       WILLIAM CHRISTOPHER CARMODY
                                       ARUN SUBRAMANIAN
                                       WILLIAM R.H. MERRILL
                                       CHANLER A. LANGHAM
                                       GENG CHEN
                                       Susman Godfrey LLP

                                       /S/ Stephen Hasegawa
                                       _____

                                       Attorneys for Relator Benjamin Poehling


                                       Attestation

I hereby attest that the other signatory listed, on whose behalf the filing is submitted, concurs in the filing's content and has authorized the filing.

Dated: June 3, 2022

                                       /S/ Gregory A. Mason
                                       _____
                                       GREGORY A. MASON
                                       Trial Attorney, Department of Justice