FILED
CLERK, U.S. DISTRICT COURT

12/19/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ gga _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al*.,<br><br>Defendants. | No. CV 16-08697 FMO (PJWx)<br><br><br>SPECIAL MASTER'S ORDER RE UNITED'S MOTION TO COMPEL DOCUMENTS WITHHELD PURSUANT TO LAW ENFORCEMENT PRIVILEGE |

## I.  INTRODUCTION

Defendant UnitedHealth Group, Inc., et al. ("United") filed a motion to compel the United States ("the government") to produce documents and orders withheld under the law enforcement privilege.  The government filed an Opposition, United filed a Reply and the government filed a Surreply.  For the reasons discussed below, the Special Master GRANTS IN PART and DENIES IN PART the motion to compel.

## II.  UNITED'S CONTENTIONS

United's contentions are summarized below:

The government is improperly withholding hundreds of highly relevant documents related to risk adjustment investigations of United and other Medicare Advantage Organizations ("MAOs") based on unsupportable

assertions of the law enforcement privilege ("LEP"). As justification, the government has provided only vague and conclusory assertions that disclosure would cause unspecified harm to investigative and enforcement efforts. The government's failure to describe any purported "harm" with specificity or to address why the parties' robust protective order ("PO") would not protect against those harms is fatal. Even if the government had properly asserted the LEP (and it has not), the privilege is qualified, and United's strong interest in these documents outweighs any such "harm" as the documents are directly relevant to key issues in this case. The Court should compel production of these documents ("LEP Documents"). The Court should also compel disclosure of twelve documents the government lists on its privilege log as subject to a "court order" privilege—even though no such privilege exists. These include nine documents that supposedly reference sealed investigations—though the documents are not themselves sealed or privileged—and three documents that remain sealed despite the resolution of the underlying litigation (the "Court Order Documents"). The government has not shown why disclosure under the PO would not guard against any alleged harm, and the burden on the government to seek unsealing is minimal because the twelve documents relate to only three matters. Nor has the government indicated why selective redaction (to remove names of the cases) would not permit production of the documents at issue. The Court should order the government to seek permission to disclose the Court Order Documents, or at minimum, to produce them with appropriate redactions.

\\

\\

\\

DocuSign Envelope ID: 663BD2F4-765D-4900-8393-40F6F3CAF1A7

## III.  THE GOVERNMENT'S CONTENTIONS

The government's Opposition is summarized below:

Within the vast scope of discovery in this case, the United States is properly withholding a small number of documents protected by the Law Enforcement Privilege ("LEP") or material sealed by orders in another district court. The United States has articulated the clear and specific harms that would result from the release of these sensitive law enforcement documents. And the United States' interest in protecting these materials far outweighs United's purported need to review them. United has offered no basis for the court to order the United States to produce the 12 documents sealed by other district courts . . . On May 31, 2022, the United States provided United with a declaration from Adam Globerman supporting the assertion of LEP over the remaining 493 documents. Mr. Globerman is the Assistant Inspector General for Investigations at HHS-OIG. *See* Declaration of Adam Globerman ("Globerman Declaration"). Of these 493 documents, 337 are interview reports (91 related to the investigation of United underlying this litigation and 246 related to investigations of other entities), 88 are agents' notes of interviews (6 related to the investigation of United underlying this litigation and 82 related to investigations of other entities), and 68 are documents that discuss or reflect consensual recordings made by cooperating witnesses unrelated to the investigation of United. . . United's Motion is now limited to the 401 documents that are being withheld, in full or in part, solely on the basis of LEP ("the LEP documents") and are not protected by another privilege (e.g., the attorney-client privilege) . . . The United States has withheld 51 documents from production, either in full or in part, because another District Court ordered that the documents remain sealed

DocuSign Envelope ID: 663BD3E4-765D-4950-8393-40F6E3CAF1A7

or because the documents reveal the identity of a sealed qui tam action. On May 31, 2022, Deputy Assistant Attorney General Michael Granston submitted a Declaration representing that these materials were withheld pursuant to the order of another District Court. . . All but 12 of the 51 documents referenced in the Granston Declaration are also protected by the attorney client privilege and therefore are not at issue in this Motion. Of the 12 remaining documents, 8 contain references to sealed cases. United seeks redacted version of the 8 documents that contain sealed material, and the United States has now provided such versions of these documents to United with only the references to sealed cases redacted. Of the 4 remaining documents, one document (USBPPRIV00048909) has been withheld as both LEP and because its production would reveal the identity of an under seal qui tam. Thus, United's Motion is limited to 3 documents (the "Court Order Documents"), which are themselves sealed by order of another District Court and therefore withheld in full.

## C. UNITED'S REPLY

United's Reply is summarized below:

[T]he government has failed to make the required threshold showing that the Law Enforcement Privilege ("LEP") applies to the 402 documents it withholds on that basis ("OIG LEP Documents") because its supporting declaration ("Globerman Declaration") describes only vague and speculative harms, and fails to explain why the parties' protective order ("PO") would not mitigate any potential harm of disclosure. Yet even if the government had established the privilege applies (it has not), disclosure is still warranted because United's interest in obtaining these documents outweighs any

purported interest the government has in shielding them. The government's response attempts to impose a burden of proof on United that has no support in the law, faults United for not knowing exactly what the withheld materials contain, and advances arguments the Court has already rejected. None of these arguments overcome United's strong interest in disclosure.

D.  THE GOVERNMENT'S SURREPLY

The Special Master granted permission to the government to file a surreply which is summarized below:

United's Reply makes a new factual allegation about 41 documents that the United States clawed back earlier in discovery (the "Clawback LEP documents"). The United States submits this brief surreply to correct a misunderstanding about these documents. In its Reply, United argues that after Defendants filed their opening brief, the United States withdrew its assertion of LEP over the 41 Clawback LEP documents and then asserted new privileges over those documents and withheld them from production. United suggests that because the United States produced a corrected privilege log after United filed its opening brief, the Special Master should conclude that the government was somehow acting strategically and should review the 41 documents in camera. However, United has incomplete information about the timeline. In March 2022, the United States agreed to re-review approximately 1,800 documents withheld on the basis of LEP. Based on this re-review, which took place in Spring 2022, the United States made the decision to withdraw its assertion of LEP over the 41 Clawback LEP documents. At that time, the United States identified for its vendor (a) 13 documents to remove from the government's privilege log and produce to

DocuSign Envelope ID: 663BD3E4-765D-4909-8393-40F6E3CAE1A7

United, and (b) 28 documents to continue withholding pursuant to the attorney-client privilege and/or the work product protection. However, due to a vendor miscommunication, these 41 documents remained on the United States' June 24 clawback log as LEP. When United questioned the 41 Clawback LEP documents in its opening brief, the United States worked with its vendor to produce the 13 non-privileged documents and provide United with a corrected log removing the LEP designations and asserting the correct privileges over the remaining 28 documents. Thus, the recent correction to the United States' clawback log does not reflect strategic timing, but instead, the type of simple error that both parties have experienced. . . Given this clarification, the United States respectfully submits that an in camera review is unnecessary.

## IV. DISCUSSION

The government has withheld certain documents from production under the "law enforcement privilege." The law enforcement privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (internal citations and quotations omitted). The "law enforcement privilege" is similar to other governmental privileges, such as the official information privilege. The Ninth Circuit has recognized that these privileges are "qualified privileges," contingent upon the "competing interests of the requesting litigant and subject to disclosure." *Venegas v. Mendoza*, 2022 10626-54 at *1 (E.D. Cal. October 18, 2022) (citing *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.,* 511 F.2d 192, 198 (9th Cir. 1975)). To meet its initial burden of establishing that the LEP applies, the government must make a "substantial threshold showing that disclosure of specific information would result in specific harm to identified important interests." *Maria Del Socorro Quintero Perez, CY v. United States*, 2016 WL 362508, at * 2 (S.D. Cal. Jan. 29,

DocuSign Envelope ID: 663BD2F4-765D-4800-8398-40F6F3CAF1A7

2016).  The government must consider the mitigating impact of a protective order.  *Conan v. City of Fontana*, 2017 WL 2874623 at *5 (C.D. Cal. July 6, 2017).

If the government meets its burden of establishing the applicability of the law enforcement privilege to the withheld documents, the court must balance the interest in non-disclosure against a particular litigant's need for the information.  *Wagafe v. Trump*, 334 F.R.D. 619, 623 (W.D. Wash. 2020).  The balancing approach is "moderately pre-weighted in favor of disclosure."  *Kelly v. City of San* Jose, 114 F.R.D. 653, 661-662 (N.D. Cal. 1987).  Courts may evaluate this balancing approach under the ten factors identified in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), although it does not appear that any Ninth Circuit published decision has adopted the *Frankenhauser* test.[1]  No single factor is dispositive. The Special Master applies this balancing approach to the categories of documents set forth in the Globerman declaration.

A.  INVESTIGATION INTERVIEW REPORTS AND RELATED DOCUMENTS

The Globerman Declaration describes the harm from the release of documents withheld under the law enforcement privilege as follows:

---

[1] The ten factors include (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources, and (10) the importance of the information sought to the party's case." *Frankenhauser*, 59 F.R.D. at 334

There are approximately 337 interview reports over which the United States has asserted the Law Enforcement Privilege. These interview reports are written summaries of information that agents have gathered through interviews and discussions with witnesses. Certain of the interview reports reflect interviews with whistleblower complainants in qui tam matters. Each agent conducting an interview of a witness makes a conscious choice about which facts, transactions, and persons to discuss during the interview to best serve the needs of the investigation. Similarly, when writing a case report of the interview, the agent determines what information provided by the witness to highlight in the report. The following harm would result from the release of these records: The release of witness interview reports and disclosure of information provided by complainants and witnesses would reveal investigative techniques and procedures of HHS-OIG given that the reports of interviews discuss the investigator's choice of which facts, transactions, and persons to discuss during each interview. Therefore, disclosure of these interview reports would divulge specific details regarding how HHS-OIG investigates cases involving MAOs or other subjects under federal investigation. In addition, disclosure of such interview reports would compromise the relationship HHS-OIG has formed with these individuals who have assisted HHS-OIG in its investigations. Disclosure of witness interview memos and notes of witness interviews would also seriously damage the agency's efforts to recruit, develop, and retain future witnesses as disclosure of the investigative file would compromise the trust between OIG and its witnesses. HHS-OIG's investigations depend heavily on the willingness of witnesses to voluntarily provide information. This chilling effect on the willingness of individuals to disclose information to HHS-OIG would hamper future investigations unrelated to this litigation. Further, disclosure of these types of interview reports would also hamper any future

investigatory efforts because they could reveal to any subject of investigation how to evade such investigations by disclosing the types of information HHS-OIG is interested in when the agency undertakes specific types of investigations. Disclosure of such information increases the likelihood that subjects and potential subjects of such investigations will develop methods to obscure or alter such information and thereby circumvent the agency's efforts to collect information and evidence to thwart serious violations.

(Globerman Dec. ¶ 10 at 3-4).

According to the Globerman declaration, 85 of the interview reports pertain to witness interviews related to the investigation in the *Poehling* matter. (Globerman Dec. at 4). There are six documents that pertain to interviews of Relator Benjamin Poehling.

Mr. Globerman's declaration primarily identifies a generic form of harm. Mr. Globerman's statement of harm could apply to any witness interview in almost any circumstance and any government investigation. The government's statement of harm does not satisfy the requirement that the moving party establish a "specific" and "non-speculative" harm, at least as to the majority of withheld documents. Essentially, Mr. Globerman's statement of harm suggests that the government could withhold all witness interviews ever conducted by HHS-OIG on the theory that the disclosure of witness interviews would always be harmful. The government argues that it has identified "specific harms" (Opposition at 5), but these harms are not specific to the requested investigatory documents. Instead, the identified harms would exist in any case involving the HHS-OIG'S production of witness statements and related documents. The government has failed to offer any empirical or specific support for its statement of harm. *See also Conan,* 2017 WL 2874623 at *5 (rejecting contention that officers would refuse to cooperate with investigations if statements subject to limited disclosure and noting

absence of empirical support for this contention); *cf. Kelly v. City of San Jose*, 114 F.R.D. 653, 666 (N.D. Cal. 1987) (rejecting argument that officers will be less forthright in expressing their opinions if there is a risk of disclosure as "empirically" unsupported).

Even if the government had made a specific showing of harm, the balance of interests favors United on several categories of documents described by Mr. Globerman. United contends the investigatory documents (relating to the investigation of United) could "bear on key factual questions, such as whether United even received an overpayment at all, and evidence about the presence, extent, and impact of unsupported codes in United's risk adjustment data gleaned from witnesses." (MTC at 13). United further argues it needs the United investigative documents because it has no other way to obtain the statements and beliefs of the witnesses in the investigations at issue as elicited in OIG interviews or through consensual monitoring. United contends that "United cannot replace (this information) through depositions given the passage of over 5 years since the government filed its complaint in this litigation and likely longer to the extent the government conducted these interviews in the more than 5 years preceding the filing of the complaint." (MTC at 13). The Special Master agrees that United has articulated a compelling need for the United investigation documents.

Courts have recognized that the witness interviews from the actual investigation involving the requesting party are relevant and discoverable. *See Venegas v. Mendoza*, 2022 WL 10626054, at * 2 (E.D. Cal. October 18, 2022) (ordering the disclosure of "witness interviews" that concern complaint's allegations as "highly relevant"). United's need to discover these case-specific documents outweighs the generic harm suggested by the government. Furthermore, the government may produce the United investigation documents under the the AEO provision in the protective order to reduce the anticipated harm.

As pertains to interviews or witness statements *not* related to the United investigation, United argues that these documents "reflect the statements and beliefs of government, company witnesses, and third parties as they relate to risk adjustment investigations into United or other MAOs." (MTC at 11). Further, United argues "[t]hese documents accordingly related directly to key issues in this case, including but not limited to (1) materiality and scienter elements that the government must prove to establish United's liability under the False Claims Act . . . (2) the meaning of contractual and regulatory provisions the government argues are relevant here; and (3) the extent to which United or other MAOs may have been overpaid because of the presence of unsupported codes in risk adjustment data submitted to CMS." (MTC at 11).

Again, United's specific need for these documents outweighs the generic and speculative harm described in the Globerman Declaration. Any concerns regarding harm can be addressed by redacting identifying information and disclosing such documents under the AEO designation of the protective order. While the government argues that there will be a "chilling effect" on witnesses' willingness to participate in government investigations, this "chilling effect" argument does not take into account the mitigating impact of redacting witnesses names or disclosing documents under an AEO designation. The "chilling effect" lacks any evidentiary support other than Mr. Globerman's generalized and somewhat speculative statements of a potential chilling effect.

The Special Master recognizes that the government may have a heightened interest in witness confidentiality in an *active* case that is currently under seal. Witnesses may be employed by a potential target of an investigation and revealing their identity could be harmful to the investigation and the witness's employment status. The Special Master finds that witness statements and interview reports that are part of an open or active investigation and are under seal may be withheld.

The Special Master rejects the contention that revealing the notes or reports of HHS-OIG agents in closed cases would cause meaningful harm to the government (Globerman Dec. ¶ 14), particularly if released with redactions and subject to a protective order.  Many former government agents and lawyers work in the private sector after completing their government service and those individuals are fully aware of the "investigative techniques and procedures" of HHS-OIG.  These investigative techniques and procedures are not the type of government information that is unavailable to lawyers and others working outside of the government.   Accordingly, the agents reports and notes may be produced, subject to redactions and the protective order.

After consideration of the relevant *Frankenhauser* factors and other applicable authorities, the Special Master finds that United's need for the majority of documents described in the Globerman declaration outweighs the harm identified by the government. The documents identified in the Globerman declaration shall be produced, unless they are part of an active and open investigation that is currently under seal.   Documents that are part of a *closed* investigation and *no longer under seal* shall be produced with the identifying information redacted and subject to the AEO provisions of the protective order. The Special Master shall hold a conference with the parties to discuss the timing and details of this production.

B.  COURT ORDER DOCUMENTS

The Globerman declaration states that "a number of the documents identified [in the Globerman declaration] remain under seal pursuant to 31 U.S.C. Section 3730(b)(2) . . . While a *qui tam* complaint is subject to a court seal, the government, including HHS-OIG, cannot disclose its existence." (Globerman Dec. ¶14).  The Special Master finds that she lacks the authority order the production of documents that are subject to a sealing order of another court.

In the Motion to Compel, United requests that "[t]he Special Master should order the disclosure of the twelve Court Order Documents. . . For the nine Non-Sealed documents, the government does not justify why it cannot produce them subject to the existing PO . . . The government also claims it cannot produce three Sealed Documents from two settled *qui tam* cases." The Special Master agrees that documents that are no longer under seal should be produced to United. If these documents raise concerns similar to the earlier described documents (i.e., harm to witness confidentiality, etc.), then the government may produce such documents subject to the AEO provision of the protective order and with redactions.

The Special Master lacks authority to order the production of a document subject to another court's sealing order. To obtain relief from a sealing order, the parties must seek relief from the court that ordered the documents to be sealed. Accordingly, the MTC is DENIED to the extent it seeks an order from the Special Master compelling the production of a document currently filed under a sealing order of another court.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

DocuSign Envelope ID: 663BB3E4-75EB-4050-8398-40F9E3CAF1A7

## V. CONCLUSION

It is ORDERED that the Motion to Compel Documents Withheld Pursuant to Law Enforcement Privilege is GRANTED IN PART and DENIED IN PART, as set forth above. The Special Master requests a conference with the parties to determine the appropriate steps for compliance with this order. The Special Master also seeks further information regarding the request for *in camera* review of additional documents, as described in the government's Surreply. The Special Master's Case Administrator will reach out to the parties to schedule a conference at a mutually agreeable time.

IT IS SO ORDERED.

Dated: December 19, 2022

DocuSigned by:

*Hon. Suzanne Segal (Ret.)*

2B739185DE71459...

HON. SUZANNE H. SEGAL (Ret.)

Special Master

# PROOF OF SERVICE

**RE:**     **United States ex rel. Poehling v. United Health Group, Inc., et al.**
              **Case ID: KEERX**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

        I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action. My business address is 633 West 5th Street, Suite 1000  Los Angeles, CA 90071

        On December 19, 2022 I served the **SPECIAL MASTER'S ORDER RE UNITED'S MOTION TO COMPEL DOCUMENTS WITHHELD PURSUANT TO LAW ENFORCEMENT PRIVILEGE** on the following parties. Placing a true copy to all parties as follows:

| | |
|---|---|
| Stephen S. Hasegawa, Esq.<br>PHILLIPS & COHEN<br>100 The Embarcadero<br>Suite 300<br>San Francisco, CA 94105<br>ssh@pcsf.com | Arun Subramanian, Esq.<br>Cory Buland, Esq.<br>Geng Chen, Esq.<br>Lisa Jing, Esq.<br>SUSMAN GODFREY<br>1301 Avenue of the Americas<br>32nd Floor<br>New York, NY 10019<br>asubramanian@susmangodfrey.com<br>cbuland@susmangodfrey.com<br>gchen@susmangodfrey.com<br>ljing@susmangodfrey.com |
| Elizabeth Soltan, Esq.<br>CONSTANTINE CANNON<br>335 Madison Avenue<br>9th Floor<br>New York, NY 10017<br>esoltan@constantinecannon.com | Anne H. Hartman, Esq.<br>Eric R. Havian, Esq.<br>Hallie E. Noecker, Esq.<br>Marlene Koury, Esq.<br>CONSTANTINE CANNON<br>150 California Street<br>Suite 1600<br>San Francisco, CA 94111<br>ahartman@constantinecannon.com<br>ehavian@constantinecannon.com<br>hnoecker@constantinecannon.com<br>mkoury@constantinecannon.com |
| Chanler A. Langham, Esq.<br>SUSMAN GODFREY, LLP<br>1000 Louisiana Street<br>Suite 5100<br>Houston, TX 77002<br>clangham@susmangodfrey.com | Max Voldman, Esq.<br>CONSTANTINE CANNON<br>1001 Pennsylvania Avenue NW<br>Suite 1300N<br>Washington, DC 20004<br>mvoldman@constantinecannon.com |

Amy L. Likoff, Esq.
David Coriell, Esq.
Edward Crooke, Esq.
Gregory A. Mason, Esq.
Jessica Krieg, Esq.
Linda McMahon, Esq.
Martha Glover, Esq.
Robert McAuliffe, Esq.
Wendy Z. Zupac, Esq.
US DEPARTMENT OF JUSTICE, LEGAL DIVISION
175 N Street NE
Washington, DC 20002
amy.l.likoff@usdoj.gov
dcoriell@usa.doj.gov
edward.crooke@usdoj.gov
gregory.a.mason@usdoj.gov
jessica.e.krieg@usdoj.gov
linda.mcmahon2@usdoj.gov
martha.n.glover@usdoj.gov
robert.mcauliffe@usdoj.gov
wendy.z.zupac@usdoj.gov
cc: jessica.l.sweeney2@usdoj.gov

Jack D. Ross, Esq.
John E. Lee, Esq.
AUSA - OFFICE OF US ATTORNEY
300 North Los Angeles Street
Los Angeles, CA 90012
jack.ross@usdoj.gov
john.lee2@usdoj.gov

Andrew C. Baak, Esq.
BARTLIT BECK
1801 Wewatta Street
12th Floor
Denver, CO 80202
andrew.baak@bartlitbeck.com
cc: poehling@bartlitbeck.com

Abid Qureshi, Esq.
Daniel Meron, Esq.
Morgan Maddoux, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
abid.qureshi@lw.com
daniel.meron@lw.com
morgan.maddoux@lw.com

David Schindler, Esq.
Manuel A. Abasal, Esq.
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
david.schindler@lw.com
manny.abascal@lw.com

Kirstin Scheffler Do, Esq.
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
kirstin.schefflerdo@lw.com

David C. Tolley, Esq.
David Rowe, Esq.
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
david.tolley@lw.com
david.rowe@lw.com

( )   BY U.S. MAIL:                        I caused such envelope(s), with postage fully prepaid, to be placed in the
                                           U.S. Mail at Los Angeles, California.

( )   BY FACSIMILE:                        I caused such document to be sent via facsimile to each person.

(X)   BY ELECTRONIC MAIL:                  I caused such document to be sent via electronic mail to each person.

( )   BY PERSONAL SERVICE:                 I caused such envelope to be delivered by hand to the office of the
                                           addressee.

(X)   STATE:                               I declare under penalty of perjury under the laws of the State of California
                                           that the above is true and correct.

( )   FEDERAL:                             I declare that I am employed in the office of a member of the bar of this
                                           Court at whose direction the service was made.


Executed on December 19, 2022 at Los Angeles, California.            _Alisa Martinez_
                                                                     Alisa Martinez
                                                                     Signature Resolution