DocuSign Envelope ID: 65B93764-F693-430C-8232-D569CB3F6746

FILED
CLERK, U.S. DISTRICT COURT

11/30/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ____gga____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al.*,<br><br>Defendants. | No. CV 16-08697 FMO<br><br>SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER LIMITING DEFENDANT UNITED'S THIRD AMENDED 30(B)(6) DEPOSITION NOTICE |

## I. INTRODUCTION

Plaintiff United States ("the government" or "Plaintiff") moves for a protective order to limit the Rule 30(b)(6) notice of UnitedHealth Group, Inc., *et al.* ("United"). The government asserts that United's notice is "sweepingly" overbroad. The government seeks four specific limitations regarding the Rule 30(b)(6) notice. For the reasons discussed below, the Special Master GRANTS the government's motion in part and DENIES the government's motion in part.

## II. DISCUSSION

### PLAINTIFF'S CONTENTIONS REGARDING LIMITATION NO. 1

The government seek a limitation on the basis that United's Notice defines "Government" to include the Department of Justice, thereby impermissibly seeking testimony from litigation counsel. By expressly defining "Government" to include DOJ attorneys, United is attempting to solicit testimony from litigation counsel regarding each of the five topics. Such a blatant effort to seek deposition testimony about the views of opposing litigation counsel is a plainly inappropriate attempt to elicit privileged and/or protected material.

### UNITED'S RESPONSE

United asserts that it does not seek privileged information.

### ORDER RE LIMITATION NO. 1

The Special Master reminds the parties that courts require responding parties to construe discovery requests in a "reasonable manner." Where discovery requests include ambiguous or undefined terms, a responding party has "an obligation to construe ... [them] in a reasonable manner." *Boston v. ClubCorp USA, Inc.*, 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019) (quoting *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D. Colo. 2007)) ("A responding party must apply a reasonable interpretation to a discovery request."); *Accord King-Hardy v. Bloomfield Bd. of Educ.*, 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002) (responding party must give discovery requests a reasonable construction rather than strain to find

ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) (A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized"); *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 518 (D. Colo. 1993) (in responding to discovery requests, a responding party is "obliged ... to put the collective heads of its lawyers and agents together . . . to give those requests a reasonable construction."). *G.P.P., Inc. v. Guardian Protection Products, Inc.*, 2020 WL 6392563, at *2 ((E.D. Cal., Nov. 2, 2020).

This rule of "reasonable construction" applies to Rule 30(b)(6) topics. A 30(b)(6) topic is not objectionable if the topic may be reasonably construed to seek relevant information capable of being addressed in a deposition. *See Luna v. Universal City Studios LLC*, 2015 WL 13655668, at *6 (C.D. Cal. Feb. 10, 2015). Accordingly, if topics or definitions may be reasonably construed to seek relevant information in a particular deposition, such topics or definitions are permissible.

Following these authorities, the parties must apply a reasonable construction to the Notice's definitions. The government's motion for a protective order is GRANTED, to the extent it seeks an order prohibiting the disclosure of privileged information. To the extent the motion seeks a broader order completely excluding the Department of Justice or other agencies or components involved in this dispute from the definition of "You", the motion is DENIED.

### PLAINTIFF'S CONTENTIONS REGARDING LIMITATION NO. 2

The 30(b)(6) Notice defines "Government" and "You" to encompass the entire Department of Health and Human Services ("HHS") "and all subdivisions and components thereof," as well as "all Persons" acting on

3

behalf" of HHS, the Department of Health and Human Services Office of Inspector General ("HHS-OIG") and the Centers for Medicare and Medicaid Services ("CMS"). The definitions sweep in components of HHS that have no relevance to this action and renders each Topic that uses the terms overly broad, unduly burdensome, and not proportional to the needs of the case.

## UNITED'S RESPONSE TO PLAINTIFF" CONTENTIONS RE LIMITATION NO. 2

United's definitions of "You" and the "Government" in no way render any of United's 30(b)(6) topics improper. To be clear, United does not seek testimony from every employee of CMS, HHS-OIG, or DOJ. And, contrary to the government's assertion, none of United's topics requires the 30(b)(6) designees "to educate themselves and be prepared to testify on the understandings of over 80,000 individual HHS employees." Mot. at 10. Rather, United seeks for the government to prepare its witnesses sufficiently to respond to the noticed topics. To the extent that sufficient preparation involves speaking to employees with pertinent knowledge, then such preparation is called for.

The government also objects to the inclusion of HHS in United's definitions of "You" and "Government" because, in addition to its work related to the key aspects of the Medicare Advantage program at issue in this case, HHS also performs other functions. The government suggests, without any case law support, that it is improper to notice an entity with multiple components or with components that perform functions unrelated to the case. The same could be said of virtually every entity that receives a 30(b)(6) notice, including the 4 entities to which the government issued 30(b)(6)

4

notices in this very matter, which collectively incorporate approximately 350,000 employees and numerous business segments. A 30(b)(6) notice is not somehow overly broad simply because the entity has responsibilities unrelated to the case. By the government's own assertion, its Second Amended 30(b)(6) Notices to four United and Optum entities are similarly overly broad and improper. The government cannot plausibly support this contention, and United has agreed to identify the relevant information within each entity. There is no reason why the government cannot do the same. . . . As to other topics in United's Notice, however, there may be other components within HHS that possess relevant information. Indeed, the government has included as custodians in this litigation— and collected and produced documents from—individuals in other components within HHS, including from the Office of the Assistant Secretary for Planning and Evaluation ("ASPE") and the Agency for Healthcare Research and Quality ("AHRQ"). For example, the government has produced numerous documents demonstrating that ASPE was involved with issues relevant to the claims and defenses in this litigation, including issues related to accuracy of risk adjustment data and coding intensity. . . In addition to the relevant discovery obtain from other HHS components like ASPE, United believes that ASPE— and other similarly situated components—may have testimony relevant to the claims or defenses in this case.. . . . To the extent other HHS components may have information related to the topic at issue, United is entitled to testimony from these components related to these topics. The government cannot and does not contend otherwise. While United has endeavored to direct specific topics to CMS or HHS-OIG given the information available to it, United is not an expert regarding the roles and responsibilities of each component within HHS. United therefore included HHS within the definitions of "You" and "Government" to ensure that the government prepared witnesses to

5

testify from HHS or other components, as necessary and appropriate given the issues in this litigation. The government is best suited to know whether other components within HHS besides CMS or HHS-OIG may possess relevant information in response to United's 30(b)(6) topics. The government bears the responsibility to identify witnesses and information relevant to United's topics—just as United bears the same responsibility to identify witnesses and information within the four noticed entities for the agreed topics in the government's Second Amended 30(b)(6) Notice. To the extent that the government identifies other components within HHS that may possess relevant information, United is entitled to testimony from a witness prepared to speak about this information.

### ORDER RE LIMITATION NO. 2

The Special Master finds that while the government's expressed concerns about the overbreadth and scope of the "government" or "you" definition appear genuine, those concerns would be alleviated by applying a reasonable construction to the definition. The government's motion for a protective order regarding the definition of "government" or "you" is DENIED.

### PLAINTIFF'S CONTENTIONS REGARDING LIMITATION NO. 3

Seven subtopics of United's 30(b)(6) Notice call for the United States to designate a deponent to testify regarding "all instances" in which CMS and/or HHS-OIG communicated certain information to Medicare Advantage Organizations. Specifically, the seven subtopics require testimony on "all instances" in which CMS and/or HHS-OIG communicated to MAOs: • "that 'insurance companies that want to participate in the MA Program must agree,

6

through their Part C and D agreements and their EDI agreements, to provide valid diagnostic data and investigate and delete invalid data.'. . . ." (Topic 11(i)) • "that the MA Contracts required MAOs to 'ensure that provider-reported diagnoses are supported by beneficiaries' medical records and are otherwise accurate and truthful.' . . . ." (Topic 11(j)) • "that they were required to 'ensure that provider-reported diagnoses are supported by the beneficiaries' medical records and are otherwise accurate and truthful.' . . . ." (Topic 12(b)) • "that they were required to design their Chart Review program to validate Diagnosis Codes reported by Providers that the MAOs submitted to CMS. . . ." (Topic 12(c)) • "the requirements that the Government contends are imposed on MAOs by an obligation to '[a]dopt and implement an effective compliance program' under 42 C.F.R. § 422.503(b)(4)(vi) and 42 C.F.R. § 423.504(b)(4)(vi)[.]" (Topic 13(b)) • "that, in order to '[a]dopt and implement an effective compliance program' in compliance with 42 C.F.R. § 422.503(b)(4)(vi) and 42 C.F.R. § 423.504(b)(4)(vi), MAOs are required to 'ensure that provider-reported diagnoses are supported by beneficiaries' medical records and are otherwise accurate and truthful.' . . ." (Topic 13(c)) • "the requirements that the Government contends are imposed on MAOs by an obligation to 'exercise due diligence[.]'" (Topic 14(d)). These requests are improper as they are overly broad, unduly burdensome, not proportional to the needs of this case and do not describe the matters for examination with "reasonable particularity." . . The United States respectfully requests that the Court either strike these topics in their entirety or direct United to provide narrowed Topics identifying with reasonable particularly the communications about which they seek testimony.

## UNITED'S RESPONSE TO PLAINTIFF'S CONTENTIONS REGARDING LIMITATION NO. 3

[T]he government asserts that United's requests for testimony regarding "all instances" of certain specified types of communications are unduly burdensome. Each of the seven subtopics that the government challenges relate to instances in which CMS or HHS-OIG communicated, if at all, to MAOs about supposed requirements the government alleges in the Second Amended Complaint apply to MAOs—specifically, that MAOs were required to validate diagnoses reported by providers that MAOs submitted to CMS and related requirements. The government asserts without any factual support that preparation of a witness to testify regarding such subtopics would require canvassing thousands of employees. The subtopics at issue state as follows: • Topic 11(i): "All instances in which CMS communicated to MAOs that "insurance companies that want to participate in the MA Program must agree, through their Part C and D agreements and their EDI agreements, to provide valid diagnostic data and investigate and delete invalid data." • Topic 11(j): "All instances in which CMS communicated to MAOs that the MA Contracts required MAOs to "ensure that provider-reported diagnoses are supported by beneficiaries' medical records and are otherwise accurate and truthful." • Topic 12(b): "All instances in which CMS or HHS-OIG communicated to MAOs that they were required to "ensure that provider-reported diagnoses are supported by the beneficiaries' medical records and are otherwise accurate and truthful." • Topic 12(c): "All instances in which CMS or HHS-OIG communicated to MAOs that they were required to design their Chart Review program to validate Diagnosis Codes reported by Providers that the MAOs submitted to CMS." • Topic 13(b): "All instances

in which CMS communicated to MAOs the requirements that the Government contends are imposed on MAOs by an obligation to "[a]dopt and implement an effective compliance program" under 42 C.F.R. § 422.503(b)(4)(vi) and 42 C.F.R. § 423.504(b)(4)(vi);" • Topic 13(c): "All instances in which CMS communicated to MAOs that, in order to "[a]dopt and implement an effective compliance program" in compliance with 42 C.F.R. § 422.503(b)(4)(vi) and 42 C.F.R. § 423.504(b)(4)(vi), MAOs are required to "ensure that provider-reported diagnoses are supported by beneficiaries' medical records and are otherwise accurate and truthful." • Topic 14(d): "All instances in which CMS Communicated to MAOs the requirements that the Government contends are imposed on MAOs by an obligation to "exercise due diligence." The government's assertion is devoid of any support and, for the reasons below, must fail. . . .As United made clear on the parties' August 31, 2022 conference and in its October 6 correspondence, United has a good-faith basis to believe there are very few, if any, instances of communications between CMS or HHS-OIG and MAOs related to these subtopics. Ex. 2 at 2, David Schindler Decl. ¶ 3. United also explained that, should the government learn otherwise and that responding to these subtopics would somehow involve identifying hundreds or thousands of such communications, United is willing to further discuss these subtopics with the government. David Schindler Decl. ¶ 3. But the government has never—including its in Motion—quantified any supposed burden associated with responding to these subtopics. Instead, the government makes conclusory and speculative assertions that do not quantify any burden or otherwise support the government's claims that these subtopics are unduly burdensome. For example, the government suggests in its Motion that obtaining information responsive to these subtopics "would likely involve

canvassing, at a minimum, hundreds of employees who worked on issues . . Yet, by the government's own admission, it does not even appear the government has undertaken any exercise whatsoever to determine if responding to these subtopics would in fact require this effort. The government is purely speculating and cannot point to any evidence to support its claim. Second, the government's claim that these subtopics are unduly burdensome because they do not specify any particular occurrence of any communication is unavailing. United's subtopics clearly articulate the information it seeks – testimony regarding instances where CMS or HHS-OIG communicated to MAOs regarding supposed requirements the government now argues exist. The government's attempt to avoid this testimony by unreasonably interpreting the subtopics to include communications about broader topics is unyielding. United does not believe there are many, if any, such communications and it is impossible for United to identify such communications with any more specificity than it already has in its Notice. Third, contrary to the government's claim, id. at 14-15, these subtopics are not only plainly relevant, they go to the heart of this case and outweigh any burden. The reverse False Claims Act requires the government to prove that United violated its "obligation" to return an "overpayment." 31 U.S.C. § 3729(a)(1)(G); id. § 3729(b)(3) (defining "obligation" to include "an established duty, whether or not fixed, arising from . . . retention of any overpayment"). To do so, the government must identify some source of law—a statute, regulation, or contractual provision— that imposed the "obligation" on United that it now seeks to enforce, namely, the obligation that MA plans must delete every unsupported code they identify, or could potentially identify, regardless of how many such unsupported codes exist in CMS's Fee-For-Service data that is used to set payment rates. Such testimony

10

is relevant to United's defense to establish both how CMS interpreted this alleged obligation, and whether that interpretation was communicated to MAOs. As to the former, the agency's interpretation of the alleged obligation speaks directly to the question of whether United's understanding of the statutes and regulations at issue was objectively reasonable under the standard set forth in Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69-70 (2007). As to the latter, the absence of any communication to MAOs regarding the alleged obligation similarly undermines the government's argument that United knowingly retained an "overpayment." Surely the government knows whether this information was communicated to MAOs and, if so, how and when. If the government is unaware of any communications to MAOs regarding these alleged requirements, such a fact would be integral to this case, and United is entitled to testimony confirming the lack of any such communications. . . To obscure that truth, the government mysteriously contends that "[i]t is axiomatic that federal agencies provide guidance through public pronouncements such as notice and comment rulemaking, officially published guidance documents and, publicly available trainings." Mot. at 14-15. The suggestion – without any explicit statement – that CMS or HHS-OIG formally communicated to MAOs that they are required to validate provider-reported diagnoses is precisely why these subtopics are so critical. . . .

While United maintains its position that each of these subtopics are narrow and proportional to the needs of the case, should the Court find that any of the subtopics at issue are unduly burdensome, United requests that this Court order the government to make a particular and specific factual showing as to the scope of these subtopics, including a showing of diligent inquiry with the relevant witnesses and a declaration of implicated volume. Upon

such a showing, United would agree to negotiate as to scope in good faith with the government.

**ORDER RE LIMITATION NO. 3**

The request to quash Topics 11(i), 11(j), 12(b), 12(c), 13(b), 13(c), 14(d), 15(d) and 22(c) is GRANTED in part and DENIED in part. The government must conduct a reasonable search to determine the instances of communications that are responsive to these topics and conduct a further meet and confer with counsel for United. If no such instances exist, then the government must confirm this fact. The requests are limited to those individuals and topics that are directly at issue in this litigation. This Order is without prejudice to the government's assertion of objections to the individual questions on any grounds available under the Federal Rules of Civil Procedure, including overbreadth and proportionality.

**PLAINTIFF'S CONTENTIONS RE LIMITATION NO. 4**

Two of the subtopics in United's 30(b)(6) Notice request testimony regarding internal agency "discussions" or "assessments." Specifically, 22(c) asks for a witness to be prepared to testify regarding HHS-OIG's discussions with CMS regarding an OIG Report, and 15(d) requests testimony regarding "assessments expressed by key or material persons involved in proposing or not finalizing the Proposed Medical Record Review Rule." These requests are overly broad, unduly burdensome, and not proportional to the needs of the case. Similar to the United States' concerns with topics requesting testimony on "all instances," these two requests would require the 30(b)(6) designee to potentially canvas an extensive number of CMS and/or HHS-OIG

12

employees to determine what, if any, individual discussions or assessments took place. But, beyond the burden of preparing a witness to testify on these topics, these are simply not appropriate 30(b)(6) topics. As discussed above, the purpose of a 30(b)(6) deposition is to provide the official organization's position on various topics. . . . If United seeks discovery regarding individual discussions involving employees of CMS or HHS-OIG, it should use the appropriate tools provided by the Federal Rules, including fact depositions of individual witnesses or other means of discovery. Therefore, the United States respectfully requests that this Court quash these two topics as overbroad, unduly burdensome, and not proportional to the needs of the case.

**UNITED'S CONTENTIONS RE LIMITATION NO. 4**

Topic 15(d) seeks a "Description of assessments expressed by key or material persons involved in proposing or not finalizing the Proposed Medical Record Review Rule relating to existing requirements or regulations that would be duplicative of, similar to, or related to the Proposed Medical Record Review Rule.". In its Motion, the government omitted both that the topic seeks descriptions of such assessments and that the topic is further narrowed to solely seek assessments relating to existing requirements or regulations that would be duplicative of, similar to, or related to the Proposed Rule. Topic 15(d) seeks only assessments made by key or material individuals and only as to requirements or regulations that would be duplicative of, similar to, or related to the Proposed Rule. In January 2014, CMS proposed a rule that would have required precisely what the government now claims has always been an obligation (Proposed Rule). 42 C.F.R. Parts 409, 417, 422, 423, and 424, Medicare Program; Contract Year

13

2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs, at 2000. Testimony regarding the decisions to propose but not to finalize that rule are critical given that the government now claims that MAOs were obligated to validate provider-reported codes. The government's assertion that this request would somehow require it to "potentially canvas an extensive number of CMS and/or HHS-OIG employees," Mot. at 15, is blatantly false. The government previously identified a list of twenty-two CMS and/or HHS-OIG employees "who participated in or were involved—including but not limited to drafting, developing, analyzing, revising, commenting on, reviewing, not limited to drafting, developing, analyzing, revising, commenting on, reviewing, or issuing—CMS's Proposed Rule and the decision not to finalize the Proposed Rule articulated in the May 23, 2014 Final Rule." Ex. 5. This is a finite list of individuals the government itself identified as involved in the Proposed Review Rule and not the "extensive number" of individuals the government claims it would have to 8 Just six months passed between the proposal of the Medical Record Review Rule and the government's decline to finalize the same. The Medical Record Review Rule was proposed on January 10, 2014. 42 C.F.R. Parts 409, 417, 422, 423, and 424, Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs; Proposed Rule. That portion of the rule was not finalized with the final rule published on May 23, 2014. 42 C.F.R. 417, 422, 423, and 424; Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs; Final Rule. ". . . The government makes no attempt to explain why it would have to canvas a larger universe of individuals or why canvasing this list of twenty-two is somehow burdensome.

14

Topic 22(c) seeks only testimony about discussions between HHS-OIG and CMS related to a specific HHS-OIG report. This Report and discussions between HHS-OIG and CMS related to this report are directly relevant to the claims and defenses in this litigation. For example, OIG's December 2019 Report found in part that "MAOs almost always used chart reviews as a tool to add, rather than to delete, diagnoses . . . ." To the extent HHS-OIG discussed these findings with CMS, information regarding these discussions directly relates to the government's knowledge of MAOs' chart review practices and to United's defenses. United is therefore entitled to testimony about such discussions—to the extent any exist. Further, contrary to the government's assertion, the government should be able to identify the requested information by speaking to those at HHS-OIG involved in the drafting of the Report. United respectfully requests that the Court deny the government's request to quash Topics 15(d) and 22(c)

## ORDER RE LIMITATION NO. 4

While the Special Master agrees that these topics could be interpreted in a manner that would impose a burden on the government, the government must apply a reasonable construction to the topics. The government must prepare a witness to respond to a reasonable construction of these topics. United must also ask questions in a focused and narrowly targeted manner. The government's motion is GRANTED in part and DENIED in part. United's questioning on Topics 15(d) and 22(c) is limited to 30 minutes on each topic. If more time is necessary, the Special Master will make herself available, if possible, to address a request for additional time during the deposition. The motion is DENIED to the extent it seeks an order striking these topics in their entirety.

IT IS SO ORDERED.

Dated: 11/30/2022

*Hon. Suzanne Segal (Ret.)*
HON. SUZANNE H. SEGAL (ret.)
Special Master

# PROOF OF SERVICE

RE:  United States ex rel. Poehling v. United Health Group, Inc., et al.
     Case ID: KEERX

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action. My business address is 633 West 5th Street, Suite 1000 Los Angeles, CA 90071

On November 30, 2022 I served the **SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER LIMITING DEFENDANT UNITED'S THIRD AMENDED 30(B)(6) DEPOSITION NOTICE** on the following parties. Placing a true copy to all parties as follows:

| | |
|---|---|
| Stephen S. Hasegawa, Esq.<br>PHILLIPS & COHEN<br>100 The Embarcadero<br>Suite 300<br>San Francisco, CA 94105<br>ssh@pcsf.com | Arun Subramanian, Esq.<br>Cory Buland, Esq.<br>Geng Chen, Esq.<br>Lisa Jing, Esq.<br>SUSMAN GODFREY<br>1301 Avenue of the Americas<br>32nd Floor<br>New York, NY 10019<br>asubramanian@susmangodfrey.com<br>cbuland@susmangodfrey.com<br>gchen@susmangodfrey.com<br>ljing@susmangodfrey.com |
| Elizabeth Soltan, Esq.<br>CONSTANTINE CANNON<br>335 Madison Avenue<br>9th Floor<br>New York, NY 10017<br>esoltan@constantinecannon.com | Anne H. Hartman, Esq.<br>Eric R. Havian, Esq.<br>Hallie E. Noecker, Esq.<br>Marlene Koury, Esq.<br>CONSTANTINE CANNON<br>150 California Street<br>Suite 1600<br>San Francisco, CA 94111<br>ahartman@constantinecannon.com<br>ehavian@constantinecannon.com<br>hnoecker@constantinecannon.com<br>mkoury@constantinecannon.com |
| Chanler A. Langham, Esq.<br>SUSMAN GODFREY, LLP<br>1000 Louisiana Street<br>Suite 5100<br>Houston, TX 77002<br>clangham@susmangodfrey.com | Max Voldman, Esq.<br>CONSTANTINE CANNON<br>1001 Pennsylvania Avenue NW<br>Suite 1300N<br>Washington, DC 20004<br>mvoldman@constantinecannon.com |

Amy L. Likoff, Esq.
David Coriell, Esq.
Edward Crooke, Esq.
Gregory A. Mason, Esq.
Jessica Krieg, Esq.
Linda McMahon, Esq.
Martha Glover, Esq.
Robert McAuliffe, Esq.
Wendy Z. Zupac, Esq.
US DEPARTMENT OF JUSTICE, LEGAL DIVISION
175 N Street NE
Washington, DC 20002
amy.l.likoff@usdoj.gov
dcoriell@usa.doj.gov
edward.crooke@usdoj.gov
gregory.a.mason@usdoj.gov
jessica.e.krieg@usdoj.gov
linda.mcmahon2@usdoj.gov
martha.n.glover@usdoj.gov
robert.mcauliffe@usdoj.gov
wendy.z.zupac@usdoj.gov
cc: jessica.l.sweeney2@usdoj.gov

Jack D. Ross, Esq.
John E. Lee, Esq.
AUSA - OFFICE OF US ATTORNEY
300 North Los Angeles Street
Los Angeles, CA 90012
jack.ross@usdoj.gov
john.lee2@usdoj.gov

Andrew C. Baak, Esq.
BARTLIT BECK
1801 Wewatta Street
12th Floor
Denver, CO 80202
andrew.baak@bartlitbeck.com
cc: poehling@bartlitbeck.com

Abid Qureshi, Esq.
Daniel Meron, Esq.
Morgan Maddoux, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
abid.qureshi@lw.com
daniel.meron@lw.com
morgan.maddoux@lw.com

David Schindler, Esq.
Manuel A. Abasal, Esq.
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
david.schindler@lw.com
manny.abascal@lw.com

Kirstin Scheffler Do, Esq.
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
kirstin.schefflerdo@lw.com

David C. Tolley, Esq.
David Rowe, Esq.
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
david.tolley@lw.com
david.rowe@lw.com

| | | |
|---|---|---|
| ( ) | BY U.S. MAIL: | I caused such envelope(s), with postage fully prepaid, to be placed in the U.S. Mail at Los Angeles, California. |
| ( ) | BY FACSIMILE: | I caused such document to be sent via facsimile to each person. |
| (X) | BY ELECTRONIC MAIL: | I caused such document to be sent via electronic mail to each person. |
| ( ) | BY PERSONAL SERVICE: | I caused such envelope to be delivered by hand to the office of the addressee. |
| (X) | STATE: | I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| ( ) | FEDERAL: | I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. |

Executed on November 30, 2022 at Los Angeles, California.

_____*Alisa Martinez*_____
Alisa Martinez
Signature Resolution