F I L E D
CLERK, U.S. DISTRICT COURT
9/10/24
CENTRAL DISTRICT OF CALIFORNIA
BY: ___V. Figueroa___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>  Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC. *et al.*,<br><br>  Defendants. | CASE NO. CV 16-8697 FMO (SSx)<br><br>**SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART UNITED'S MOTION TO COMPEL RE HORNSBY MEMO** |

## I. INTRODUCTION

Defendants UnitedHealth Group, Inc, et al ("Defendants" or "United") filed a Motion (the "Motion") to Compel Plaintiff United States (the "United States" or the "government") to produce an unredacted version of a 2013 analysis written by Anne Hornsby, an employee of the Department of Health and Human Services or, in the alternative, for an order requiring the government to unredact several sentences that it "improperly clawed back after the June 20 (2023) discovery conference." (Motion at 2). United filed declarations and exhibits in

support of the Motion. The United States filed an Opposition to the Motion along with the July 7, 2023 Declaration of Jessica E. Krieg in support of the United States' Opposition to the Motion to Compel and exhibits. United filed a Reply. The parties filed sur-replies. On August 31, 2023, the government provided the disputed documents to the Special Master. The government provided the documents, produced as eighty-three (83) exhibits (approximately 500 pages) with multiple versions, for *in camera* review. The Special Master reviewed the documents *in camera* as well as the August 31, 2023 Declaration of Jessica Kreig. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II. THE PARTIES' CONTENTIONS

### A. UNITED'S CONTENTIONS

In the Motion, United contends as follows:

This discovery dispute is about a 2013 analysis of CMS's asserted authority to promulgate the Medical Record Review Rule, a proposed regulation CMS ultimately withdrew that would have required Medicare Advantage plans to "look both ways" if they conduct chart reviews. In other words, the proposed rule would have required that plans do precisely what the government now claims United should have done in this case. This 2013 analysis has generated a dizzying array of varied privilege positions by the government and its witnesses. Over a dozen versions of memos containing the analysis were produced, clawed back, reproduced, re-clawed back, and reproduced again, as recently as this week. The most recent of these claw backs occurred after the parties' June 20 informal discovery conference. Adding to the confusion, the government's primary 30(b)(6) witness recently testified that a version of the

memo containing the analysis did not reflect any advice of counsel, but then the government's attorneys changed course and represented that the memo's analysis of the proposed rule expressly reflects the opinions of the Office of General Counsel. But rather than claim privilege over the entirety of the relevant analysis, the government has improperly cherry-picked portions of the analysis that support its theory of the case. United respectfully requests that the Special Master order that the government unredact the analysis of the Medical Record Review Rule in the various versions of the memo at issue. When the government chose to waive privilege by selectively unredacting only the language most favorable to its case— painting an inaccurate and misleading picture of the evidence—it waived privilege over the remainder of the analysis. Alternatively, the government should at least have to unredact several sentences that it improperly clawed back after the June 20 informal discovery conference. The government affirmatively identified that language as not privileged in 2022, and the Protective Order expressly prohibits a party from clawing back documents it has "previously identified as not privileged."

(Motion 1-3).

### B. THE GOVERNMENT'S CONTENTIONS

In the Opposition, the government contends as follows:

This dispute revolves around three sentences that appear 82 times in the United States' document production. Two of those sentences clearly reflect legal advice communicated by attorneys in the HHS Office of General Counsel, and the United States has redacted them. United does not—and cannot—dispute that

those two sentences are privileged. Instead, United essentially makes a variety of other arguments in an attempt to invade the privilege. First, United argues that the government cannot claw back certain versions of documents containing these two sentences that were produced with inconsistent redactions. But the United States' clawbacks are consistent with the parties' Protective Order and no different than United's own clawbacks . . . Second, United argues that the description of communications from the Office of General Counsel address issues that are central to this litigation, so United would like to introduce those communications as evidence at trial. But the Ninth Circuit has repeatedly held that attorney-client privilege cannot be overcome by a showing of need. And in this case, both the United States and United have withheld on attorney-client privilege grounds thousands of documents relating to the issues in dispute . . . Third, United argues that the United States waived any protection over the first two sentences by producing the third sentence at issue in this dispute. But United's own brief, the witnesses' testimony, and the document itself all support that the third sentence is not privileged. Releasing non-privileged portions of a document does not effect a waiver for privileged material. Finally, United argues that the United States has somehow injected the privileged communications into this matter. But it was United—not the United States—that identified the memo containing the privileged communications as a deposition exhibit and asked government witnesses about this memo. In the end, United's brief does not provide any defensible basis for invading the United States' privilege and merely addresses the common issue of inconsistent redactions, which both parties contemplated when negotiating their protective order . . .

(Opposition at 1-4).

## C. UNITED'S REPLY

In its Reply Brief, United contends as follows:

The government spends most of its brief responding to arguments United has never made. To be clear, this is not a run-of-the-mill dispute about inconsistent redactions. Nor is United seeking privileged communications based on need alone. This is, first and foremost, a dispute about intentional waiver. At issue is an analysis of CMS's legal authority, which the government has repeatedly insisted reflects advice from the Office of General Counsel ("OGC"). The government intentionally waived privilege over part of that legal analysis, the part it believes benefits its case. Under the well-established doctrine of selective waiver, United is entitled to the rest. In response to United's selective-waiver argument—the core of the dispute before the Special Master—the government offers only two brief responses. First, it claims, in passing, that there was no waiver because the language it disclosed on June 8, 2023, was not privileged at all. In other words, the government contends that some of the analysis of CMS's legal authority is privileged, and some is not, even within the same paragraph. The government does not offer any meaningful explanation why that is true or even how it could be true. The government simply cites testimony from Anne Hornsby stating that no part of the memo reflects the opinions of lawyers—a fact the government repeatedly denies elsewhere in its brief and that, even if true, could not support the government's position that some parts of the analysis are privileged while others are not. Second, the government claims that no waiver has occurred because it has not yet affirmatively relied on the language it disclosed on June 8. But the law is clear that selective waiver occurs as soon as a party produces privileged material. The

5

government does not cite a single case holding otherwise. . . . Alternatively, one sentence of the relevant analysis (the second sentence of what is currently redacted) should be unredacted for the independent reason that the government's post-IDC claw back was improper under the Protective Order, which prohibits the claw back of documents a party has affirmatively identified as not privileged. In response, the government makes the astonishing claim that it reproduced at least thirteen copies of the relevant analysis with identical redactions—all in direct response to an explicit request from United to make a privilege determination—without ever even reviewing the language. That explanation, which is not supported by a declaration or any other actual evidence, is troubling and raises additional concerns about the government's production. And ruling in the government's favor on this issue would nullify an entire provision of the Protective Order the parties negotiated and agreed upon. United therefore respectfully requests that the Special Master order the government to reproduce all versions of Ms. Hornsby's analysis without any redactions to the analysis of the Medical Record Review Rule in section "6.B." Alternatively, the Special Master should order the government to reproduce the relevant documents with redactions consistent with those made in 2022.

(Reply at 1-2).[1]

### III. DISCUSSION

The Motion presents the question of whether the government (1) has the right to withhold the 2023 redacted version as privileged, i.e., including both the sentences that have

---

[1] The Special Master also considered the sur-replies filed by the parties.

1  always been redacted and the additional redactions of 2023;  (2) whether the government
2  should be compelled to disclose all versions due to waiver; or (3) whether the government
3  should disclose the May 2022 version for use in this litigation.  United requests that the
4  Special Master either order that the government produce completely unredacted versions of
5  the documents in dispute or, in the alternative, that the Special Master order that the
6  government reproduce the documents with the same redactions as the government produced
7  in May 2022.  United argues that the government's decision to claw back versions of the memo
8  after the 2023 Hornsby deposition and the IDC was simply a tactical decision made after the
9  government reconsidered its position.  United also contends that the 2023 claw back violated
10 the protective order.

  The government argues that it properly redacted and clawed back privileged information in 2023. (Opposition at 9-10).  The government also contends that the protective order authorized its 2023 claw back. (Opposition at 10-11).  The protective order recognized the significant volume of documents that would be disclosed during discovery.  (*Id.* at 10). Furthermore, the protective order expressly agreed that Rule 502(b) applied to the proceedings.  The parties modified the protective order in 2021 and added that "disclosure need not be 'inadvertent' as that term is used in Rule 502(b), but [the Parties] agree that all productions, designations, and requests for return of Protected Material will be made in good faith." Id. ¶ 9.  *(Id.* at 10-11).  The government states that it "*never* reviewed the material at issue and determined it was not privileged, and it *never* identified to United that the material was not privileged." (*Id.* at 11).  The government argues that it simply exercised its "good faith" belief that it was entitled to claw back privileged information when it clawed back material after the Rule 30(b)(6) deposition of Dr. Hornsby and the IDC in 2023.  (*Id.* at 12).

### A. THE SELECTIVE WAIVER DOCTRINE DOES NOT APPLY

Under Rule 502(a), when a party "waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication ... only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a)(1). Generally, then, a waiver extends to all communications on the same subject matter. *Cormack v. United States*, 118 Fed. Cl. 39, 43 (2014) (citing cases); *see also Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"). There is no bright-line test for evaluating the scope of a waiver. Instead, courts weigh the circumstances of the disclosure, the nature of the legal advice, and the prejudice to the parties of permitting or prohibiting further disclosures. *See Cormack*, 118 Fed. Cl. at 43. Courts are concerned with fairness and avoiding the inequitable results that can attend the selective waiver of privilege.

United contends that selective waiver applies to the government's decision to redact only portions of the Hornsby memo and to redact different portions at different phases of the litigation:

> The government's attempt to create a misleading version of the memo through a selective privilege waiver is improper. Under Rule 502(a) of the Federal Rules of Evidence, "[w]hen the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege . . . , the waiver extends to an undisclosed communication or information" where "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered

together." Fed. R. Evid. 502(a). This rule is designed "to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Id. Advisory Committee Note. In other words, "[a] party who affirmatively places its attorney-client communications at issue in a litigation implicitly waives the privilege." *See Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.,* 745 F.3d 343, 353 (9th Cir. 2014). Here, the government intentionally waived privilege with respect to part of Ms. Hornsby's analysis, as discussed above. And the unredacted and redacted language unquestionably concern the same subject matter—an analysis of CMS's authority for promulgating the Medical Record Review Rule. Most importantly, the paragraph at issue ought in fairness to be considered together because the government's selective production would "paint an inaccurate picture of that evidence to the jury." *In re King's Daughters Health Sys., Inc.,* 31 F.4th 520, 529 (6th Cir. 2022). By selectively producing parts of the analysis purportedly supporting the Medical Record Review Rule, the government has created a misleading document that gives a false impression about the obligations MA plans are subject to.

(Motion at 13-14).

The doctrine of selective waiver does not apply when a party withholds protected information in a document, but releases non-privileged information that is contained in the same document. *Regents of University of California v. Micro Therapeutics, Inc.,* 2007 WL 2069946 at *3 (N.D. Cal. July 13, 2007) (if no privileged information is disclosed, selective waiver doctrine does not apply). Here, the government contends that the portion it has released is not reflective of attorney-client communications and therefore is not privileged. Based upon the Special Master's *in camera* review of the disputed documents, the Special Master agrees that the originally withheld information (the first two sentences redacted in the

2022 redaction) reflects attorney-client privileged communications or advice. The Special Master also agrees that the non-redacted sentences from the 2022 version are *not* privileged communications. Because the primary May 2022 redactions did not selectively reveal *privileged* information, the selective waiver doctrine is inapplicable here.

## B. THE 2023 CLAW BACK VIOLATED THE PROTECTIVE ORDER

United provided notice to the government of inconsistent redactions in an email dated May 3, 2022. (Exh. 4, Motion). Morgan Maddoux, counsel for United, sent an email to the government stating the following:

> We would like to bring to your attention certain potentially privileged documents it appears the government has inconsistently redacted. [Bates numbers of documents]. Please let us know if you assert privilege over these documents or portions thereof, and, if so [provide information required by protective order]. If you only assert privilege over portions of these documents, please provide a redacted version.

(Exh. 4, Motion). In response to this email, the government produced fourteen documents to United with redactions in 2022. Twelve months later, after Dr. Hornsby's 30(b)(6) deposition and the IDC, the government asserted a new claw back to withhold information that the government previously identified as non-privileged.

United argues that the government's delay of twelve months in exercising its claw back suggests a lack of good faith by the government. Courts have generally found that once a party realizes a document has been accidentally produced, it must assert privilege quickly. *See, e.g., Clarke v. J.P. Morgan Chase & Co.,* 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10,

2009) (citing cases in which failure to assert privilege within periods from six days to one month resulted in waiver and holding that a delay of more than two months in asserting privilege results in waiver); *Preferred Care Partners Holding Corp. v. Humana, Inc.,* 258 F.R.D. 684, 700 (S.D.Fla. 2009) (holding privilege waived when privilege holder took no action for almost two months after disclosure, including a three-week lag after opponent used document in support of motion for sanctions); *Securities and Exch. Comm'n v. Cassano,* 189 F.R.D. 83, 86 (S.D.N.Y.1999) (concluding that passage of twelve days before attempting to rectify error results in waiver); *Semi–Tech Litig. LLC v. Bankers Trust Co.,* 2002 WL 1751267, at *2 (S.D.N.Y. July 27, 2002) (no waiver when "extremely prompt" assertion of privilege within 24 hours).

It is evident that the government unreasonably delayed its 2023 claw back decision. The government waited until the conclusion of Dr. Hornsby's 30(b)(6) deposition in 2023 to claw back materials it previously knew or should have known (for at least 12 months) presented redaction issues. United notified the government of the inconsistent redactions in 2022 and the government had a duty to promptly review the redactions before producing the documents again. Accordingly, the delayed change in the government's position regarding privilege, asserted twelve months past notice of the inconsistent redactions and following the 2023 deposition and IDC, was unreasonable.

However, more importantly, the Special Master finds that the government's 2023 claw back -- when it changed its position about what and what is not protected after their opponent used the disclosed information in a deposition and argued about the disclosed information at an IDC -- is prohibited by the protective order. That is, United – in reliance on the versions deliberately produced in 2022, and after United notified the government of inconsistent redactions in the related documents – went forward with a critical deposition. In preparing for and taking that deposition, United relied upon what the government had produced as non-

11

privileged information in 2022. In the course of the Rule 30(b)6 deposition, United asked questions of the witness who authored the document that, at least in United's view, revealed important implications for this particular document. In June 2023, United sought an informal discovery conference ("IDC") based upon redactions to the disputed documents.

Only after United essentially educated the government as to United's view of the non-privileged information at the deposition and IDC did the government attempt a further claw back. To allow a claw back under this sequence of events would be unfair to the party that relied upon the May 2022 production and would be contrary to the protective order terms.

The relevant portion of the Stipulated Protective Order, signed and entered by the Court, states the following:

> 9. The Parties agree that disclosure need not be "inadvertent" as that term is used in Rule 502(b), ***but agree that all productions, designations, and requests for return of Protected Material will be made in good faith. Accordingly, the Producing Party shall exercise good faith to prevent the disclosure of Protected Material and shall not request the return of Protected Material it produced knowing it to be privileged. Nor shall the Producing Party request the return of Protected Material or assert privilege over Protected Material the Producing Party previously identified as not privileged.*** Moreover, the Producing Party shall not request the return of Protected Material the Producing Party knows the Receiving Party has referred to, quoted, cited, or relied upon, during the course of this Action or the Poehling Investigation without objection from the Producing Party. (emphasis added).

When discussing the production of privileged material in 2022 to United, the Government's Opposition to the Motion stated the following:

> However, due to a mistake by the contractor, 14 versions of the memo were produced with incomplete redactions. In these 14 versions, only the first sentence of the disputed language was redacted, and not the second privileged sentence. To be clear, the production of the privileged material was a mistake and unknown to the United States in May 2022. The United States did not, and never has, determined that the unredacted line in the May 2022 production was not privileged.

(Opposition at 5).

The government asserts that the production of fourteen versions of the memo in 2022, after United's email notified the government of prior inconsistent redactions, reflected "a mistake by the contractor." (*Id.*). The government's argument suggests that the contractor's error in 2022 should result in no consequences as it was "inadvertent error" and the protective order eliminated inadvertent error as a consideration. (Opposition at 5, lines 4-12). While use of an e-vendor is certainly permitted, the Special Master finds that the government still had a duty to supervise the contractor's work.

Courts have recognized that outside counsel has a "duty to supervise" an e-discovery vendor or contract counsel who are delegated the task of collecting responsive documents. The discovery rules impose an affirmative duty upon lawyers to "engage in discovery in a responsible manner and to conduct a 'reasonable inquiry' to determine whether discovery responses were sufficient and proper." *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 4858685, at *4 (S.D. Cal. Nov. 7, 2008) (quoting Fed. R. Civ. P. 26(g)); Fed. R.

13

Civ. P. 26 Advisory Committee Notes (1983 Amendment) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 12699460, at *23 (C.D. Cal. Feb. 4, 2015) (attorney "had an independent duty to supervise her client's [discovery] compliance efforts"). The protective order cannot be used as a shield against the government's obligation to supervise its discovery contractor.

There is no evidence in the record about the precautions taken by the government's counsel to supervise the May 2022 production of the Hornsby memo. It is beyond dispute that this case involves a significant number of documents for production and the parties anticipated that mistakes would happen. However, there is no explanation for why the government failed to execute more supervision over the 2022 Hornsby Memo production given that United provided notice of specific inconsistencies in redactions. This is particularly troubling given that the Hornsby memo appears to be a memo of critical significance.

The Special Master is also concerned by the government's delay in asserting the 2023 claw back. The first time that United placed the government on notice that different versions of the relevant documents had been produced was via the May 3, 2022 email. (Exh. 4, Motion). In response to the May 3, 2022 email, the government clawed back and reproduced the documents, presumably after considering the privilege issues. The government then waited twelve months with no further action. Only after the 30(b)(6) deposition of Dr. Hornsby and the IDC did a second and more extensive claw back take place.

The time taken by the government to rectify weighs in favor of United. That is, United placed the government on notice of the inconsistent redactions in May 2022. It would be reasonable to assume that the government would investigate and review the documents

promptly and carefully after receiving notice of inconsistent redactions. While the government is permitted to delegate the work to a contractor, the government remains responsible for the contractor's work. United was entitled to rely upon the government's post-notice production as evidence of the government's conclusions regarding which sentences were privileged in the Hornsby memo.

The government argues that United's request for relief is based on an alleged "need" for privileged information. (Opposition at 9, ll. 8-20). The Special Master does not interpret United's contentions as based on a "need" for the material. Instead, United is asserting a fairness argument, i.e., it would be unfair for the government to withhold information that its unfavorable to the government's position only because the government realized its strategic value after the Hornsby 30(b)6 deposition. (*See also* United Reply at 8)(arguing that fairness considerations weigh in favor of relief). That is, the government made an informed decision to identify portions of the memo as non-privileged in 2022 and United relied on those versions. It was only a year later, after United revealed its interpretation of the memo's language in the 30(b)(6) deposition of Dr. Hornsby, that the government decided to change its position and claw back more information.

As United notes, the purpose of the protective order's language was to inject fairness into the discovery procedures:

> The relevant sentence of Paragraph 9 serves a different purpose—to prevent a party from intentionally shifting its privilege determinations to suit its needs, even if the material is protected. So, the government's extensive arguments about privilege are beside the point. . . The government now asserts that in that process, it "never reviewed the material at issue and determined it was not privileged." Response at 11 (emphasis in original). But that unsupported

> claim beggars belief. If true, then the government directly responded to an explicit request for a privilege determination regarding a small set of specific documents by reproducing consistently redacted versions of those documents without ever reviewing the material it was reproducing or determining whether it was privileged. The government's professed failure to review those documents for privilege further calls into question whether the government has complied with its obligations under the Protective Order to "exercise good faith to prevent the disclosure of Protected Material." Dkt. 512-1. . . Having gone back and made a consistent and affirmative representation, the government must be accountable for its decision. United asked for an affirmative privilege determination, the government made an affirmative privilege determination, and under the explicit terms of the protective order, the government must be bound by that determination. . . In the specific circumstances at issue here, however, where a party has already clawed a document back and then represented that certain material is not privileged, the Protective Order is clear that a renewed claw back is not permissible.

(Reply at 10-12). As argued in the Reply Brief, the purpose of the disputed language in the protective order is to protect the parties against exactly what is happening here, i.e., a party regrets identifying information as non-privileged and makes a strategic decision to change course. Fairness dictates that United is entitled to the versions of the document that existed prior to the 2023 deposition of Dr. Hornsby and prior to the IDC of June 2023.

The Special Master agrees that the inconsistent redactions prior to May 2022 were an understandable mistake in the context of a case involving millions of records. Under the terms of the protective order, the government was entitled to claw back the privileged information that was erroneously produced. However, once the government re-produced the

16

documents in May 2022 -- with redactions representing privilege and non-privilege determinations -- the government could not change its mind a year later and claw back the information previously identified as non-privileged. The 2023 claw back was contrary to the protective order terms. (Protective Order at ¶9).

## IV. CONCLUSION

For the reasons stated above, the Special Master GRANTS the Motion in part and DENIES the Motion in part. The government is ORDERED to produce the documents in dispute to United in the form and with the same redactions that the documents were produced in May 2022, i.e., after it received notice of the inconsistent redactions but prior to the Rule 30(b)(6) deposition of Anne Hornsby and prior to the June 2023 IDC. The government shall comply with this Order within ten days of the date of this Order. To the extent the Motion seeks any other relief, the Motion is DENIED.

Dated: October 24, 2023

Hon. Suzanne Segal (Ret.)
Hon. Suzanne H. Segal (Ret.).
Special Master