YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
JACK D. ROSS (CBN 265883)
HUNTER B. THOMSON (CBN 330533)
PAUL LA SCALA (CBN 186939)
Assistant United States Attorneys
    300 N. Los Angeles Street, Room 7516
    Los Angeles, California 90012
    Tel: (213) 894-6739; Fax: (213) 894-7819
    Email: hunter.thomson@usdoj.gov
JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA M. McMAHON
AMY L. LIKOFF
MARTHA N. GLOVER
WENDY ZUPAC
Attorneys, Civil Division, U.S. Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 307-0486; Fax: (202) 307-3852
    Email: robert.mcauliffe@usdoj.gov
MICHAEL DIGIACOMO
United States Attorney
    138 Delaware Avenue
    Buffalo, New York 14201
    Tel: (716) 843-5830; Fax: (716) 551-3052
    Email: david.coriell@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al.*,<br><br>Defendants. | No. CV 16-08697 FMO-PVCx<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR REVIEW OF SPECIAL MASTER'S REPORT AND RECOMMENDATION**<br><br>Hon. Fernando M. Olguin<br><br>Hearing Date: June 5, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 350 W. First Street St.<br>Courtroom 6D, Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**DESCRIPTION** — **PAGE**

TABLE OF AUTHORITES ..................................................................................... iii

I. Introduction ................................................................................................... 1

II. Argument ....................................................................................................... 1

    A. There is Credible Evidence in the Record by Which a Reasonable Jury Could Conclude that the Codes at Issue Were Unsupported ................ 1

        1. The Special Master Improperly Weighed Evidence of "Human Error" ............................................................................................ 3

        2. United's "All or Nothing" Approach to Summary Judgment is Inconsistent with the Record ........................................................... 4

        3. United's "All or Nothing" Approach to Summary Judgment is Unsupported by any Legal Authority ............................................. 6

        4. The RADV Audit Evidence Proves the Existence of Material Factual Disputes Foreclosing Summary Judgment ......................... 7

    B. Improperly Avoiding an Obligation to Pay Does Not Require Proof of an Affirmative Act of Deception ............................................................. 9

    C. Summary Judgment on the Common Law Claims Should be Denied ........ 13

    D. United's Alternative Grounds for Granting Summary Judgment Should be Rejected ..................................................................................... 14

    E. The Court Should Disregard United's Factual Arguments Regarding Materiality ................................................................................................... 14

III. Conclusion .................................................................................................. 15

# TABLE OF AUTHORITES

**CASES**

*Enewally v. Wash. Mut. Bank (In re Enewally)*,
   368 F.3d 1165 (9th Cir. 2004). ............................................................................. 5, 6

*Fischer v. United States*,
   603 U.S. 480 (2024). ................................................................................................ 10

*I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist.*,
   805 F.3d 1164 (9th Cir. 2015). .................................................................................. 9

*Kane ex rel. United States v. Healthfirst, Inc.*,
   120 F. Supp. 3d 370 (S.D.N.Y. 2015). ................................................................ 11, 12

*Olson v. Fairview Health Servs. of Minn.*,
   831 F.3d 1063 (8th Cir. 2016). .......................................................................... 10, 12

*United States ex rel. Ormsby v. Sutter Health*,
   444 F. Supp. 3d 1010 (N.D. Cal. 2020). ................................................................. 12

*United States ex rel. Osinek v. Permanente Med. Grp., Inc.*,
   640 F. Supp. 3d 885 (N.D. Cal. 2022). ................................................................... 13

*United States ex rel. Schutte v. SuperValu, Inc.*,
   598 U.S. 739 (2023). ................................................................................................. 9

*United States v. Howell*,
   231 F.3d 615 (9th Cir. 2000). ................................................................................... 6

*United States v. HVI Cat Canyon, Inc.*,
   213 F. Supp. 3d 1249 (C.D. Cal. 2016). .................................................................. 9

*United States v. Lakeshore Med. Clinic, Ltd.*,
   No. 11-CV-00892, 2013 WL 1307013 (E.D. Wis. Mar. 28, 2013). ...................... 12

*United States v. Mead*,
   426 F.2d 118 (9th Cir. 1970). ................................................................................. 13

*United States v. Walgreen Co.*,
   591 F. Supp. 3d 297 (E.D. Tenn. 2022). ............................................................... 12

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) ............................................................................................ 9, 14

**STATUTES**

42 U.S.C. §
 1320a-7k(d)(2)(A) ................................................................................................... 11

**OTHER AUTHORITIES**

*Concealment*,
 Black's Law Dictionary (12 ed. 2024) ................................................................. 10

*Concealment*,
 Black's Law Dictionary (2d ed. 1910) ................................................................. 10

I.  Introduction

The central finding of the Special Master's Report and Recommendation, Dkt. 631 ("R&R"), is her finding that there was "no evidence" for the government's position that 1.97 million diagnosis codes are unsupported by the medical records. United does not even try to defend this conclusion, which is contrary to the undisputed record in this case. None of the codes were found supported by United's experienced, trained, and quality-tested expert coders, who examined the relevant medical records for all codes at issue – sometimes twice – to identify every supported code. None of the codes were reported by any other doctor who saw the same patient in the same year. And none of the codes were validated in United's Claims Verification program, which was designed specifically to find support for diagnosis codes. All of this is powerful evidence from which a jury could easily find that the codes at issue were unsupported.

Instead of defending the Special Master's reasoning, United concedes – as it must – that the United States has presented some evidence that the codes were unsupported. But United argues that the Court can disregard evidence that United's expert coders did not find support for the diagnoses at issue because a doctor's office reported those codes and United's coders *could* make mistakes. This is exactly the sort of evidence-weighing that is prohibited on summary judgment.

In addition, United's Opposition fails to provide any reasoned justification for the Special Master's interpretation that the phrase "improperly avoids" an obligation to pay the government requires proof of an affirmative act of deception.

II.  Argument

  A.  There is Credible Evidence in the Record by Which a Reasonable Jury Could Conclude that the Codes at Issue Were Unsupported

As United concedes, "[i]t is undisputed that all of the diagnosis codes at issue here are ones that United coders failed to identify. . . ." United's Opposition to Plaintiff's Motion for Review, Dkt. 638 ("Opp."), at 5. And when United's trained, certified, and quality-tested expert Chart Review coders combed the medical records for all supported

1

diagnosis codes and did not identify the codes in question, this constitutes powerful evidence that the codes are not supported by the medical record. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Review, Dkt. 636-1 ("Pl. Mot."), at 4-5. Yet the Special Master repeatedly characterizes the conclusions by United's expert coders as *no evidence* and *not any evidence* that the codes were unsupported. United makes no attempt to defend these conclusions by the Special Master. Instead, United first pretends the Special Master never actually made them. Opp. at 2 ("She did not conclude that the record was literally devoid of evidence").[1] United then pivots to argue that when the Special Master said there was *no evidence* that the diagnosis codes were invalid, what she really meant was that the government had advanced *some evidence* that the codes were invalid, but it was not sufficient or "direct evidence." Opp. at 1, 3, 9, 16, 22.

United asks the Court to ignore the conclusions of United's own expert Chart Review coders because the government could have offered what United asserts was *better* evidence. According to United and the Special Master, the government should have hired its own expert coder with the very same qualifications and experience as United's coders to review a sample of the very same medical records that United's coders reviewed. Opp. at 9-10; R&R at 32-34. And United posits that it might be even more persuasive if, instead of identifying every diagnosis code supported by the medical record, the government's expert knew which codes United had submitted to CMS and just looked for support for those specific codes. Opp. at 17. But a defendant's speculation about evidence a plaintiff might introduce cannot justify ignoring compelling evidence that is actually in the record.

---

[1] The R&R refutes United's denial. R&R at 2 ("the government is lacking any evidence in support of two essential elements of its False Claim Act. . . ."); R&R at 14 ("The fatal flaw in the government's case is the complete absence of evidence of such overpayments. . . ."); R&R at 20 ("The government failed to present any evidence. . . ."); R&R at 19-20, n.1 ("There is no evidence in the record that either the doctors' codes or the Chart Review Coders' codes were unsupported by medical records."); R&R at 20 ("The government, however, has failed to provide any evidence to raise a triable issue of fact that any particular code was 'unsupported.'"); R&R at 22 ("missing any evidence whatsoever from United's coders"); R&R at 24 ("complete absence of this evidence in the record"); R&R at 26 ("There is no evidence in the record to prove this claim"); R&R at 27 ("complete failure of any evidence"); R&R at 28 ("there is no evidence to support it"); R&R at 29 ("complete failure to provide any evidence"); R&R at 34 (government "lacks evidence of any overpayments").

2

United's highly trained Chart Review coders scoured each and every medical record, and the Court cannot disregard their expert findings simply because the United States could have retained a different coder to review a sample of the same medical records.

United repeatedly states in its opposition that the government cannot point to a single chart where the code was unsupported. Opp. at 2, 6, 9, 10, 21. But that is equal parts simplistic and misleading. Showing a specific medical record to a judge or jury is not the only way to prove that the medical record does not support a diagnosis code. Indeed, the medical record is not even the best evidence, since jurors have no training in medical coding. In this case, United maintained data – which is evidence in this case – memorializing the relevant information from the medical records and the results of United's comprehensive review of those medical records. United's attempts to bob and weave notwithstanding, the core of this case is undisputed: United's expert coders reviewed every chart that supposedly supported the diagnosis codes at issue, and in each and every instance, United's coders did not find support for those diagnosis codes. That is certainly evidence by which a reasonable jury could find that the codes were unsupported.

### 1. The Special Master Improperly Weighed Evidence of "Human Error"

United insists that the Special Master did not "improperly 'weigh' the evidence," but instead "relied on undisputed evidence that even expert coders will fail to identify some supported diagnoses when reviewing medical records." Opp. at 2. But as the government pointed out in its Motion for Review, the observation that humans are fallible cannot justify ignoring admissible and probative evidence on summary judgment. Indeed, the work of a government-retained expert would be subject to the same "human error" objection. United insists that "the Special Master did not simply point to the reality of human error," but also cited "'the time available for the review, [and] the completeness, legibility and clarity of the medical record documentation.'" Opp. at 19. But United merely identifies different types of human error, potentially applicable to any testimony about a large volume of written documents. A court cannot dismiss one party's evidence simply because "in any endeavor dependent on humans reviewing a written record, there will

3

inevitably be errors." Opp. at 15. If anything, the possibility of human error is just evidence United may introduce, if admissible, for a *jury* to weigh in making factual findings.

### 2. United's "All or Nothing" Approach to Summary Judgment is Inconsistent with the Record

United also argues that the Special Master did not weigh evidence because, according to United, there is no evidence in the record that "would enable a reasonable jury to estimate what percentage of the diagnosis codes were in fact not supported." Opp. at 2-3. As a preliminary matter, this argument is irrelevant because the jury could reasonably conclude that every single diagnosis code at issue is unsupported. For every single diagnosis code, at least one United coder examined the medical chart and did not find the code documented by the doctor's office. United's coders are highly credible experts – they are trained, tested and paid by United, and their livelihoods depended upon their compliance with United's 95%+ accuracy and completeness thresholds. *See* Pl. Mot. at 7-8. United spends money on these Chart Reviews because (according to United) it is "fairly common" for doctor's offices to make coding errors. *Id*. at 4.[2] And United itself relied on these same coders to submit codes for additional payments totaling $7.2 billion over nine years. Joint Brief Regarding Cross Motions for Summary Judgment, Dkt. 616 ("Joint Br.") at 42. A jury evaluating all of this evidence could reasonably conclude that each diagnosis code in this case is unsupported.

Moreover, United's assertion that a jury could not "reliably estimate what percentage (less than 100%) of the diagnosis codes at issue were unsupported" is factually wrong. Opp. at 2-3. There is a panoply of evidence – all of which United ignores – that a jury could consider if it needed to distinguish between the diagnosis codes at issue. Here are just a few examples from the record:

---

[2] United objects to use of its "fairly common" admission but does not deny its accuracy. Opp. at 6 n.2. Nor could it. It is undisputed in this case that United relied on its Chart Review coders to identify $7.2 billion of diagnosis codes that doctors' offices missed.

4

<u>First</u>, for some of the diagnosis codes at issue, two different United coders reviewed the same underlying medical record, and neither coder identified as supported the diagnosis codes at issue. Joint Br. at 24; D243; P-7, United 30(b)(6) (Baker) Tr. 4188:4-12. Indeed, in 2014, 2015 and 2016, nearly three-quarters of the charts examined in Chart Review were reviewed by *multiple coders* – meaning that *more than one* United coder reviewed the medical record and did not identify the code at issue as supported. Pl. Mot. at 11. A juror could reasonably conclude that when two United expert coders, reviewing records independently, failed to identify the code, it was unsupported. These twice-reviewed unsupported diagnosis codes account for approximately $800 million of identified overpayments, and yet United simply ignores them. D-57, Garthwaite (US Expert) Rep. (Sept. 29, 2023) at 1481.

<u>Second</u>, in many instances a patient saw more than one doctor in a given year. In those instances, if *any* other doctor recorded a diagnosis code that was not found in Chart Review, the government excluded that code from its list of 1.97 million diagnosis codes. Joint Br. at 27; D-57, Garthwaite (US Expert) Rep. (Sept. 29, 2023) at 1486-87. Thus, a jury could reasonably conclude that a code submitted by a doctor's office was unsupported where *all* the United coders *and one or more other doctor's offices* did not record the code in question.

<u>Third</u>, some of the diagnosis codes at issue went through both Chart Review and a wholly separate process called Claims Verification, where separate United coders reviewed the medical record specifically to find support for the diagnosis codes at issue and did not find support in the medical records reviewed.[3] Pl. Mot. at 11, n.3.

---

[3] United wrongly asserts that the government has waived the opportunity to discuss this evidence. The government presented evidence about United's Claims Verification program in the briefing and evidentiary record. *See* Joint Br. at 25-26. *See also* P-87 at 5017-18 (excerpt of a spreadsheet of DOS 2012 cancelled deletes), D-57, Garthwaite (US Expert) Rep. (Sept. 29, 2023) at 1447 ¶ 14(iii). Further, as United recognizes, DOJ raised this evidence at the hearing before the Special Master directly in response to arguments made by United and questions posed by the Special Master at the hearing. Hearing Tr., Dkt. 634-1, at 61:20-63:20. Finally, United points to two cases in support of its "standard waiver" argument, Opp. at 22, but neither endorse its waiver position here. In fact, in *Enewally v. Wash. Mut. Bank (In re Enewally)*, cited by United, the Ninth Circuit explicitly recognized exceptions to the general rule that issues not

5

It is the sole province of a jury to evaluate and place whatever weight it deems appropriate on the evidence presented at trial, including the multiple layers of evidence demonstrating that the diagnoses were unsupported. The government's position remains that there is powerful evidence demonstrating that each of the 1.97 million codes is unsupported. However, even if a jury might, after hearing all the evidence, "reasonably find that some smaller percentage of codes were unsupported" based on the particular circumstances of the diagnosis codes at issue, *cf.* Opp. at 14-15, that provides no basis to conclude that *none* of this evidence could be presented to a jury.[4] United's liability does not depend upon the jury finding that <u>all</u> the codes at issue were unsupported.

### 3. United's "All or Nothing" Approach to Summary Judgment is Unsupported by any Legal Authority

Throughout its Opposition, United doubles down on its mischaracterization of the government's case, arguing that, "[t]he point was not that DOJ had offered nothing – the point was that DOJ had insufficient evidence from which a reasonable jury could accept DOJ's **categorical theory** that **every single doctor-submitted code** a United chart reviewer did not re-identify was unsupported." Opp. at 18 (citing R&R at 24-25).[5] But this

---

presented to the trial court cannot be raised for the first time on appeal including "if the trial court's decision was plain error and injustice would otherwise result." 368 F.3d 1165, 1173 (9th Cir. 2004). *See also United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000) (finding that a district court may consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation).

[4] United unpersuasively reformulates the simple analogies offered by the government. For example, the government explained that if a Board Secretary records all attendees at a Board meeting and omits the General Counsel, that is affirmative "evidence" of the General Counsel's absence. United suggests summary judgment would be proper if the Board Chair states that the General Counsel was present. Opp. at 20-21. But United proves the government's point; a conflict between the Board Chair and the Secretary cannot possibly be resolved on summary judgment, especially if the Secretary (like United's coders) has been trained and tested to accurately record attendees, and the Chair (like doctors' offices) has a history of "fairly common" mistakes in recording attendance.

[5] United claims the government adopted this "categorical" theory because during the hearing before the Special Master it did not identify some percentage of its 1.97 million claims that a jury "could reasonably" reject (Opp. at 14-15). But a plaintiff is not required to designate some of its claims as potentially more meritorious than the others in order to survive summary judgment or waives its right to trial when it declines to do so.

6

wholly misconstrues what the government must proffer at summary judgment (and ultimately prove at trial). If the government had alleged that a single diagnosis code submitted to United by a doctor's office was unsupported, evidence that United's Chart Review coders reviewed the relevant medical record and did not identify that code as supported would be sufficient evidence for a jury to conclude that the diagnosis code was more likely than not unsupported. The same is true if the government filed ten separate cases alleging the same evidence with respect to ten separate diagnosis codes. There is no legal basis to conclude, however, that when the government alleges in one lawsuit that very evidence with respect to 1.97 million diagnosis codes, that the summary judgment analysis somehow changes. United cannot point to any authority holding that a party must prevail on all its claims or lose the right to proceed on any.

### 4. The RADV Audit Evidence Proves the Existence of Material Factual Disputes Foreclosing Summary Judgment

United's argument regarding – and the Special Master's consideration of – any evidence related to CMS's RADV audits is by definition a weighing of that evidence that should be left to a jury. *See* R&R at 29-30, 33 (Special Master's explanation for her conclusion that CMS RADV findings "undercut the government's theory that any diagnosis code submitted by United to CMS but not identified by coders in chart review is presumptively invalid."). United insists that the Special Master correctly considered this evidence because it "undercut" the "inference DOJ seeks to draw. . . ." Opp. at 3. Such weighing of inferences is not permitted on summary judgment. Moreover, the Special Master failed to consider the fact that a jury could evaluate any RADV evidence United can properly introduce, and make an independent determination about its weight with respect to any portion of the diagnosis codes to which it might relate.

The Special Master's discussion of RADV audits not only improperly weighs evidence, but also reflects an erroneous understanding of those audits. The Special Master concluded that "CMS coders found that approximately 89% of those roughly 6500 codes had support in patients' medical records." R&R at 29. But a RADV audit does not assess

7

1 whether a specific diagnosis code is supported by the medical record. Instead, a RADV
2 audit assesses whether a higher-level health condition that encompasses many different
3 diagnosis codes (hierarchical condition code or HCC) is validated. Thus, the fact that an
4 HCC was validated in a RADV audit does not mean that any specific diagnosis code on
5 the government's list "had support in patients' medical records" because a wholly separate
6 diagnosis code could have validated that HCC. *See* Joint Br. at 22. Moreover, the specific
7 information United emphasizes is misleading. United repeatedly asserts that CMS auditors
8 reviewed 6500 of the 28 million diagnosis codes not found supported by the records
9 reviewed in Chart Review and determined that 89% of those codes did not *lead to an*
10 *overpayment*. But the United States has never alleged that all 28 million unsupported
11 diagnosis codes led to an overpayment, and the government is only seeking damages for
12 the codes that did. The government's expert determined that only 1.97 million of the 28
13 million unsupported diagnosis codes resulted in an overpayment to United. *See* Joint Br.
14 at 26-28 (discussing D-57, Garthwaite (US Expert) Rep.). Thus, it is unsurprising that
15 CMS' RADV auditors likewise determined that a significant portion of the diagnosis
16 codes in the audit did not lead to overpayments. Joint Br. at 44-46.

17 Additionally, United's promotion – and the Special Master's adoption – of the
18 finding that the RADV audits amount to the "only direct medical-record evidence in the
19 case" is flatly wrong. *See* Opp. at 9 (citing R&R at 29-30). The undeniable medical-record
20 evidence that the government will present in this case is United's own comprehensive and
21 systematic medical record review to identify every single diagnosis code supported by
22 those medical records, executed by highly trained and tested professional Chart Review
23 coders. *See* Joint Br. at 22-25, 42-43. United acknowledges that its Chart Review coders
24 did not find support for the 1.97 million diagnosis codes at issue in this case during that
25 comprehensive medical record review. Opp. at 5. Those results are evidence that those
26 diagnosis codes were not supported by those medical records.

27
28

### B. Improperly Avoiding an Obligation to Pay Does Not Require Proof of an Affirmative Act of Deception

United argues that the phrase "improperly avoids" in the reverse FCA provision requires the government to prove an affirmative act of deception. This reading – which the Special Master recommended in her final R&R – violates fundamental canons of statutory construction, as well as the consensus of every court to interpret this phrase. United and the Special Master rely on *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), and *United States ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739 (2023) (decisions that did not interpret the "improperly avoids" language) for the uncontroversial proposition that the FCA is a fraud statute, but neither decision supports adding a new "affirmative act of deception" requirement to the reverse FCA provision at issue here. This Court should reject United's flawed interpretation and hold that a defendant "improperly avoids" an obligation to pay money to the government when it is put on notice of a potential overpayment, is legally obligated to address it, and does nothing.

"'When interpreting a statute, the court begins with the statutory text and interprets statutory terms in accordance with their ordinary meaning.'" *United States v. HVI Cat Canyon, Inc.*, 213 F. Supp. 3d 1249, 1265 (C.D. Cal. 2016) (Olguin, J.) (quoting *I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist.*, 805 F.3d 1164, 1167 (9th Cir. 2015)). As explained in the United States' Motion for Review, the ordinary meaning of the word "improper" is broad enough to encompass conduct that is incorrect, unsuitable, irregular, or wrongful, not merely "deceptive." *See* Pl. Mot. at 21–22. United repeats the same mistake as the Special Master in arguing that the ordinary meaning of the word "improperly" is limited to "deceitful," when the Black's Law Dictionary definition of "improper" that they cite makes clear that the ordinary meaning is much broader. Opp. at 25 (quoting R&R at 36). *Cf. HVI Cat Canyon, Inc.*, 213 F. Supp. 3d at 1265 (rejecting overly narrow definition of the word "shoreline" that was not supported by defendant's dictionary references).

United also conflates the term "improperly avoids" with the separate term "conceal" and argues that these terms "mean affirmative action that is deceitful and evasive." Opp. at 25-26. United's statutory interpretation argument hinges on the Court accepting the premise that distinct statutory terms ("conceal" and "improperly avoid") mean the same thing, *and* that both require affirmatively deceptive and evasive conduct. First, the "conceal" prong is not necessarily limited to affirmatively deceptive conduct – notably, the sources United relies on to interpret "conceal" indicate that the term encompasses the failure to disclose facts.[6] Second, even if the Court interpreted the "conceal" prong to require affirmatively deceptive and evasive conduct, it does not follow that the "improper avoidance" prong should be interpreted coextensively. Interpreting the two prongs to mean the same thing would violate multiple canons of statutory construction. *See* Pl. Mot. at 22–23. In addition, the reverse FCA provisions separately cover false statements. A defendant who engages in affirmatively deceptive and evasive conduct, such as lying to the government or manipulating data and/or documents to hide an overpayment, would certainly be liable under the "false statement" or "concealment" prongs. The United States' interpretation of "improper avoidance," unlike United's, gives meaning to all three separate bases for liability under the reverse FCA provision.

United relies heavily on the canon of *noscitur a sociis*, although the Special Master does not, to support reading "improperly avoids" as requiring an affirmative deceptive act. Opp. at 26. This canon instructs that a word is "given more precise content by the neighboring words with which it is associated," and courts apply it to avoid "ascribing to one word a meaning so broad that it is inconsistent with the company it keeps." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (internal quotations omitted). United misstates

---

[6] United quotes a Black's Law Dictionary definition of "conceal" that includes "improper suppression" of a fact, Opp. at 25 (quoting *Concealment*, Black's Law Dictionary (2d ed. 1910)); more recent editions contain similar definitions. *See Concealment*, Black's Law Dictionary (12 ed. 2024) (definitions include "nondisclosure of facts that one is obliged to reveal"). United also relies heavily on the Eighth Circuit decision *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063 (8th Cir. 2016), *see* Opp. at 27, which noted, "To conceal is to ***fail to disclose***," and that "at common law, fraud encompassed material nondisclosures by those with a duty to disclose." *Id.* at 1074 (emphasis added) (citation omitted).

10

the government's position as being that "mere knowing failure to repay money," Opp. at 25, or "mere inaction," *id.* at 26, constitutes "improper avoidance," and urges the Court to apply *noscitur a sociis* to avoid this "broad interpretation," *id*. The Court should not accept United's strawman argument. As the United States has made clear throughout the summary judgment briefing, "improper avoidance" is not "mere inaction" or a "mere knowing failure to repay money." Instead, the "improperly avoids" prong covers conduct where a defendant is on notice of a potential overpayment, *is legally obligated to address the potential overpayment*, and does nothing. *See* Pl. Mot. at 23. In this case, United's Chart Review results put it on notice of potential overpayments. United had statutory, regulatory, and contractual duties to take action to address the potential overpayments. United intentionally failed to take any action to address the potential overpayments. This is consistent with the type of conduct covered by the "false statement" and "conceal" prongs of the reverse FCA provision, and therefore does not violate the *noscitur a sociis* canon.

      United also appeals to policy, arguing that a contrary interpretation would give rise to FCA liability where a defendant failed to pay a debt or make lease or royalty payments, "even if the defendant took no deceitful or evasive actions." Opp. at 27. This argument ignores the fact that the FCA requires the government to prove elements (such as scienter and materiality) not present in garden-variety breach of contract cases. This is not, however, a garden-variety breach of contract case. United's obligation to pay arises out of its decision to participate in a federal healthcare program where Congress *explicitly* chose to impose FCA liability for the knowing retention of Medicare overpayments for more than 60 days. 42 U.S.C. § 1320a-7k(d)(2)(A); *see also Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 394 (S.D.N.Y. 2015) ("[T]he FCA as amended by the FERA unequivocally provides that to retain – to not return – an overpayment constitutes a violation of the FCA."). United's reading of the FCA as permitting defendants to knowingly retain overpayments they are obligated to return as long as they do not engage in some sort of affirmatively deceptive and evasive conduct would lead to

11

absurd results. An MAO could learn, for example, that a provider group within its network had deliberately engaged in "upcoding" (*i.e.*, submitting false diagnosis codes), or that a provider's billing software had submitted a slew of incorrect diagnosis codes due to a glitch. Under United's interpretation, an MAO would not face FCA liability for keeping the overpayments associated with those erroneous diagnosis codes, even though it knew about the potential overpayments, was legally obligated to address them, but did nothing, unless the MAO engaged in some additional affirmative conduct to actively deceive the government. This is contrary to the statutory text as well as Congressional purpose.

Faced with the inescapable fact that no court has ever adopted its reading of "improperly avoids," United attempts to rely on an inapposite Eighth Circuit case, *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063 (8th Cir. 2016), and to minimize the cases that have squarely ruled against United's interpretation. First, United's description of the Eighth Circuit as "the only federal court of appeals to address the question at issue here – whether the second prong of the reverse FCA requires 'fraudulent conduct,'" Opp. at 27, misstates the relevant question. The question here is whether the phrase "improperly avoids" in the reverse FCA provision requires the government to prove that a defendant committed an affirmative act of deception. United acknowledges that the *Olson* court did not address that statutory interpretation issue. Opp. at 27, n.5. By contrast, the courts that have squarely addressed this issue have uniformly agreed that a defendant "improperly avoids" an obligation to pay when it is on notice of a potential issue, is legally obligated to address it, and does nothing. *Kane*, 120 F. Supp. 3d at 394; *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1080-81 (N.D. Cal. 2020); *United States v. Walgreen Co.*, 591 F. Supp. 3d 297, 320 (E.D. Tenn. 2022);[7] *see also United States v. Lakeshore Med. Clinic, Ltd.*, No. 11-CV-00892, 2013 WL 1307013, at *4 (E.D. Wis. Mar. 28, 2013). These cases were correctly decided and should be followed here.

---

[7] United contends that the Court should disregard *Walgreen* because it was not cited before. Opp. at 30. However, the Special Master based her R&R in part on grounds not raised by United in its Motion for Summary Judgment, including legislative history and an argument regarding detrimental reliance. *See* R&R at 37. *Walgreen* addresses both of these grounds and should thus be considered by this Court.

United also contends that the government cannot establish concealment or improper avoidance, and that any such argument was waived. Opp. at 30-33. That is not true. Even under the incorrect "improper avoidance" standard posited by United and embraced by the Special Master, the government set forth evidence demonstrating that United, in its own words, "[took] some step to frustrate the government's ability to know that it is owed the money." Opp. at 26. Among other things, the government presented evidence that United was not "transparent" in an April 2014 meeting with CMS and did not provide CMS with meaningful information about its Chart Review program. Pl. Mot. at 31-34. The Special Master improperly weighed this evidence about this meeting to conclude (incorrectly) that "the government was aware of United's claim procedures as early as April of 2014" and "the evidence thus supports United's position that it in no way sought to withhold information about its chart review program from CMS." R&R at 38-39.

**C.     Summary Judgment on the Common Law Claims Should be Denied**

The government's common law claims of unjust enrichment and payment by mistake should procced to trial. For the same reasons discussed above, the Special Master erred in recommending summary judgment on the common law claims because the government has presented sufficient evidence that United retained funds to which it was not entitled. Although not addressed by the Special Master, United has argued that the common law claims should not go forward due to the contract between the parties. Opp. at 34, n. 7. However, the government alleges not only violations of a contract, but also violations of obligations derived from statute and regulations. *See United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 640 F. Supp. 3d 885, 913-15 (N.D. Cal. 2022) (the existence of an express contract did not preclude the United States' common law claims of unjust enrichment and payment by mistake based also on allegations of violations of federal regulations). Further, the Ninth Circuit has explicitly recognized that common law claims can proceed even if the United States cannot prove all elements on an FCA claim. *United States v. Mead*, 426 F.2d 118, 124 n.6 (9th Cir. 1970).

### D. United's Alternative Grounds for Granting Summary Judgment Should be Rejected

The Court should also reject United's inappropriate contention that there are three other grounds on which it is entitled to summary judgment. Opp. at 33-34. These arguments are beyond the scope of the Plaintiff's Motion for Review, as well as the Special Master's R&R. Further, as detailed in the Joint Brief, none of the three arguments support granting summary judgment. First, the government has offered evidence that the unsupported diagnosis codes at issue here resulted in overpayments. *See* Joint Br. at 46-48. Specifically, the United States' expert replicated CMS's payment process and accounted for other diagnosis codes that mapped to the same HCC as the unsupported code. *Id.* at 46. Second, the government has offered significant evidence of United's unambiguous obligation stemming from regulatory and contractual duties, and independently, from the statutory duty to return overpayments to CMS within 60 days of being put on notice of a potential overpayment. *See* Joint Br. at 54-62; Pl. Mot at 16-20. Third, the government has demonstrated that CMS did not have actual knowledge of United's chart review practices, and it can establish materiality under the *Escobar* factors. *See* Joint Br. at 69-75; U.S. Suppl. Br., Dkt. 622, at 9-15. Thus, none of the three grounds highlighted by United provide a basis for granting summary judgment.

### E. The Court Should Disregard United's Factual Arguments Regarding Materiality

In her recommendation on the United States's Motion for Partial Summary Judgment, the Special Master reaches certain factual conclusions regarding materiality in this case. R&R at 47-48. In particular, she concludes that "CMS undeniably knew for years about United's practices. . . ." *Id.* at 47. The government's evidence refutes this conclusion. *See* Joint Br. at 69-73. Therefore, the Court should disregard the Special Master's inappropriate factual findings, and any factual dispute regarding materiality should be resolved by a jury.

## III. Conclusion

For the foregoing reasons, as well as the reasons stated in the Plaintiff's Motion for Review, the Joint Brief, the Statement of Undisputed Facts and Opposition thereto, and the Combined Evidentiary Appendix, the Special Master's Report and Recommendation should be rejected, and United's motion for summary judgment should be denied.

Dated: May 19, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
JACK D. ROSS
HUNTER B. THOMSON
PAUL LA SCALA
Assistant United States Attorneys

JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA M. McMAHON
AMY L. LIKOFF
MARTHA N. GLOVER
WENDY ZUPAC
Civil Division, Department of Justice

MICHAEL DIGIACOMO
United States Attorney
DAVID CORIELL
Assistant United States Attorney

/s/ *Linda M. McMahon*
Linda M. McMahon
Trial Attorney, Department of Justice

Attorneys for the United States of America

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for the United States of America, certifies that the reply memorandum of points and authorities contains 15 pages, which complies with the page limit set by court order dated March 13, 2025.

Dated: May 19, 2025

/s/ *Linda M. McMahon*
Linda M. McMahon
Trial Attorney, Department of Justice

Attorneys for the United States of America