LATHAM & WATKINS LLP
David J. Schindler (Bar No. 130490)
  david.schindler@lw.com
Manuel A. Abascal (Bar No. 171301)
  manny.abascal@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
Daniel Meron (appearing *pro hac vice*)
  daniel.meron@lw.com
Abid R. Qureshi (appearing *pro hac vice*)
  abid.qureshi@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

*Attorneys for United Defendants*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC. *et al.*,<br><br>Defendants. | CASE NO. 2:16-cv-08697-FMO-PVCx<br><br>**UNITED'S RESPONSE TO *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REVIEW OF SPECIAL MASTER'S REPORT AND RECOMMENDATION**<br><br>Hon. Fernando M. Olguin<br><br>Hearing Date: June 12, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 350 W. First Street<br>       Courtroom 6D, Los Angeles, CA 90012 |

# INTRODUCTION

The Court should give no weight to the last-minute amicus brief filed by a small number of Members of Congress. Dkt. 640-1. While amici express various misguided policy critiques of the growing and successful Medicare Advantage program Congress itself designed, their brief displays a remarkable lack of understanding of the issues presented in this case. The brief focuses almost entirely on so-called "upcoding"—something DOJ has not alleged against United at any point in this case—and entirely ignores the actual legal and factual questions before the Court. In fact, the brief supports United's position by arguing that diagnosis codes submitted by doctors are more reliable than coding by United's blind chart reviewers. That is the polar opposite of the assumption on which DOJ's entire case depends. After all, all 28 million codes at issue in this case were submitted *by doctors*—the same ones who saw the patients and certified that those patients had the conditions diagnosed. The amicus brief thus adds nothing to the legal analysis, recycles arguments that are either irrelevant or already in the record, and reads less as an effort to persuade the Court than one to pressure it. And its dismissive treatment of the Special Master's careful Report and Recommendation, Dkt. 631 (R&R), is not only unhelpful, it is also insulting. The Court should disregard the amicus brief and adopt the Special Master's R&R in full.

# ARGUMENT

The amicus brief offers no help to the Court because it is grounded in a fundamental misunderstanding of the theory of liability at issue in this case.

For years, DOJ has advanced a single, categorical theory of liability in this case: that whenever a United coder conducting blind review did not identify a diagnosis code that a doctor previously certified and submitted, then that diagnosis code was necessarily unsupported by the medical record. Dkt. 616 at 16-18 (collecting sources); Dkt. 638 at 5-6 (collecting sources); *see also* Dkt. 623 at 3-4; Dkt. 636-1 at 6-7. In these circumstances, DOJ argues that the doctor who submitted the code must have been mistaken, and the

1

United coder who failed to independently re-identify that code must have been correct and the code was in fact not supported. DOJ has consistently pressed this theory since at least 2020 when it responded to United's first interrogatory, where it claimed that all 28 million such codes are unsupported. Dkt. 638 at 5-6. And it has reaffirmed that position many times, including at the hearing before the Special Master: When asked whether "[a]ll 28 million codes are incorrect or just a percentage?" DOJ responded: "No. We are not alleging any type of percentage." Hr'g Tr. 10:20-24, Dkt. 634-1; *see also id.* at 11:8-11 (answering "yes" when asked whether it alleges that "all 28 million codes are unsupported by the medical records"). In short, DOJ has been abundantly clear about its sole theory of liability, claiming that "*every time* one of United's coders reviewed a medical chart" and did not identify a particular diagnosis code, "the diagnosis was not supported by that medical record." Dkt. 636-1 at 8 (emphasis added).

The Special Master ultimately found that DOJ failed to support this theory with sufficient evidence for any reasonable jury to find in its favor. R&R at 23, 25. As the Special Master explained, it is undisputed that even expert coders will fail to identify some diagnosis codes that are documented in medical records when conducting blind chart review and that CMS's own coders overlook supported codes in blind review. *Id.* at 20-21, 25; *see also* Dkt 638 at 9-10. Indeed, DOJ's coding expert identified multiple reasons why coders will miss diagnoses—including the length and complexity of the medical record, unfamiliarity with a doctor's specialty, and that the medical record available to the coder is incomplete. Dkt. 638 at 15 & n.4. As the Special Master concluded, DOJ's speculative and categorical theory cannot survive Rule 56 scrutiny.

Despite DOJ's consistent theory of liability—and the Special Master's thoughtful analysis of it—amici's brief primarily addresses a wholly unrelated issue: "upcoding." *See* Dkt. 640-1 at 2 & n.2, 4-7, 9-10, 12-13; *see also* Dkt. 640 at 2, 4 & n.1, 6. Upcoding occurs when an insurer *adds* diagnosis codes *not* submitted by the treating doctors and that are not in fact supported by the patient's medical records. Amici's extensive discussion of

upcoding, which is based entirely on unsubstantiated hearsay accusations in news articles, has literally nothing to do with this case. There is no upcoding allegation against United. Dkt. 616 at 16 (citing undisputed facts). DOJ does not challenge the accuracy of a *single* code added by a United coder. *Id.* Nor does DOJ dispute that chart review programs are a lawful, industry-standard practice. *Id.* Instead, the only diagnosis codes challenged by DOJ in this case are diagnosis codes submitted by *doctors*—who examined the patients and certified that the diagnosis codes are accurate—not by United's coders. *Id.*

Amici do not appear to understand this distinction. The brief repeatedly proceeds on the faulty premise that United is accused of fraudulently inflating risk scores by adding unsupported codes that were not identified by the treating doctors. *See* Dkt. 640-1 at 2 & n.2, 4-7, 9-10, 12-13; *see also* Dkt. 640 at 2, 4 & n.1, 6. Their brief urges the Court to "allow this case to proceed to jury trial in a public courtroom," claiming that "United's practice of having its coders review patient charts in search of diagnoses to bill should not be conducted under cover of darkness, but should be explained and scrutinized in the light of a federal courtroom." Dkt. 640-1 at 2-3. But, again, DOJ's case does not challenge United's practice of reviewing charts "in search of diagnoses." And none of the codes at issue in the case were added by United's coders. They were submitted by doctors. Amici's fundamental misunderstanding renders the brief wholly irrelevant to the legal issues before the Court.

More still, amici actually support *United's* position. Amici insist that diagnosis codes should be trusted when they are submitted by "healthcare providers [who] actually know and care for their patients because they have treated them" and "verify that all codes are accounted for and properly submitted"—not by coders employed by insurers to review a chart at a later date. Dkt. 640-1 at 1-2. But that point just proves United's argument: the fact that United's chart reviewers, who were conducting blind review without knowledge of what the doctor had seen or certified, did not identify a diagnosis code, does not mean that the doctors who actually know and cared for the patients (and certified that the patients

3

had those conditions) were always wrong. Dkt. 638 at 13-17. Amici's insistence that the diagnoses submitted by the treating doctors should be trusted over coding by an insurer's coders simply highlights one of the core defects in the unproven assumption underlying DOJ's entire case.

The amicus brief also provides no facts, data, or specialized legislative insight. Like DOJ, it merely assumes—without evidence—that all of the codes DOJ alleges to be unsupported are, in fact, unsupported. *See, e.g.*, Dkt. 640-1 at 3, 12. But amici offer no analytical contribution that would aid the Court in assessing the summary judgment record. Amici make much of the idea that United is "iron[icall]y" concerned about fraud elsewhere in the healthcare system, as if that were somehow inconsistent with its position here. *Id.* at 1; *see also* Dkt. 640 at 4 & n.1. But of course, United opposes *actual* fraud— just not unfounded accusations based on sheer speculation, which, as the Special Master made clear, is all DOJ has offered in this case.

Amici's filing appears to be an effort to pressure the Court through extraneous and wholly unsubstantiated atmospherics. It offers no respect for the careful, fact-intensive analysis undertaken by the Special Master, whose R&R spans 50 pages and is rooted in a thorough application of Rule 56. *See* Dkt. 631. Instead, the brief dismisses the R&R out of hand, mischaracterizing its conclusions and failing to grapple seriously with the Special Master's analysis. *See, e.g.*, Dkt. 640-1 at 3 (asserting that the Special Master's R&R would "embolden United in its fraudulent upcoding practices," despite the fact that "upcoding" is irrelevant to this case); *id.* at 12-13 (failing to provide any substantive analysis of the Special Master's R&R). This sort of political theater has no place in a judicial proceeding, which should be based on *evidence*, not rhetoric. The Court should not indulge it.

Finally, if amici believe there is something inherently wrong with insurers reviewing charts to identify diagnoses that doctors documented in their medical charts but did not submit on claims forms, then it is their prerogative to try to enact legislation to

address it. But they have not done so, presumably because the hundreds of Members of Congress who did not join their amicus brief do not share their views. The legislative process is where these arguments belong. They do not justify disrupting a fully briefed matter on the eve of a hearing with a misdirected and inflammatory filing that fails even to understand, much less address, the real issues before the Court.

## CONCLUSION

The amicus brief changes nothing. The Court should adopt the Special Master's R&R in full and grant summary judgment for United and deny DOJ's motion for partial summary judgment.

Dated: May 30, 2025

Respectfully submitted,

LATHAM & WATKINS LLP
DAVID J. SCHINDLER
MANUEL A. ABASCAL
DANIEL MERON
ABID R. QURESHI

By: /s/ David J. Schindler
    David J. Schindler
    Attorneys for United Defendants

BARTLIT BECK LLP
Philip S. Beck (appearing *pro hac vice*)
 philip.beck@bartlitbeck.com
Sean W. Gallagher (appearing *pro hac vice*)
 sean.gallagher@bartlitbeck.com
Cindy L. Sobel (appearing *pro hac vice*)
 cindy.sobel@bartlitbeck.com
Nicolas Martinez (appearing *pro hac vice*)
 nicolas.martinez@bartlitbeck.com
Benjamin R. Montague (appearing *pro hac vice*)
 benjamin.montague@bartlitbeck.com
54 W. Hubbard Street, Suite 300
Chicago, Illinois 60654-8174
Telephone: +1.312.494.4400
Facsimile: +1.312.494.4440

BARTLIT BECK LLP
Andrew C. Baak (appearing *pro hac vice*)
 andrew.baak@bartlitbeck.com

Jameson R. Jones (appearing *pro hac vice*)
 jameson.jones@bartlitbeck.com
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202-6318
Telephone: +1.303.592.3100
Facsimile: +1.303.592.3140

*Attorneys for United Defendants*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, hereby certifies that this Response to the Amicus Curiae Brief in Support of Plaintiff's Motion for Review of Special Master's Report and Recommendation (Dkt. 640-1) contains 1,562 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 30, 2025              /s/ David J. Schindler
                                 David J. Schindler