LATHAM & WATKINS LLP
  David J. Schindler (Bar No. 130490)
    *david.schindler@lw.com*
  Manuel A. Abascal (Bar No. 171301*)*
    *manny.abascal@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
  Daniel Meron (appearing *pro hac vice*)
    *daniel.meron@lw.com*
  Abid R. Qureshi (appearing *pro hac vice*)
    *abid.qureshi@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

*Attorneys for United Defendants*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC. *et al.*,<br><br>Defendants. | CASE NO. 2:16-cv-08697-FMO-PVCx<br><br>**UNITED'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR REVIEW OF SPECIAL MASTER'S REPORT AND RECOMMENDATION**<br><br>Hon. Fernando M. Olguin<br><br>Hearing Date: July 3, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 350 W. First Street<br>         Courtroom 6D, Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.    DOJ'S LONGSTANDING, CATEGORICAL THEORY OF LIABILITY ........... 3

II.   DOJ'S NEW THEORIES OF LIABILITY FOR SUBSETS OF CODES ............. 5

III.  THE COURT SHOULD STRIKE THE OFFENDING PORTIONS OF DOJ'S REPLY BRIEF ............................................................................................ 9

CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bazuaye v. I.N.S.*,
 79 F.3d 118 (9th Cir. 1996) ........................................................................3, 9

*In re Flashcom, Inc.*,
 503 B.R. 99 (C.D. Cal 2013) (Olguin, J.) .....................................................3, 10

# INTRODUCTION

For years, DOJ has pursued a single theory of liability in this case: that whenever a United coder conducting blind review did not identify a diagnosis code that a doctor previously certified and submitted, then that diagnosis code was necessarily unsupported by the medical record. Based on the undisputed facts, the Special Master concluded that no reasonable jury could possibly find for DOJ on that theory, as she recounted in a meticulous Report and Recommendation (R&R) spanning 50 pages. Now, for the first time in its *reply brief* challenging the R&R, DOJ is attempting to hedge its longstanding categorical theory of liability with a fallback position it never argued and in fact expressly disavowed. This Court should not countenance such gamesmanship and should strike the offending portions of DOJ's reply brief.

From its 2020 interrogatory responses through expert discovery, summary judgment briefing, the hearing before the Special Master, and even its motion for review of the R&R, DOJ has consistently advanced the same theory of liability that all 28 million codes submitted by doctors but not re-identified by United coders were unsupported. United repeatedly noted throughout the briefing that DOJ had staked its case on this all-or-nothing theory with no fallback position—and DOJ never disagreed. On the contrary, when pressed directly at the hearing before the Special Master, DOJ expressly *disavowed* that it was arguing for anything less than its categorical theory that applies to all 28 million codes: "No. We are not alleging any type of percentage." Hr'g Tr. 10:23-24.

That was a strategic litigation decision. After more than a decade of litigation in a case in which DOJ seeks to punish United for billions of dollars, DOJ has chosen not to review a *single* chart—not even a sample—to see what percentage of the codes at issue are in fact supported. Perhaps DOJ was afraid of what it might find, but regardless of the reason, DOJ deliberately and consistently staked its entire case on the sweeping theory that all 28 million doctor-submitted codes were necessarily invalid because United's coders did not re-identify them in blind chart review.

1

Now, after years of litigation, receiving an adverse R&R, and reviewing United's brief in opposition to its motion for review, DOJ apparently regrets the strategic decision it made. For the first time, in its reply, DOJ argues that even if no reasonable jury could find that all 28 million codes are unsupported, it nevertheless should survive summary judgment because it has certain narrow lines of evidence that could allow a jury to find that various subsets of the 28 million codes were unsupported. *See* Dkt. 642 (Reply) at 4:20-6:9. That pivot—made after the record closed, after the parties briefed summary judgment, after the Special Master issued a detailed R&R, after DOJ filed its motion for review, and after United opposed that motion—violates basic principles of procedural fairness. It also directly flouts multiple rules and orders of this Court. And it undermines the detailed structure this Court has crafted to ensure the orderly, fair resolution of complex disputes. The Court should strike the portions of DOJ's reply brief that press this new and untimely argument, which advance evidence and argument never presented to the Special Master.

## ARGUMENT

The Court should strike the portions of DOJ's reply brief arguing that even if DOJ cannot survive summary judgment on the theory that all 28 million codes are unsupported, it has at least created a triable issue as to certain smaller subsets of the 28 million diagnosis codes at issue. *See* Reply at 4:20-6:9. That argument violates this Court's rules governing summary judgment, motions for review, and fundamental principles of litigation fairness, all of which are designed to prevent exactly this kind of late-stage U-turn.

First, this Court's standing order on summary judgment briefing requires the parties to submit a single joint brief with issue-by-issue responses, setting forth all bases for the opposition, prohibiting argument by footnote, and making clear that factual assertions not properly presented will not be considered. Dkt. 365. Second, this Court has issued two orders stating, in bold font, that "**[t]he parties shall not include—and the court will not consider—any evidence, argument, or authority that was not presented to the Special Master.**" Dkt. 633 at 1 (emphasis in original); *see* Dkt. 395 at 8 (similar). Third, these

1  rules reflect basic tenets of litigation: "Issues raised for the first time in the reply brief are
2  waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) (citation omitted); *see In re
3  Flashcom, Inc.*, 503 B.R. 99, 135 & n.24 (C.D. Cal 2013) (Olguin, J.) ("[T]his argument
4  is waived because they raised it for the first time in the reply brief." (citation omitted)).
5  Far from a technicality, this rule is critical to ensure that disputes are surfaced, joined, and
6  resolved in a way that is orderly, efficient, and fair. DOJ's new arguments in its reply brief
7  violate all of these rules.

## I. DOJ'S LONGSTANDING, CATEGORICAL THEORY OF LIABILITY

DOJ has consistently pursued a single, categorical theory of liability in this case: that all 28 million diagnosis codes at issue are unsupported because United's chart reviewers did not re-identify them during blind review.

DOJ has pressed this theory since at least 2020 when it responded to United's first interrogatory. There, United asked DOJ to identify every diagnosis code DOJ alleged United should have "delete[d] or otherwise returned as an overpayment." D155; Ex. D-7 at 354. DOJ responded by listing 28 million diagnosis codes, D156; Exs. D-11B at 574-75, D-141 at 3569:15-3570:1, and asserting that the list contained "every diagnosis code . . . UnitedHealth . . . improperly failed to delete when UnitedHealth's own reviewers found no support for the diagnosis code in the member's medical records," D157; Ex. D-5 at 289. As DOJ explained, "[f]or each diagnosis code on the United States' list: (1) the diagnosis code was submitted by UnitedHealth to CMS . . . ; (2) that medical record went through UnitedHealth's medical record review program; and (3) UnitedHealth's own reviewers did not find the diagnosis code to be supported by medical records." D158; Ex. D-5 at 289. In another response, DOJ accused United of "failing to delete . . . diagnosis codes . . . that its Chart Review program revealed were not supported by medical record documentation." D159; Ex. D-12 at 597. DOJ's central allegation, reflected in these responses, is that whenever a doctor-certified diagnosis code was not re-identified in chart review, that "revealed" the diagnosis was unsupported and any payment invalid.

DOJ also retained an expert, Dr. Craig Garthwaite, to identify the set of diagnosis

codes that were purportedly unsupported and led to overpayments. *See* D163-D164; Ex. D-57 at 1446-47. Consistent with DOJ's categorical theory, Dr. Garthwaite did not review *any* medical charts and did not opine as to whether a single diagnosis code was in fact unsupported. D165-D166; Exs. D-57 at 1547, D-110 at 2864:21-65:3. Instead, the Garthwaite report is entirely based on an assumption that parallels DOJ's hypothesis that *every* diagnosis previously certified by a doctor but not separately identified by a United chart reviewer is invalid. D169; Ex. D-57 at 1547.

DOJ maintained this position throughout the summary judgment briefing. In the parties' joint brief, United detailed at length DOJ's "categorical theory": "DOJ's central allegation, memorialized in these responses, is that whenever a doctor-certified diagnosis code was not identified in a chart review, that 'revealed' the diagnosis did not exist and any payment based on that diagnosis was invalid." Dkt. 616 (Joint Br.) at 17; *see id.* at 1-2, 16-18. In its opposition, DOJ never argued otherwise, and never contended that it had separate evidence to prove that some smaller subset of the codes at issue were unsupported.

United reaffirmed this understanding in the very first paragraph of its supplemental brief in support of summary judgment:

> DOJ's entire case is based on a categorical assumption that is false to a certainty. The assumption is that, if a United coder reviewing a medical record did not identify a diagnosis code that a doctor previously certified and submitted, then that diagnosis code was necessarily (and always) unsupported. . . . As remarkable . . . is the fact that DOJ has no fallback position. Its case either survives summary judgment, or not, on the theory that a jury could conclude that *all* 28 million codes at issue are unsupported. Since DOJ did not review a single medical record, it does not even try to argue that there is a reliable basis for a jury to estimate what fraction, if any, are unsupported—and its expert admitted there is none.

Dkt. 623 at 1. Again, DOJ did not object to United's framing that DOJ "has no fallback position."

Even when given an opportunity to do so, DOJ expressly disavowed any fallback position at the January 15, 2025 hearing before the Special Master. There, the Special

Master asked DOJ directly to confirm its position on this precise issue: "The Court: So let me make sure that I understand. All 28 million are incorrect or just a percentage? Attorney McMahon [DOJ]: No. We are not alleging any type of percentage." Hr'g Tr. 10:20-24. When pressed further—"does your evidence show that all 28 million codes are unsupported by the medical records?"—DOJ responded "Yes." *Id.* at 11:8-10. DOJ continued to frame the evidence as applying uniformly across all 28 million codes. *See, e.g., id.* at 61:9-12 (DOJ: "I keep repeating, that's all evidence that goes towards all 28 million codes. It applies equally across the board because it was those coders that did not find support.").

That consistent position continued even after the Special Master issued the R&R against DOJ. In its motion for review, DOJ reiterated its categorical theory of liability. It argued that "*every time* one of United's coders reviewed a medical chart" and did not identify a particular diagnosis code, "the diagnosis was not supported by th[e] medical record." Dkt. 636-1 at 8 (emphasis added). Again, DOJ did not argue that a jury could rely on additional lines of evidence to find a smaller subset of codes were invalid. In opposition, United summarized DOJ's longstanding theory and noted once more that DOJ had disavowed any fallback. Dkt. 638 at 16 ("Critically, DOJ has never offered—and has expressly disclaimed—any fallback theory that only a limited subset of the codes at issue are unsupported.").

DOJ's position has not varied for years—until now in its reply brief challenging the Special Master's R&R.

## II. DOJ'S NEW THEORIES OF LIABILITY FOR SUBSETS OF CODES

DOJ's eleventh-hour about-face is unmistakable. In its reply, DOJ argues for the first time that even if the categorical theory on which it staked its entire case cannot survive summary judgment, its case should nonetheless proceed to trial based on certain narrow strands of evidence specific to smaller groups of diagnosis codes. *See* Reply at 4:20-6:9. It claims that its theory of liability is not "all or nothing," and that it is "factually wrong" that it cannot provide a way for a jury to "reliably estimate what percentage (less than

5

100%) of the diagnosis codes at issue were unsupported." *Id.* at 4. Specifically, DOJ suggests that there are three potential smaller categories of diagnosis codes for which there is additional evidence sufficient for a jury to find in its favor: (1) codes for which two United coders reviewed the same underlying medical record without re-identifying the doctor-submitted code; (2) codes that were not identified by United's coders *and* the patient saw *another* doctor the same year who did not record the code; and (3) codes that went through United's former "Claims Verification" process. *Id.* at 5-6. All three of these new, undeveloped arguments blatantly violate this Court's rules and are thoroughly waived.

Notably, DOJ *does not even purport* to have made these arguments in its summary judgment briefing. Instead, it claims that evidence supporting these arguments exist in "the record." *Id.* at 4. But it is not enough to point to the existence of evidence somewhere in the record—DOJ must also identify where it made these arguments in its summary judgment briefing. DOJ cannot do so because it never made any of these arguments. That is clear, taking each of DOJ's three new categories in turn.

First, DOJ never argued that it has sufficient evidence for a jury to find liability for the subset of diagnosis codes that were reviewed by two United coders. *Id.* at 5. DOJ's own citations in its reply brief make that clear. All of its citations in this argument are either to the background section of its summary judgment opposition, its motion for review of the R&R, or an entirely new record citation.[1] Most important, although DOJ made one passing reference to United's coders reviewing certain "medical records twice" in the argument section of the joint brief addressing evidence of overpayment (that it does not even cite in its reply brief), it pointed to that evidence as one of a number of facts that DOJ claimed were sufficient for a jury to find that *all* the 28 million codes are unsupported. Joint Br. 42. At no point in the summary judgment briefing or hearing did DOJ present a fallback argument that, even if its theory that all 28 million codes are unsupported could

---

[1] The following three citations are from the background section of DOJ's opposition: Joint Br. 24; D243; P-7, United 30(b)(6) (Baker) Tr. 4188:4-12. DOJ's following citation appears to be entirely new and was never presented to the Special Master: D-57, Garthwaite (US Expert) Rep. (Sept. 29, 2023) at 1481.

1  not survive summary judgment, a jury could still find that all of the codes not identified in
2  two blind reviews were unsupported.

3      Second, DOJ likewise never argued that it has sufficient evidence for a jury to find
4  United liable for a subset of diagnosis codes not re-identified by United for which the
5  patient saw another doctor the same year who did not record the diagnosis code. Reply at
6  5. DOJ does not claim, and cannot, that it has ever so much as hinted at this argument
7  before. Its only two citations in this paragraph have nothing to do with this novel idea,
8  instead addressing Dr. Garthwaite's process of removing from his calculations diagnosis
9  codes when United's data contained other support for the same health condition. *See id.*
10 (citing Joint Br. 27; D-57, Garthwaite (US Expert) Rep. (Sept. 29, 2023) at 1486-87).
11 Indeed, DOJ's reply brief does not cite to any place in its briefing (or even the record)
12 where any expert has calculated the number of codes that would fall within this category.
13 In short, neither this argument nor any evidence to support it was ever presented to the
14 Special Master or argued in the summary judgment briefing.

15     Third, DOJ never argued in the summary judgment briefing that it had sufficient
16 evidence for a jury to find that the distinct subset of diagnosis codes that had undergone a
17 portion of United's former claims verification process are unsupported. Reply at 5. Again,
18 DOJ cannot cite anywhere in the summary judgment briefing where it pressed this
19 argument. DOJ claims in a footnote that it previously "*presented evidence* about United's
20 Claims Verification program in the briefing and evidentiary record." *Id.* at 5 & n.3
21 (emphasis added). But the question is not whether the existence of claims verification was
22 mentioned in the briefing; the question is whether DOJ has ever previously pressed this
23 *argument* in its briefing. And DOJ does not and cannot even claim that it ever did. DOJ's
24 supporting citation makes clear why. It cites the background section of its summary
25 judgment briefing, *id.* (citing Joint Br. 25-26), but omits the places where it actually did
26 press arguments about claims verification. That is because the *only* arguments DOJ made
27 based on claims verification related to entirely separate issues: the existence of an
28 "obligation," *see* Joint Br. 64, and "materiality," *see id.* at 69-72. The words "Claims

Verification" do not appear a single time in the section of the joint brief addressing whether DOJ could show that the codes are unsupported and/or are overpayments. Nor did DOJ ever advance the fallback argument that at least as to this subset of codes it had put forward sufficient evidence for a reasonable jury to find in its favor.[2]

And while DOJ claims that it raised claims verification at the *hearing* before the Special Master, Reply at 5 & n.3, it simply ignores United's full paragraph on this point in United's opposition to the motion for review: "As United explained at [the hearing], DOJ's 'reference to the in-process codes reviewed in CV as evidence to avoid summary judgment has been waived,' because DOJ raised it 'not once' in *briefing*." Dkt. 638 at 21-22 (quoting Hr'g Tr. 75:18-76:2) (emphasis added). What's more, the "very quick point" DOJ raised about claims verification at the end of the relevant portion of the hearing was *still* in support of the argument that *all* 28 million codes were unsupported. Hr'g Tr. 61:20. After addressing claims verification, DOJ concluded by contending that the codes that went through this process should be seen as a "proxy" for review of the medical records—not that this subset of codes should survive judgment on their own as a more narrow theory of liability. *Id.* at 63:16. And there is no ambiguity on this point because DOJ had multiple times in the hearing expressly *disavowed* that it was arguing that there was sufficient evidence for the jury to find a "percentage" less than all 28 million to be unsupported, *id.* at 10:20-24, even after the Special Master questioned DOJ about this "100 percent" theory, *see id.* at 47:2-24 (Special Master questioning DOJ's categorical theory); *id.* at 49:13-25, 51:5-57:12 (DOJ's response, continuing to press the categorical theory).

In short, at no point in the summary judgment briefing did DOJ ever present the argument that even if no reasonable jury could find in its favor that all 28 million codes at issue are unsupported, there are three subsets of diagnosis codes as to which a jury could so find. That was a strategic choice that DOJ made, perhaps because the argument that every one of the codes falling into each of these subsets is invalid is just as speculative

---

[2] In addition to never advancing this argument, DOJ never cited in its summary judgment briefing the spreadsheet on which it now relies: P-87 at 5017-18 (excerpt of a spreadsheet of DOS 2012 cancelled deletes).

and unsupported by medical record evidence or expert analysis as the broader set of 28 million codes. Whatever the reason, it is clear that this argument, as well as a number of pieces of evidence on which DOJ now relies to support it, were never presented to the Special Master and are both barred by this Court's rules and thoroughly waived.

### III.  THE COURT SHOULD STRIKE THE OFFENDING PORTIONS OF DOJ'S REPLY BRIEF

DOJ's new arguments in its reply brief are improper and flagrantly violate multiple clear-cut rules of this Court (as well as basic principles of litigation).

First, DOJ's reply violates this Court's standing order on summary judgment briefing by failing to raise any of these arguments in the joint brief. This Court has provided detailed rules requiring the parties to "work cooperatively to create a single, <u>fully integrated</u> joint brief . . . in which *each issue (or sub-issue)* raised by a party is immediately *followed by the opposing party's/parties' response*." Dkt. 365 at 1 (emphasis in italics added). DOJ failed to do that. In the section titled "DOJ Cannot Show the Diagnosis Codes Were Unsupported," United explained DOJ's "categorical theory" of liability and why DOJ could not meet its burden of proof on that theory. Joint Br. 37; *see id.* at 35-39. In its response, DOJ never pressed any of the three new fallback arguments it now raises in its reply brief. *See id.* at 42-48.

Second, DOJ's reply violates this Court's order regarding motions for review, which states that "**[t]he parties shall not include—and the court will not consider—any evidence, argument, or authority that was not presented to the Special Master.**" Dkt. 633 at 1 (emphasis in original); *see* Dkt. 395 at 8 (similar). DOJ did not present these arguments (and a number of supporting pieces of evidence) to the Special Master, and this Court therefore should not consider them.

Third, in addition to violating this Court's rules, DOJ's reply also offends bedrock principles of procedural fairness. "Issues raised for the first time in the reply brief are waived." *Bazuaye*, 79 F.3d at 120 (citation omitted). This Court has enforced this principle before, ruling that an argument was "waived because [the party] raised it for the first time

in the reply brief." *In re Flashcom, Inc.*, 503 B.R. at 135 & n.24 (Olguin, J.) (citation omitted). This rule exists because such last-minute shifts disrupt the orderly progression of litigation, lend themselves to sandbagging and gamesmanship, and deprive the court of the benefit of full adversarial testing. Here, DOJ is not just adding nuance to an existing theory. It is pressing three new, undeveloped theories about various subsets of diagnosis codes—after it expressly disavowed that it was pressing such an argument. *See* Hr'g Tr. 10:23-24 ("No. We are not alleging any type of percentage.").

Nor could a sur-reply possibly cure the problem. The parties have litigated this case for years based on DOJ's categorical theory, structuring their discovery, expert reports, and overall strategy around that position. During that time, the parties have produced millions of documents, responded to hundreds of written discovery requests, taken 117 total depositions (including 13 expert depositions), submitted 18 expert reports, and filed numerous briefs—all structured to address DOJ's longstanding theory of liability. The entire presentation to the Special Master did not include DOJ's new arguments, preventing her from addressing them in her R&R. A sur-reply could not undo the prejudice caused by this desperate eleventh-hour pivot.

The Court should not countenance these tactics. The Court's procedural rules—particularly in complex matters like this one—exist to ensure order, efficiency, and fairness. That is why this Court appointed the Special Master in the first place. This Court found that "the current 'court congestion' in the Central District is extreme" and that "the current judicial shortage and emergency in this District—where the Central District is down ten judges out of an authorized 28 positions—only underscores the need for a special master in a case of this size and complexity." Dkt. 395 at 5. The Court thus found that the "appointment of a special master is warranted in this case to handle matters that cannot be effectively and timely addressed by the court." *Id.* at 6. DOJ's rule violations here undermine that structure and impose unnecessary costs on the parties, the Special Master, and the Court. Even absent such rules, these fallback positions have been waived several times over. The Court should enforce its rules and basic waiver principles and strike the

1  offending portions of DOJ's reply brief: pages 4:20-6:9. Striking these portions will also
2  benefit the Court of Appeals by clarifying what issues were preserved in this Court for
3  appellate review.

## CONCLUSION

5       For the foregoing reasons, the Court should strike the offending portions of DOJ's
6  reply brief in support of its motion for review of the Special Master's R&R, specifically
7  page 4:20 through page 6:9.

10  Dated: June 5, 2025           Respectfully submitted,

LATHAM & WATKINS LLP
DAVID J. SCHINDLER
MANUEL A. ABASCAL
DANIEL MERON
ABID R. QURESHI

By: /s/ David J. Schindler
    David J. Schindler
    Attorneys for United Defendants

BARTLIT BECK LLP
Philip S. Beck (appearing *pro hac vice*)
 philip.beck@bartlitbeck.com
Sean W. Gallagher (appearing *pro hac vice*)
 sean.gallagher@bartlitbeck.com
Cindy L. Sobel (appearing *pro hac vice*)
 cindy.sobel@bartlitbeck.com
Nicolas Martinez (appearing *pro hac vice*)
 nicolas.martinez@bartlitbeck.com
Benjamin R. Montague (appearing *pro hac vice*)
 benjamin.montague@bartlitbeck.com
54 W. Hubbard Street, Suite 300
Chicago, Illinois 60654-8174
Telephone: +1.312.494.4400
Facsimile: +1.312.494.4440

BARTLIT BECK LLP
Andrew C. Baak (appearing *pro hac vice*)
 andrew.baak@bartlitbeck.com
Jameson R. Jones (appearing *pro hac vice*)
 jameson.jones@bartlitbeck.com
1801 Wewatta Street, Suite 1200

Denver, Colorado 80202-6318
Telephone: +1.303.592.3100
Facsimile: +1.303.592.3140

*Attorneys for United Defendants*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, hereby certifies that this Motion to Strike Portions of Plaintiff's Reply in Support of Motion for Review of Special Master's Report and Recommendation contains 3,901 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 5, 2025                                             /s/ David J. Schindler

                                                                                                             David J. Schindler