BRETT A. SHUMATE
Assistant Attorney General, Civil Division
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
JACK D. ROSS (CBN 265883)
HUNTER B. THOMSON (CBN 330533)
PAUL LA SCALA (CBN 186939)
Assistant United States Attorneys
    300 N. Los Angeles Street, Room 7516
    Los Angeles, California 90012
    Tel: (213) 894-6739; Fax: (213) 894-7819
    Email: hunter.thomson@usdoj.gov
JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA M. McMAHON
AMY L. LIKOFF
MARTHA N. GLOVER
WENDY ZUPAC
Attorneys, Civil Division, U.S. Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 307-0486; Fax: (202) 307-3852
    Email: robert.mcauliffe@usdoj.gov
MICHAEL DIGIACOMO
United States Attorney
    138 Delaware Avenue
    Buffalo, New York 14201
    Tel: (716) 843-5830; Fax: (716) 551-3052
    Email: david.coriell@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BENJAMIN POEHLING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al.*,<br><br>Defendants. | No. CV 16-08697 FMO-PVCx<br><br>**UNITED STATES' OPPOSITION TO UNITED'S MOTION TO STRIKE**<br><br>Hon. Fernando M. Olguin<br><br>Hearing Date: July 3, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 350 W. First Street St.<br>Courtroom 6D, Los Angeles, CA 90012 |

**TABLE OF CONTENTS**

DESCRIPTION                                                                                                PAGE

TABLE OF AUTHORITES ................................................................................................ iii

I.    Introduction ..............................................................................................................1

II.    Argument ..................................................................................................................3

    A.    The Government Is Not Raising "New Evidence" or a "New" Theory of Liability ........................................................................................................3

    B.    The Specific Portions of the Reply Brief That United Seeks to Strike Respond to United's "All or Nothing" Argument..........................................7

    C.    Plaintiff Has Not "Waived" Any Arguments or Specific Evidence. ............9

III.    Conclusion ..............................................................................................................11

# TABLE OF AUTHORITES

**CASES**

*Burke v. City of Santa Monica*,
 Case No. CV 09-02259 MMM (PLAx), 2010 WL 11549357 (C.D. Cal. Nov. 2, 2010). ....................................................................................................... 10, 11

*Chloe SAS v. Sawabeh Info. Servs. Co.*,
 Case No. CV 11-04147 MMM (MANx), 2015 WL 12734005 (C.D. Cal. June 3, 2015). ....................................................................................................... 10, 11

*Estate of Graham v. Sotheby's Inc.*,
 Case No. CV 11-8604-MWF (FFMx), 2019 WL 13551289 (C.D. Cal. Nov. 19, 2019). ............................................................................................................. 10

*Federal Trade Commission v. Kutzner*,
 CV 16-00999-BRO (AFMx), 2016 WL 9277319 (C.D. Cal. Aug. 24, 2016). …………………………………………………………………….. 10, 11

*Glenn K. Jackson Inc. v. Roe*,
 273 F.3d 1192 (9th Cir. 2001). ................................................................... 10, 11

*Nautilus v. Dreamworks Construction Inc.*,
 Case No. 2:23-cv-02707-MRA-JC, 2024 WL 5311154 (C.D. Cal. Dec. 13, 2024)…................................................................................................................ 2

*Sidney-Vinstein v. A.H. Robins Co.*,
 697 F.2d 880 (9th Cir. 1983). ........................................................................... 2

**RULES**

FED. R. CIV. P. 7(a) ................................................................................................ 2

## I. Introduction

Contrary to United's assertion, the United States' core theory of liability has not changed: United deliberately ignored information it obtained from its Chart Review program that over 1.97 million diagnosis codes it had submitted to the Centers for Medicare and Medicaid Services ("CMS") were not supported by the underlying medical records, thereby improperly avoiding its obligation to delete those codes and repay $2.1 billion. As explained in the United States' Motion for Review, Dkt. No. 636-1 ("US Mot."), the Special Master's conclusion that the United States had not presented *any evidence* that the diagnosis codes at issue were unsupported was wrong. There is ample evidence from which a jury could find that all 1.97 million of those codes were unsupported. United hired and trained professional coders to scour medical records to identify all diagnosis codes supported by those records, and United relied on those coders to submit $7.2 billion worth of new diagnosis codes for the years at issue in this litigation. Thus, when these expert coders failed to identify diagnosis codes that had previously been submitted as supported by those same records, that is evidence that those diagnosis codes were unsupported.

In its Opposition to the Motion for Review, Dkt. No. 638 ("Opp."), United argued that unless the government can prevail on every one of the codes at issue, it cannot prevail on any of them, and erroneously framed the *government's* position as "all or nothing." To be clear, the government's position has always been that "all" 1.97 million of the codes at issue were unsupported. But the government has never taken the position that the only possible alternative verdict a jury could reach is "nothing." Nonetheless, in response to *United's* improper "all or nothing" argument, the government listed in its Reply, Dkt. No. 642, examples of evidence applying to certain subsets of codes which a jury could rely on to distinguish amongst the 1.97 million codes at issue, if it chose to. These examples include evidence that certain codes were reviewed by two different United Chart Review coders ("second-level review"), evidence that certain codes went

1

through Chart Review *and* Claims Verification and were still not found to be supported, and evidence that some codes were not identified by a United Chart Review coder *or* any other provider that the patient saw that year.  The United States is not, however, arguing that only certain subsets of codes should survive summary judgment, nor is it relying on new theories of liability as some sort of "fallback" by pointing out this record evidence.

In its Motion to Strike, United contends that the government raised these points for the first time in its Reply.  This contention is belied by the record in this case.  Plaintiffs relied on these same three categories of evidence in the summary judgment briefing or during oral argument before the Special Master, and in the Motion for Review.  In the Joint Brief, the government argued that United's second-level reviews were evidence upon which the jury could find the codes at issue were unsupported.  During oral argument before the Special Master, the government and relator raised the points regarding "Claims Verification Pipeline Deletes" and no other providers identifying the codes at issue.  The government also argued in its Motion for Review that the Special Master had ignored or discounted evidence about United's second-level review and Claims Verification Pipeline Deletes in her Report and Recommendation, Dkt. No. 631 ("R&R").  None of the evidence referenced in the Reply is "new."

Furthermore, the Special Master's R&R did not adopt the "all or nothing" argument addressed in the specific portions of the Reply that United seeks to strike.  Rather, this argument was made by United in its Opposition to the government's Motion for Review, and it is well-established that a party can properly rebut opposition arguments in a reply brief.  For these reasons, United's Motion to Strike should be denied.[1]

---

[1] United's Motion to Strike is also improper as a procedural matter because only pleadings are subject to motions to strike.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Nautilus v. Dreamworks Construction Inc.*, Case No. 2:23-cv-02707-MRA-JC, 2024 WL 5311154, at *2 (C.D. Cal. Dec. 13, 2024) (denying Motion to Strike and noting that only pleadings as defined under FED. R. CIV. P. 7(a) to include a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer are the proper subject of a motion to strike).

II.     Argument

    A.      The Government Is Not Raising "New Evidence" or a "New" Theory of Liability.

United's Motion to Strike is based on a fallacy, namely that the United States raised evidence for the first time in its Reply in support of a "new" theory of liability for certain subsets of codes. This is not true. Throughout the summary judgment briefing, the government's position has remained the same: there is ample and powerful evidence in the record that all 1.97 million diagnosis codes at issue were unsupported. *See* Joint Brief Regarding Cross Motions for Summary Judgment, Dkt. No. 616 ("Joint Br."), at 42–48; US Mot. at 6–15; Plaintiff's Reply in Support of Motion for Review of Special Master's Report and Recommendation, Dkt. No. 642 ("Reply"), at 1–4. That includes evidence that applies equally to all 1.97 million codes, as well as evidence applicable only to certain subsets of codes. All of this evidence—including the evidence discussed in the portion of Plaintiff's Reply that United seeks to strike—was in the record presented to the Special Master. United's Motion to Strike misstates the government's position in several key respects.

At the outset, it is necessary to clarify that the diagnosis codes at issue in this case are the 1.97 million codes identified by the government's damages expert, Dr. Craig Garthwaite. In its Motion to Strike, United refers repeatedly to 28 million codes that the United States identified in a discovery response in 2020 and implies that these are the codes at issue. *See, e.g.*, United MTS at 1 ("DOJ has consistently advanced the same theory of liability that all 28 million codes submitted by doctors but not re-identified by United's coders were unsupported."). However, as the United States pointed out in the Joint Brief, "United's constant reference to the 28 million codes listed on the discovery response is nothing more than a further attempt to muddy the facts," Joint Br. at 28. To clarify: in response to a discovery request by United, the United States identified approximately 28 million diagnosis codes that had previously been reported to CMS, but which United's own expert coders did not identify when they scoured patients' medical

records. *Id.* at 27.  However, the United States is only pursuing claims based on the diagnosis codes that also impacted payment to United. In many cases, deleting an unsupported diagnosis code would not impact payment because another diagnosis code reported by a different provider would justify the payment. The government's expert witness, Dr. Craig Garthwaite, searched CMS's and United's data for *any other* diagnosis codes that could support the payment to United. *Id.* at 27.  He identified 1.97 million diagnosis codes that United had submitted to CMS that resulted in an overpayment to United because (1) United's expert Chart Reviewers did not find support in the medical record for the code at issue, *and* (2) no other provider had reported a diagnosis code that could support that payment associated with the unsupported code. *See id.* at 26–27.

As explained in the United States' Motion for Review, the Special Master erred in concluding the government had not presented "any" evidence of unsupported codes. *See* US Mot. at 6–15.  In doing so, she improperly weighed (and discounted) the substantial evidence put forth by the government, which applies to all 1.97 million diagnosis codes at the heart of the government's case: United's Chart Review coders were certified, thoroughly trained by United, and quality tested, including being required to meet rigorous accuracy and completeness standards before they could "graduate" from training. *Id.* at 7–8.  United instructed its coders to identify every single diagnosis code that was supported by the medical records they reviewed, and relied on those coders' expertise to submit new codes never reported by a doctor, amounting to $7.2 billion in additional payments during the years at issue in this matter. *Id.* at 8.  And, importantly, the 1.97 million codes at issue only include codes where no United coder identified the code *and* no other provider that the patient might have seen that year reported that code. *Id.* at 11.  This is powerful evidence from which a jury could reasonably find that all 1.97 million of the diagnosis codes identified by Dr. Garthwaite were unsupported.

The Reply also discusses evidence that jurors could use to distinguish among the 1.97 million codes, all of which was presented to and discussed with the Special Master.

4

1  For example, record evidence showing that multiple United coders reviewed the same
2  underlying medical record without finding the diagnosis code at issue (second level
3  review), discussed at 5:1 to 5:11 of the Reply, was presented to the Special Master in the
4  initial briefing. *See, e.g.*, Joint Br. at 42. The Special Master even acknowledged this
5  subset of codes in her description of United's Chart Review program, noting that "[f]or
6  dates of service years 2014-2016, United also introduced a process called 'second-level
7  review,' in which certain charts that had already gone through an initial blind chart
8  review were assigned to a second coder to conduct another blind review." R&R at 16.
9  This evidence was again raised with this Court in the Motion for Review. *See* US Mot.
10 at 11 (pointing out that "for three years (2014-2016), United subjected nearly three-
11 quarters of the medical records to a second separate review by different expert coders,"
12 and if *any* of those coders identified a diagnosis code as supported by the underlying
13 medical record, that code was not included on the government's list). The same is true
14 of evidence regarding United's Claims Verification ("CV") program, discussed at 5:19
15 to 5:22 of the Reply. *See* Joint Br. 25–26; US Mot. at 11 n.3. As explained in the
16 Motion for Review, United employed coders to investigate whether certain previously-
17 submitted codes not identified during its Chart Review program were supported by
18 documentation in the patients' medical records. US Mot. at 11 n.3. United, however,
19 kept the payments associated with a subset of the codes that went through the Claims
20 Verification program, referred to in this case as "CV Pipeline Deletes," and for which
21 United's CV program coders did not find support when it canceled the CV program
22 without deleting those codes (valued at $188 million). *Id*. The evidence regarding CV
23 Pipeline Deletes was specifically highlighted to the Special Master during the hearing on
24 United's motion for summary judgment after the Special Master expressed her view that
25 the government could have created a triable issue of fact by reviewing some set of
26 medical records (which she posited could be as small as 10, 20, 25, or 50) specifically to
27 see whether those records supported the diagnosis code that United's coders had failed to
28 identify when they reviewed those same records. *See* Hearing Tr., Dkt. 634-1, at 58:18–

59:9.  Counsel noted in response that United had a Claims Verification program in place that did exactly that:

> United's claims verification coders looked at the codes . . . they were able to look at all of the records and determine, was the chart review coder correct or not?  And these CV pipeline deletes, there's approximately 190 million – I think it is $188.7 million worth of diagnosis codes that a CV reviewer found, in essence, the chart review coder was correct.  There was no support. . . .  [I]t seems to me that those $190 million worth of codes is sort of – is a proxy for exactly what Your Honor is suggesting we could have done.

*Id.* at 62:20–63:20; *see also id.* at 131:24–132:22 (citing specific portions of the Statement of Undisputed Facts and exhibits in the record to the Special Master regarding the CV Pipeline Deletes).

United argues in its Motion to Strike that when the government previously raised this additional evidence, it did so in support of its overarching theory of liability that there is sufficient evidence for a jury to find that all of the diagnosis codes at issue were unsupported, and not as evidence that could support liability for only a "subset" of the diagnosis codes at issue.  *See* MTS at 6–8.  As an initial matter, in response to United's improper "all or nothing" framing, Plaintiffs did point out to the Special Master examples of evidence from which jurors could reach a mix of outcomes.  *See infra* at 8. However, and more fundamentally, United's position is nonsensical.  The government is not required to slice and dice its claims and argue that only certain subsets of claims should survive summary judgment.  The United States has consistently argued that there is sufficient evidence for a jury to find that all 1.97 million diagnosis codes at issue were unsupported, which included evidence that applies to all codes at issue, as well as evidence that (1) some codes were reviewed by two United Chart Review coders, neither of whom identified the code at issue, and (2) some codes were reviewed by a United Claims Verification coder who specifically reviewed the medical records to try to find

6

support for previously-submitted codes that were not identified by United's expert coders during Chart Review. It is the province of the jury to weigh this evidence, along with all the other evidence the government has put forward with respect to United's Chart Review program and Dr. Garthwaite's analysis, in deciding whether it is more likely than not that the codes at issue were unsupported. The part of the Reply that United takes issue with does nothing more than point out the uncontroversial fact that jurors are always free to evaluate and weigh evidence as they see fit, and if the jury is inclined to find for the government for some but not all of the 1.97 million codes the government contends were unsupported, there is evidence in the record that would allow them to do so. A jury verdict for the United States does not depend on the jury concluding that *every* code at issue was unsupported. This is not a "fallback" position that only some subset of codes should survive summary judgment, and as the United States stated repeatedly in the same section of the Reply, its position remains that "the jury could reasonably conclude that every single diagnosis code at issue is unsupported." Reply at 4; *see also id*. at 6 ("The government's position remains that there is powerful evidence demonstrating that each of the 1.97 million codes is unsupported."). The government's core theory of liability has not changed.

   **B. The Specific Portions of the Reply Brief That United Seeks to Strike Respond to United's "All or Nothing" Argument.**

  As explained in the Motion for Review, the Special Master erred in concluding that the government had presented "no evidence" that *any* of the diagnosis codes at issue were unsupported. United, perhaps concerned that the Special Master's "no evidence" conclusion would not withstand scrutiny, argued in its Opposition to the United States' Motion for Review that "[t]he point was not that DOJ had offered nothing – the point was that DOJ had insufficient evidence from which a jury could accept DOJ's categorical theory that every single doctor-submitted code a United chart reviewer did not re-identify was unsupported." Opp. at 18. As previously explained, the United States has never asserted an "all or nothing" position that the jury must find either that

7

all 1.97 million codes were unsupported, or none of them were.  It was United that erroneously asserted an "all or nothing" framing in its Supplemental Brief: "[The government's] case either survives summary judgment, or not, on the theory that a jury could conclude that *all* 28 million codes at issue are unsupported."  United Supp. Br., Dkt. No. 623, at 1.  Essentially, United' Supplemental Brief asserted as a defense to the government's case that the only way the government could possibly win at trial was to win on every single code at issue.  Plaintiffs directly addressed United's "all or nothing" argument during the hearing before the Special Master.  Relator's counsel noted that it was ***United's*** burden to convince the Court that the government could not prove that ***any*** of the codes were unsupported, Hearing Tr. 34:21–35:4, and further that jurors could weigh different pieces of evidence to come up with different potential outcomes:

> [Jurors could credit United's coders] for all of the reasons that I have described.  That the coders are incredibly well trained.  That no other provider found that code either during that same calendar year.  And that in many instances, two coders failed to find that code.  Not just one.  All of whom are very well trained. . . .
>
> I can give the Court the mix of outcomes here. Some jurors might conclude, well, I'm going to find preponderance of the evidence where there was only one coder and not two coders. I'm going to find the preponderance of the evidence where there was only one provider. So there wasn't two providers that didn't put that down. There was only one. I think jurors could come up with a whole range of things depending on the inferences that the jury would draw from this very admissible and competent evidence that we have presented to the Court in this opposition to the motion.

Hearing Tr. 35:9–36:8.  The Special Master's Report and Recommendation did not adopt United's "all or nothing" framing:  the Special Master did not state that the case survives summary judgment only if all codes at issue were unsupported.  Nevertheless, United argued in its opposition to the Motion for Review that "[a] reasonable jury could not find

8

for DOJ on its categorical theory" (an assertion that is factually wrong, as explained in detail in the government's Motion for Review) *and* that "a reasonable jury could not find for DOJ on a more limited theory, because DOJ has disavowed that path and provided no evidence that would allow the jury to do anything but guess." Opp. at 17.  Again, as discussed *supra*, the portions of the Reply that United seeks to strike point out the uncontroversial fact that jurors can *always* weigh evidence, and lists some examples of record evidence that jurors could use *if* the jury is inclined to find for the government on some but not all of the 1.97 million codes the government contends were unsupported. These examples include evidence that certain codes were reviewed by two different United Chart Review coders, evidence that certain codes went through Chart Review *and* Claims Verification and were still not found to be supported, and evidence that some codes were not identified by a United Chart Review coder *or* any other provider that the patient saw that year.[2]  Pointing out examples of evidence the jurors could use to come up with a mix of outcomes in response to United's improper "all or nothing" framing, as Relator's counsel did during the hearing before the Special Master, is not the same thing as arguing a "fallback" position that only certain subsets of codes should survive summary judgment.  As the government has stated multiple times, its unwavering position is that the jury can (and should) find that all 1.97 million codes on Dr. Garthwaite's list were unsupported.

C. **Plaintiff Has Not "Waived" Any Arguments or Specific Evidence.**

United argues throughout its Motion to Strike that the government has "waived"

---

[2] Notably, the government's expert witness already excluded from his list of 1.97 million codes any codes where a provider had submitted another code that could support the payment to United.  In the Reply at page 5:15–18, the government noted that a jury could, if they were inclined, apply different weight to diagnosis codes where the Chart Review coder did not find it, *and* no other doctor's office recorded the code even though the patient saw more than one doctor that year, which is an example that relator's counsel had raised to the Special Master in the portion of the hearing transcript quoted *supra*.  United is correct that no expert has calculated the number of codes that would fall in this category.  United MTS at 7.  This example certainly could not, and does not, represent some sort of "fallback" category when it has not even been quantified at this point.

9

arguments by raising them for the first time in the Reply brief.  United MTS, at 2-3, 6, 9-10.  The only two cases cited by United in support of its Motion to Strike stand for the idea that arguments raised for the first time in a reply brief are waived.  However, as explained *supra*, Plaintiff is not raising any "new" arguments or theories of liability; Plaintiff offered the same evidence and made the same arguments to the Special Master that United now seeks to strike.  To the extent United is arguing that the government has waived the ability to point to specific portions of the evidentiary record, this argument should be rejected.  Unsurprisingly, courts have recognized that waiver does not occur when the evidence presented in a reply is not new, and evidence is not considered "new" if it is submitted in response to arguments raised by the other side in its Opposition.  *See Estate of Graham v. Sotheby's Inc.*, Case No. CV 11-8604-MWF (FFMx), 2019 WL 13551289, at *1 (C.D. Cal. Nov. 19, 2019) (finding that declarations and exhibits which were "submitted in direct response to arguments raised in Plaintiffs' Opposition and primarily appear to rebut Plaintiffs' characterization of the evidence" is not "new"); *Federal Trade Commission v. Kutzner*, CV 16-00999-BRO (AFMx), 2016 WL 9277319, at *10 (C.D. Cal. Aug. 24, 2016) (recognizing that evidence is not "new" if it is offered to rebut arguments raised in the opposition brief).  The evidence that United challenges here is not "new" evidence.  First, as highlighted above, the evidence addressed by the United States in its Reply Brief was presented to the Special Master in the summary judgment evidentiary record, and was raised in either the Joint Brief, the Statement of Undisputed Facts, or at the hearing before the Special Master (or in multiple places).  Second, the evidence was offered in rebuttal to United's "all-or-nothing" framing in its Supplemental Brief and in its Opposition to the government's Motion for Review.  Finally, even if the evidence were in fact "new," district courts have discretion to consider new issues or evidence raised in reply briefs.[3]  *See Glenn K. Jackson Inc. v. Roe*,

---

[3] While the United States has not offered new evidence in its Reply Brief, even if the Court were to disagree, any concerns could be alleviated by allowing United to file a sur-reply or respond orally at the scheduled hearing.  *See Chloe SAS v. Sawabeh Info. Servs. Co.*, Case No. CV 11-04147 MMM (MANx), 2015 WL 12734005, at *1 (C.D.

273 F.3d 1192, 1202 (9th Cir. 2001); *see also Burke v. City of Santa Monica*, Case No. CV 09-02259 MMM (PLAx), 2010 WL 11549357, at *2 (C.D. Cal. Nov. 2, 2010) (recognizing that courts have discretion to consider a new issue while concluding that evidence that was offered in rebuttal to allegations raised in the opposition was not "new evidence.").

**III. Conclusion**

For the foregoing reasons, the Court should deny United's Motion to Strike page 4:20 through page 6:9 of Plaintiff's Reply in Support of Motion for Review of Special's Master's Report and Recommendation.

---

Cal. June 3, 2015) (citing cases that provide that if "new" evidence is submitted in a reply, a court may provide the opposing party with an opportunity to counter the new arguments or evidence); *see also Kutzner*, 2016 WL 9277319, at *10 (noting that an opportunity to respond to new evidence need not be in writing and could be satisfied if the party has an opportunity to respond at a hearing on the issue).

11

Dated: June 12, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
JACK D. ROSS
HUNTER B. THOMSON
PAUL LA SCALA
Assistant United States Attorneys

JAMIE ANN YAVELBERG
ROBERT McAULIFFE
EDWARD CROOKE
LINDA M. McMAHON
AMY L. LIKOFF
MARTHA N. GLOVER
WENDY ZUPAC
Civil Division, Department of Justice

MICHAEL DIGIACOMO
United States Attorney
DAVID CORIELL
Assistant United States Attorney


/s/ *Linda M. McMahon*
Linda M. McMahon
Trial Attorney, Department of Justice

Attorneys for the United States of America

12

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the United States of America, certifies that this Opposition to United's Motion to Strike Portions of Plaintiff's Reply in Support of Motion for Review of Special Master's Report and Recommendation contains 4,031 words, which complies with the word limit of Local Rule 11-6.1.

Dated: June 12, 2025

/s/ *Linda M. McMahon*
Linda M. McMahon
Trial Attorney, Department of Justice

Attorneys for the United States of America